# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MAGNOLIA MEDICAL                    )
                                   )
TECHNOLOGIES, INC.,                )
                                   )   C.A. No. 24-01124 (CFC)
            Plaintiff,           )
                                   )   **JURY TRIAL DEMANDED**
    v.                           )
                                   )   **REDACTED PUBLIC VERSION**
KURIN, INC.,                       )
                                   )
            Defendant.           )
                                   )

## DEFENDANT KURIN, INC.'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF <u>BULLINGTON PATENTS</u>

OF COUNSEL:
Gregg F. LoCascio, P.C.
Sean M. McEldowney
Matthew J. McIntee
Kelly Tripathi
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Sam Blake
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Jonathan Hangartner
X-Patents, APC
5670 La Jolla Blvd.
(858) 454-4313

Dated: July 25, 2025

Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant Kurin, Inc.*

# **TABLE OF CONTENTS**

I.    Nature and Stage of Proceedings........................................................................1

II.   Summary of Argument ....................................................................................2

III.  Statement of Facts............................................................................................3

IV.  Legal Standard ................................................................................................3

V.    Argument ........................................................................................................5

     A.    Dr. Meinhart's Lead Opinion Measures a Pressure Differential of 6.3 psi *Across* the Kurin Jet Stopper and *Not Between* the Stopper and Outlet ........................................................................................................8

     B.    Dr. Meinhart's Alternative Opinion Fails to Put Forth Any Facts that Would Support an Infringement Finding and Is Disproven by His Experimental Results and Lead Theory ..............................................9

          1.    The Pressure Differential Between the Kurin Jet's Stopper and Outlet Does Not "Build," "Increase" "Exceed a Threshold" or Have a Magnitude "Greater Than" a Pressure Differential Between the Inlet and Outlet....................................................11

          2.    The Pressure Differential in the Space That Separates the Kurin Jet's Stopper and Outlet Cannot Dislodge the Stopper ...........13

VI.  Conclusion ....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. Sun Life & Health Ins. Co.*,
  644 F. App'x 164 (3d Cir. 2016) ........................................................................4

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ....................................4

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
  397 F. Supp. 3d 560 (D. Del. 2019) ....................................................................4

*PC Connector Sols. LLC v. SmartDisk Corp.*,
  406 F.3d 1359 (Fed.Cir.2005) .............................................................................4

*Scott v. Harris*,
  550 U.S. 372 (2007) ............................................................................................4

*U.S. Phillips Corp. v. Iwasaki Elec. Co.*,
  505 F.3d 1371 (Fed. Cir. 2007) ...........................................................................4

*VB Assets, LLC v. Amazon.com Servs. LLC*,
  751 F. Supp. 3d 391 (D. Del. 2024), *appeal dismissed*, 2025 WL
  752344 (Fed. Cir. Mar. 10, 2025) ........................................................................4

*Wolverine World Wide, Inc. v. Nike, Inc.*,
  38 F.3d 1192 (Fed. Cir. 1994) .............................................................................5

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................3

*All **emphasis** added unless otherwise notated*

ii

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Magnolia Medical Technologies, Inc. ("Magnolia") asserts infringement of U.S. Patent Nos. 11,529,081 ("'081 Patent"), 11,653,863 ("'863 Patent"), and 11,903,709 ("'709 Patent") (collectively, "Bullington Patents").[1] Every independent claim of the Bullington Patents includes two claim terms defining two different pressure differentials: a first pressure differential between the inlet and the outlet, and a second "pressure differential …between the [moveable plug/valve] and the outlet." The parties have agreed to address construction of the second pressure differential claim limitations (herein referred to as the "pressure differential" phrase or term) in forthcoming claim construction briefing.[2] The forthcoming claim construction is a result of Magnolia's expert offering infringement opinions different from the arguments Magnolia disclosed in its infringement contentions and maintained throughout the whole of discovery before

---

[1]    As of today, Magnolia stipulated to judgment of noninfringement of the two other patents it asserted in this litigation: U.S. Patent Nos. 9,855,002 and 10,052,053 (collectively, "Patton Patents"). Specifically, Magnolia admitted that Kurin's Jet does not infringe based the Court's construction of the term "sequester."

[2]    Kurin agreed to separately brief claim construction related to the "pressure differential" term in an effort to partially ameliorate the prejudice caused by Magnolia's late disclosure of new infringement theories. For this reason, and because claim construction of the "pressure differential" term has a direct bearing on Kurin's arguments set forth in its summary judgment brief, Kurin respectfully requests the Court consider this motion after considering the parties' forthcoming claim construction briefing.

initial expert reports in this case. Kurin contends the "pressure differential" phrase should be construed as "pressure differential … *in the space that separates* the [moveable plug/valve] and the outlet." Discovery is closed, except that Kurin has been allowed limited additional discovery to address Magnolia's late-disclosed theory of infringement pertaining to the "pressure differential" limitation. Claim construction briefing will conclude on August 22, 2025 for this term. Kurin expects that the limited additional discovery will be considered as part of forthcoming claim construction and the present motion does not need additional factual information to resolve in Kurin's favor. Trial is currently set for December 8, 2025.

## II.    SUMMARY OF ARGUMENT

1. Under the proper reading of the claims in the Bullington Patents, there is no genuine dispute of fact that the stopper in the accused product (*i.e.*, the Kurin Jet) does not move into a second position or state in response to a "pressure differential … between [i.e., in the space separating] the [moveable plug/valve] and the outlet," as required by all asserted claims, and therefore Magnolia cannot prove infringement.

2. For six of the ten asserted Bullington independent claims, Magnolia's expert has not even pointed to any pressure differential in the space separating the stopper (the accused plug/valve) and the outlet in the Kurin Jet whatsoever. Instead, Magnolia's expert only pointed to a pressure differential across the entire Kurin Jet.

2

(CSOF #12, 18).    Thus, there is no evidence to support reading the "pressure differential" limitation in those patents onto the Kurin Jet.

3. For the four remaining asserted Bullington independent claims, Magnolia's expert has identified a purported "pressure differential" in the space separating the Jet's stopper and outlet.  Even inferring that Magnolia's expert is correct that any pressure differential exists in that space in the Kurin Jet (it does not), there is no genuine dispute of fact that any purported pressure differential in that space does not "build," "increase", or is not "greater than" the differential between the inlet and outlet as required in these four independent claims (and as also required in similar limitations in the six claims for which Magnolia did not even assert this theory). Thus, Magnolia cannot prove that any pressure differential in the space separating the stopper and the outlet meets the Bullington claims requirements.

## III.    STATEMENT OF FACTS

The relevant facts are set forth in Defendant Kurin, Inc.'s Concise Statement of Facts in Support of Motion for Summary Judgment of Non-Infringement of Bullington Patents ("CSOF").

## IV.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving

that no genuine issue of material fact exists. *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 566 (D. Del. 2019). On summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Baker v. Sun Life & Health Ins. Co.*, 644 F. App'x 164, 165 (3d Cir. 2016).

Patent infringement analysis is a two-step process. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. . . The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Phillips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374-1375 (Fed. Cir. 2007) (citing *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed.Cir.2005)). The patentee must prove infringement by a preponderance of the evidence. *See VB Assets, LLC v. Amazon.com Servs. LLC*, 751 F. Supp. 3d 391, 403 (D. Del. 2024), *appeal dismissed*, 2025 WL 752344 (Fed. Cir. Mar. 10, 2025). Where an independent patent claim is not infringed, any

dependent claims are also not infringed.  *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

## V.     ARGUMENT

The second pressure differential recited in each of the independent claims of the Bullington Patents is recited as being (1) "between the [moveable plug/valve] and the outlet" (CSOF #1) and it (2) must "build," "increase," "exceed a threshold pressure" or "be greater than the first pressure differential"[3] between the inlet and outlet in order to (3) be "sufficient to" move the plug or transition the valve, or the plug moves or the valve transitions "in response to" or "as a result of" the pressure differential.  (CSOF #2-4).  Kurin expects that the forthcoming claim construction related to the "pressure differential" limitation will confirm that the proper reading requires a "pressure differential … between [i.e., in the space separating] the [moveable plug/valve] and the outlet."  Under that reading, there is no legitimate dispute that the Kurin Jet does not meet the claim requirements set forth above. Magnolia, through its expert Dr. Meinhart, has not provided any evidence that would

---

[3]   As described above, the "first pressure differential" refers to the pressure differential from the inlet to the outlet and is a different claim requirement from the second pressure differential or "pressure differential" term primarily discussed herein.  The first pressure differential provides a point of comparison for the second pressure differential in certain claims (*e.g.*, claim 21 of the '081 patent).

allow a jury to find that the Kurin Jet meets these claim requirements, so summary judgment of noninfringement is appropriate here.

Magnolia's expert, Dr. Meinhart, offers two infringement theories related to the "pressure differential" limitation, both of which fail as a matter of law. Dr. Meinhart's first or lead theory simply assumes (incorrectly) that he need not determine pressure in the space that separates the movable plug/valve and the outlet despite the claims' requirement to the contrary. Instead, Dr. Meinhart measures the pressure differential across the inlet and outlet of the accused device to infer the pressure different *across* the accused plug/valve. Under Kurin's proposed construction, and the proper interpretation of the claim requiring a pressure differential in the space separating the plug/valve and outlet, Dr. Meinhart's theory does not pass muster to generate a genuine dispute of fact for the jury. Dr. Meinhart's lead theory applies to all ten independent Bullington claims.[4]

Dr. Meinhart's second or alternative theory measures a purported pressure differential from the top of the gas permeable membrane (above and downstream of the accused plug/valve) to the outlet. There is no dispute, however, that the pressure differential in that section, assuming one even exists for purposes of summary judgment (Kurin posits that no pressure differential exists), does not "build" or

---

[4]    '081 Patent, cls. 1, 11, 21; '863 Patent, cls. 1, 11, 22; '709 Patent, cls. 1, 10, 19, 28.

"increase" such that the differential causes the accused plug/valve to open. Nor is it "greater than" the pressure differential between the inlet and outlet of the device. These are requirements in the four claims for which Dr. Meinhart has asserted his alternative theory.[5] Moreover, as described below, Dr. Meinhart's alternative theory is insufficient to generate a fact dispute related to infringement of any of the asserted independent claims, even if Dr. Meinhart had asserted his alternative theory for all independent claims. Thus, even inferring everything in favor of Magnolia's expert, there is no genuine dispute that the Kurin Jet does not meet the claim elements of the Bullington independent claims.

Each of Dr. Meinhart's and Magnolia's infringement positions related to the Bullington Patents are discussed below. And as discussed, there is no genuine dispute of material fact that would permit a reasonable factfinder to find in Magnolia's favor. Kurin therefore requests that the Court grant its motion for summary judgment of noninfringement of all of the asserted Bullington Patent claims.

---

[5] '081 Patent, cls. 1, 11, 21; '709 Patent, cl. 1.

### A. Dr. Meinhart's Lead Opinion Measures a Pressure Differential of 6.3 psi *Across* the Kurin Jet Stopper and *Not Between* the Stopper and Outlet

Dr. Meinhart admits that the pressure differential that moves the Jet's stopper is across the stopper, not in the space separating the stopper and the outlet (CSOF #5, 14), therefore Dr. Meinhart's lead theory runs afoul of the proper construction of the claims. If the Court agrees with Kurin's proposed construction, the Court should grant summary judgment of noninfringement under Dr. Meinhart's first infringement theory. That conclusion would entirely resolve, and deny as a matter of law, Magnolia's infringement claims for six of the ten Bullington independent claims and their dependents.

Dr. Meinhart admits that his experiment on the Kurin Jet only measured the pressure differential across the entirety of the Kurin Jet, (CSOF #7), and he "didn't measure any pressures specifically inside the Jet." (CSOF #10). In particular, Dr. Meinhart concludes that "the pressure differential [between the inlet and outlet] exceeds a critical value and is sufficient to move the movable plug" when it reaches 6.34 psi. (CSOF #9). Dr. Meinhart admits that the pressure differential between "the ***bottom surface*** of the movable plug and the outlet [] causes the plug to move" not the pressure differential ***in the space that separates*** the Kurin Jet's stopper and the outlet. (CSOF #13). There is no dispute that Dr. Meinhart's lead opinion did not

identify or purport to identify any pressure differential in the space separating the stopper and outlet.

As such, the only opinions of Dr. Meinhart's that are supported by his experiment are those that state that the pressure differential *across* the Kurin Jet's stopper causes the movement of the stopper – meaning that the pressure differential is not contained within sampling channel. (CSOF #12-14). Should the Court agree with Kurin's construction, then Magnolia has failed to prove infringement under Dr. Meinhart's first theory, which is the only theory he asserts for six of the 10 independent claims.

### B. Dr. Meinhart's Alternative Opinion Fails to Put Forth Any Facts that Would Support an Infringement Finding and Is Disproven by His Experimental Results and Lead Theory

Apparently recognizing, and tacitly admitting, that any pressure differential in the Kurin Jet that moves the stopper is *not* in the space separating the stopper and the outlet, Dr. Meinhart attempts to cobble together an alternative infringement opinion related to the Bullington Patents.[6] Dr. Meinhart only raises his alternative opinion with respect to four of the ten independent claims. (CSOF #16-18).[7] In his

---

[6] The Court ruled that Magnolia may not put forward a theory of infringement under the doctrine of equivalents. (CSOF #15).

[7] Under the correct construction of the claims, Magnolia has not articulated any theory of infringement that even purports to consider the pressure differential (or lack thereof) in the space that separates the Kurin Jet stopper and outlet for claims 1, 12, 22 of the '863 Patent or claims 10, 19, or 28 of the '709 Patent.

alternative theory, Dr. Meinhart opines that the pressure differential above the air permeable membrane (labeled A in Dr. Meinhart's diagram below) and the outlet (labeled B) in the Kurin Jet's sampling channel meets the claim requirements related to the claimed "pressure differential":



(CSOF #16-18).    These points correspond with "8" and "9" in Dr. Meinhart's experimental set up:



(CSOF #7).

Recognizing that the independent claims require a pressure differential in the space **separating** the stopper and the outlet, Dr. Meinhart conducted a CFD simulation to attempt to find some pressure differential that momentarily exists in that space. Yet Dr. Meinhart's alternative theory still fails, as that pressure differential does not meet the claim requirements for any of the Bullington independent claims, including the four claims for which Dr. Meinhart offers this opinion.

        1.      The Pressure Differential Between the Kurin Jet's Stopper and Outlet Does Not "Build," "Increase" "Exceed a Threshold" or Have a Magnitude "Greater Than" a Pressure Differential Between the Inlet and Outlet

All of the independent claims of the Bullington Patents require the pressure differential to "build," "increase," "exceed[] a threshold pressure," or "be greater than the first pressure differential" between the inlet and outlet in order to cause the movement of the plug or transitioning of the valve. (CSOF #2-4). Specifically, the relevant portion of each of the four claims for which Dr. Meinhart offers this alternative theory are set forth below:

- "the pressure differential … **_to build_ to an extent _sufficient to_ move the moveable plug from the first position to a second position**" ('081 Patent, cl. 1)

- "the moveable plug configured to **move from the first position to a second position _in response to_ _an increase_** in a pressure differential ..." ('081 Patent, cl. 11)

- "the pressure differential … **_to build to an extent sufficient to transition the valve from the first state to a second state_**" ('709 Patent, cl. 1)

- "**_first pressure differential between the inlet and the outlet_**…, the moveable plug configured to **_move from the first position to a second position in response to_** a second pressure differential **_greater than the first pressure differential_**" ('081 Patent, cl. 21)

Magnolia and Dr. Meinhart have provided no evidence to support a finding that the Kurin Jet meets these claim requirements.

First, Dr. Meinhart admits that the purported pressure differential in the Jet does not "**_build_**" or "**_increase_**," as required by three of the four claims for which they assert the alternative theory.[8]  Dr. Meinhart's analysis identified five "Regimes" related to different time periods during operation of the Kurin Jet.  Dr. Meinhart specifically defines "Regime B" as a period before the stopper moves, wherein the "barrier is being sealed." (CSOF #8).  He explains that "in Regime B the magnitude of the pressure differential between 8 and 9 is **_decreasing_**" and testified that "the absolute values are **_going closer to zero_**."  (CSOF #21).  Before the Kurin Jet's stopper is dislodged, according to Dr. Meinhart, the pressure differential between 8 and 9 decreases and falls to zero.  *Id.*  Thus, there is no dispute that even a purported pressure differential between the permeable barrier and outlet in the Kurin Jet does

---

[8]  Nor can Magnolia show that this pressure differential "exceed[s] a threshold pressure," as required by certain independent claims for which Magnolia did not even set forth its alternative theory.  (CSOF #2).

not "build" or "increase" to an extent sufficient to move the stopper. Instead, the purported pressure differential is decreasing until it ***does not even exist*** when the stopper is dislodged. (CSOF #22).

Second, for the fourth claim for which Magnolia and Dr. Meinhart offer this alternative theory, Dr. Meinhart conceded that the Kurin Jet ***could not*** meet the claim. Claim 21 of the '081 patent specifically requires a "first pressure differential between the inlet and the outlet" and a "second pressure differential <u>greater than</u> the first pressure differential." (CSOF #4, 25). Dr. Meinhart admitted that these limitations were not met by the Kurin Jet. Specifically, Dr. Meinhart conceded "the pressure differential between 8 and 9 cannot be the second pressure differential" "[b]ecause it's not greater than" the pressure differential from the Kurin Jet's inlet to outlet. (CSOF #25). Indeed, even under Dr. Meinhart's analysis, the alleged pressure differential between the barrier and outlet is "less than 0.012 psi," which is far ***less than*** the pressure differential of 6.3 psi that Dr. Meinhart measured from the Kurin Jet's inlet to outlet.

Accordingly, none of the four Bullington independent claims for which Dr. Meinhart offers his alternative theory meet the claim requirements (nor do the other six claims for which Dr. Meinhart has not even asserted his alternative theory).

>    2.    The Pressure Differential in the Space That Separates the Kurin Jet's Stopper and Outlet Cannot Dislodge the Stopper

Even if Dr. Meinhart's purported pressure differential met the "build," "increase," "exceed a threshold pressure" or "be greater than the first pressure differential" claim requirements (it does not), the pressure differential Dr. Meinhart identifies would still fail to meet the Bullington independent claim requirements. Magnolia's and Dr. Meinhart's alternative theory ignores the fact that all Bullington independent claims, including the four identified above for which he asserts his alternative theory, require that the pressure differential be "sufficient to" move the moveable plug or transition the valve, (CSOF #2, '081 Patent, cl. 1, '709 Patent, cl. 1) or that the moveable plug moves "in response to" the pressure differential (CSOF #1, '081 Patent, cl. 11; CSOF #4, '081 Patent, cl. 21).  The Kurin Jet's pressure differentials do not meet those claim requirements.

First, the pressure differential Dr. Meinhart identifies in his alternative theory occurs at the ***wrong time***.  Dr. Meinhart's 0.012 psi number derives from "the average of Flow Regime A and Regime B" in Dr. Meinhart's CFD modeling, which are time periods before the stopper moves (CSOF #11).  The Kurin Jet's stopper is not dislodged until "t=1194" or "Regime C," and the modeled 0.012 psi pressure differential between points 8 and 9 ***no longer exists*** by the time the stopper is dislodged. (CSOF #22).

14



Second, the pressure differential identified by Dr. Meinhart in his alternative theory is ***too small*** to move the stopper.  Dr. Meinhart's CFD simulation confirms that the pressure differential between the Kurin Jet's stopper and outlet does not cause the movement of the stopper.  He explains that his CFD simulation shows that the pressure differential in tube c, *i.e.* at the outlet between points 9 and 10, "is about Δp = 0.012 psi, ***which is far lower than relevant pressure required to move the movable plug***." (CSOF #11).  Even assuming Dr. Meinhart's CFD results were accurate, Dr. Antonsson explained that there simply is "no pressure differential in the sampling channel" at all.  *Id.*  There is no dispute between the experts in this case that there no pressure differential in the space between the stopper and the outlet that would be sufficient to move the stopper as required by the claims.

15

Third, Dr. Meinhart *already opined* that the pressure differential "between the bottom of the movable plug and the outlet" is the sufficient cause of the Kurin Jet's stopper's movement, therefore the pressure differential in his alternative theory, which is three orders of magnitude less, is not sufficient.  (CSOF #12-13).   Dr. Meinhart specifically opined that the pressure differential at "$\Delta p = 6.34$ psi … is sufficient to move the movable plug" and this differential "is nearly the same as the pressure between the bottom and top of the moveable plug." (CSOF #9).  In contrast, the pressure differential between above the air permeable membrane and the outlet "could be, like, 0.002, 0.003 [psi]," (CSOF #19), which is about *2,100 times* less than the required pressure differential.  (CSOF #20).  In fact, Dr. Meinhart *neglected* this pressure differential in his experimental analysis, and Dr. Antonsson agreed by stating that any pressure differential in this location "is insignificant."  (CSOF #23). Although Dr. Meinhart testifies that the pressure differential in his alternative opinion is "necessary" he *never offers the opinion* that it is *sufficient* (as required by '081 Patent cl. 1 and '709 patent, cl. 1) to dislodge the Kurin Jet's stopper.  (CSOF #23).  That is because it is not.

Regarding the independent claims that require the movement of the plug or transition of the valve to be "in response to" the pressure differential, Dr. Meinhart again fails to show any level of causality between the pressure differential and the

movement, as his opinion is merely that the pressure differential in his alternative opinion is "necessary," not a sufficiently tied cause.  (CSOF #23).

## VI.    CONCLUSION

For these reasons, Kurin requests entry of summary judgment of no infringement on all asserted claims in the Bullington Patents.

OF COUNSEL:

Gregg F. LoCascio, P.C.
Sean M. McEldowney
Matthew J. McIntee
Kelly Tripathi
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Sam Blake
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Jonathan Hangartner
X-PATENTS, APC
5670 La Jolla Blvd.
La Jolla, CA 92037
(585) 454-4313

Dated: July 25, 2025

*/s/ Sara M. Metzler*
Kelly  E.  Farnan  (#4395)
Sara M. Metzler (#6509)
One Rodney Square
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant Kurin, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing KURIN'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF BULLINGTON PATENTS complies with the type and word limitations set forth in the Court's November 10, 2022 Standing Order regarding Briefing in All Cases and Paragraph 16 of the Scheduling Order (D.I. 102). The total number of words, including introductions and footnotes, but excluding the cover page, table of contents, table of authorities, and signature page is 3,551 words according to the word processing system to compile the brief. The text of the brief is 14-point, Times New Roman.

*/s/ Sara M. Metzler*
Sara M. Metzler (#6509)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2025, copies of the foregoing were caused to

be served upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
Rodger D. Smith II
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Natalie J. Stoecklein
Elazar Chertow
David Jiang
Keon Zemoudeh
Davis Polk & Wardwell LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063


*/s/ Sara M. Metzler*
Sara M. Metzler (#6509)