IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGNOLIA MEDICAL
TECHNOLOGIES, INC.,

                Plaintiff,

     v.

KURIN, INC.,

             Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 24-1124 (CFC)

REDACTED - PUBLIC VERSION

**MAGNOLIA MEDICAL TECHNOLOGIES, INC.'S ANSWERING
BRIEF IN OPPOSITION TO KURIN, INC.'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT OF BULLINGTON PATENTS**

OF COUNSEL:
Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Keon Zemoudeh
Natalie Stoecklein
Elazar Chertow
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

David Jiang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Magnolia Medical
Technologies, Inc.*

August 15, 2025

# TABLE OF CONTENTS

PAGE

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT ............................................................................................................ 9

I.    Kurin's Motion Fails Under Magnolia's Proposed Construction ................. 9

II.   Even Under Kurin's Proposed Construction, Genuine Issues of Material Fact Preclude Summary Judgment ..................................................... 9

    A.    The Pressure Differential Between the Inlet and the Outlet Satisfies All Claims of the Magnolia Patents ......................................... 9

        1.    Kurin Failed to Substantively Address the Pressure Differential Between the Inlet and the Outlet ........................... 10

    B.    Under Kurin's Construction, the Kurin Jet Infringes All Asserted Claims ................................................................................. 13

    C.    The Pressure Differential Between the Top of the Blood Barrier and the Outlet Satisfies Certain Claims of the Magnolia Patents ....... 16

        1.    Claim 1 of the #081 Patent and Claim 1 of the #709 Patent ................................................................................. 17

        2.    Claim 11 of the #081 Patent ................................................... 20

CONCLUSION ...................................................................................................... 21

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | U.S. Patent No. 11,529,081 entitled, "Fluid Control Devices and Methods Using the Same," to Bullington et al. (Dec. 20, 2022) |
| B | U.S. Patent No. 11,653,863 entitled, "Fluid Control Devices and Methods of Using the Same," to Bullington et al. (May 23, 2023) |
| C | U.S. Patent No. 11,903,709 entitled, "Fluid Control Devices and Methods of Using the Same," to Bullington et al. (Feb. 20, 2024) |
| D | Expert Report of Carl D. Meinhart Regarding Infringement of U.S. Patent Nos. 9,855,002, 10,052,053, 11,529,081, 11,653,863, and 11,903,709, served in this case and dated May 30, 2025 |
| E | Deposition transcript of Carl Meinhart, Ph.D, taken in this case on July 16, 2025 |
| F | Deposition transcript of Erik K. Antonsson, Ph.D, taken in this case on July 14, 2025 |
| G | Rebuttal Expert Report of Erik K. Antonsson, Ph.D., P.E., NAE, Regarding U.S. Patent Nos. 9,855,002, 10,052,053, 11,529,081, 11,653,863, and 11,903,709, served in this case and dated June 27, 2025 |
| H | Deposition transcript of Shan Gaw, taken in this case on April 30, 2025 |
| I | Deposition transcript of Bob Rogers, taken in this case on May 8, 2025 |
| J | Deposition transcript of Kevin Nason, taken in this case on May 1, 2025 |
| K | Document produced as Bates-numbers KUR-CA-00001165 through KUR-CA-00001166. |
| L | Transcript of the Markman Hearing that was held in this case on March 20, 2025 |

## NATURE AND STAGE OF THE PROCEEDINGS

Magnolia accuses the Kurin Jet of infringing the Magnolia Patents.[1] Trial is set for December 8, 2025.

## SUMMARY OF THE ARGUMENT

Kurin's motion for summary judgment rests on its proposed construction of the claim term "pressure differential . . . between the [moveable plug/ valve] and the outlet." *See* D.I. 255 at 2-3 (noting that all arguments depend on Kurin's proposed construction). If the Court agrees with Magnolia's proposed construction or deviates from the parties' proposals, then Kurin's motion fails.

If the Court agrees with Kurin's proposed construction, the motion still fails because genuine disputes of material fact preclude summary judgment. The Kurin Jet infringes in multiple ways, and, even under Kurin's construction, a reasonable jury could find infringement on either of the two grounds discussed below.

## STATEMENT OF FACTS

The relevant facts are set forth in Magnolia's RSOF. A brief summary follows.

Magnolia's technical expert, Professor Carl Meinhart, conducted an experiment to measure the pressure differential between the inlet and the outlet of

---

[1] This brief uses the following abbreviations: Magnolia Medical Technologies, Inc. ("Magnolia"); Kurin, Inc. ("Kurin"); U.S. Patent Nos. 11,653,863 (the "#863 Patent"), 11,529,081 (the "#081 Patent"), 11,903,709 (the "#709 Patent") (collectively, the "Magnolia Patents"); and Magnolia's Response to Kurin's Concise Statement of Facts in Support of Motion for Summary Judgment of Non-Infringement of Bullington Patents ("RSOF").

the Kurin Jet during the device's operation. RSOF ¶ 7. Professor Meinhart's experiment analyzed the changes in the pressure differential between the inlet and the outlet over five phases of the Jet's operation. RSOF ¶ 32.



The first phase, termed "Regime A," begins after a user attaches a sample collection device and continues as liquid flows into the inlet and containment channel. RSOF ¶ 33.

2



Voronov Ex. D (Meinhart Infringement Report) ¶¶ 140-41 citing MAG-CAL_0706290 at 001408/007998 (depicting testing of the Kurin Jet during Regime A after user attached sample collection device, as liquid flows into inlet and containment channel).

The second phase, termed "Regime B," begins as liquid starts to contact the blood barrier and continues until liquid seals the barrier. RSOF ¶ 34.





Voronov Ex. D (Meinhart Infringement Report) ¶ 142-43 citing MAG-CAL_0706290 at 002478/007998, 004104/007998 (depicting testing of Kurin Jet during Regime B as liquid flows into device and contacts blood barrier).

The third phase, termed "Regime C," occurs when the moveable plug moves from its first position to a second position. RSOF ¶ 35.



Voronov Ex. D (Meinhart Infringement Report) ¶ 144-45 citing MAG-CAL_0706290 at 004763/007998 (depicting testing of Kurin Jet during Regime C as movable plug, in area annotated with a red rectangle, moves to a second position).

The fourth phase, termed "Regime D," begins after the moveable plug moves to its second position and continues as liquid flows into the sampling channel. RSOF ¶ 36.



Voronov Ex. D (Meinhart Infringement Report) ¶ 146 citing MAG-CAL_0706290 at 005174/007998 (depicting testing of Kurin Jet during Regime D after moveable plug moves to its second position, as liquid flows into sampling channel).

The fifth phase, termed "Regime E" (not pictured), occurs as liquid flows through the sampling channel and outlet to the sample collection device. RSOF ¶ 37.

Professor Meinhart articulated three ways that Kurin infringes the limitations requiring a "pressure differential . . . between the [moveable plug/ valve] and the outlet." RSOF ¶¶ 12, 16.

The Kurin Jet infringes because of the pressure differential between the bottom of the moveable plug and the outlet—i.e., the differential between pressures at the locations labeled A and B in the below diagram:

6



RSOF ¶ 12.

Kurin's device also infringes the asserted claims in another way, due to the pressure differential between the top of the blood barrier and the outlet—i.e., the differential between pressures at the locations labeled A and B in the below diagram:



RSOF ¶ 16.

Further, the Kurin Jet infringes due to the pressure differential between the inlet and the outlet—i.e., the differential between pressures at the locations labeled A and B in the below diagram:



RSOF ¶ 12.

In addition to Professor Meinhart's experimental tests and computational analyses, Kurin's witnesses' testimony corroborates his opinions and provides further evidence on which a reasonable jury could find infringement. For example, Bob Rogers, Kurin's CEO, testified that the plug or valve in the Kurin Jet moves because of "a pressure differential created" by "the patient's blood pressure being applied to the back side of [the plug], in addition to the vacuum pulling." RSOF ¶ 40; *see also id.* ("Q. And it's also the vacuum source pulling that causes the moveable plug in the Jet to move, in part? A. It's my understanding."). As another example, Kevin Nason, the head of Kurin's engineering group, testified that the stopper in the Kurin Jet moves because of a difference between two pressures: "the patient's blood pressure . . . [is] one pressure," and "everything above the volume in the sample channel above the stopper and above the membrane are at the same pressure as the vacuum bottle or syringe which is going to be a lower pressure." RSOF ¶ 41.

8

## **ARGUMENT**

### I.   **Kurin's Motion Fails Under Magnolia's Proposed Construction**

If the Court agrees with Magnolia's proposed construction, of "pressure differential . . . between the [moveable plug/ valve] and the outlet," Kurin's summary judgment motion fails. *See* D.I. 255 at 2-3 (noting that all arguments depend on Kurin's proposed construction). For the reasons explained in Magnolia's claim construction brief, D.I. 280, the Court should adopt Magnolia's construction and deny Kurin's motion.

### II.  **Even Under Kurin's Proposed Construction, Genuine Issues of Material Fact Preclude Summary Judgment**

Magnolia has identified three ways in which the Kurin Jet infringes the claims of the Magnolia Patents. While Kurin's construction forecloses the first of these mentioned above, genuine factual disputes remain as to the other two. Summary judgment is therefore inappropriate.

#### A.   **The Pressure Differential Between the Inlet and the Outlet Satisfies All Claims of the Magnolia Patents**

Magnolia alleges that the Kurin Jet infringes the asserted claims because of the pressure differential between the inlet and the outlet—i.e., the differential between pressures at the locations labeled A and B in the below diagram:



RSOF ¶ 12.

Instead of addressing this pressure differential in its motion, Kurin incorrectly assumes that this pressure differential is the same for purposes of the infringement analysis as the pressure differential between the bottom of the moveable plug and the outlet. D.I. 255 at 8-9. It is not. Regardless of Kurin's assumption, this pressure differential—and the expert and fact testimony related to it—establish a genuine dispute of fact that precludes summary judgment, because a jury could reasonably find that the pressure differential between the inlet and the outlet is a "pressure differential . . . between the [moveable plug/ valve] and the outlet," even under Kurin's proposed claim construction. Kurin and its expert may disagree, but that reinforces that there is a triable dispute.

### 1. Kurin Failed to Substantively Address the Pressure Differential Between the Inlet and the Outlet

In its opening brief, Kurin does not address the pressure differential between the inlet and the outlet. According to Kurin, Magnolia's only theories of direct

infringement are a "lead theory" relating to a pressure differential between the bottom of the moveable plug or valve and the outlet of the Kurin Jet, *see* D.I. 255 at 8, and an "alternative theory" relating to a pressure differential between the top of the blood barrier and the outlet of the Kurin Jet, *see id.* at 9-10; *see also, e.g., id.* at 6 (contending incorrectly that "Magnolia's expert, Dr. Meinhart, offers ***two*** infringement theories related to the 'pressure differential' limitation" (emphasis added)).

Kurin's motion thus ignores a material part of the factual record. As Professor Meinhart explained, the Kurin Jet directly infringes the Magnolia Patents because the pressure differential between the inlet and the outlet in the Jet meets the limitation that Kurin says is absent, i.e., a "pressure differential . . . between the [moveable plug/ valve] and the outlet." *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 536-44 (#081 Patent cl. 1), 897-907 (#863 Patent cl. 1), 1223-31 (#709 Patent cl. 1). This pressure differential is distinct from the pressure differential on which Kurin focuses—i.e., the pressure differential between the bottom of the moveable plug or valve and the outlet—because one of the relevant pressures is located at the inlet rather than below the moveable plug. D.I. 255 at 8-9; *compare* Voronov Ex. D (Meinhart Infringement Report) ¶ 521, *with id.* ¶ 536. That difference matters. Professor Meinhart conducted experiments on the Kurin Jet to measure pressures at the device inlet and outlet. RSOF ¶¶ 7-8, 32. Using those

11

experimental pressure results, he was also able to run simulations to calculate pressures at other locations within the device. *Id.* ¶¶ 7, 10. Those simulations showed, for example, that the pressure directly below the moveable plug (in red below) is different from the pressure at the inlet (in blue below) during "Regime B." *Id.* ¶¶ 7, 10, 34, 38.



Voronov Ex. D (Meinhart Infringement Report) ¶ 149 (simulation result showing relative pressures from inlet, on far left, through containment channel, on far right, during "Regime B").

By conflating those two pressure differentials, Kurin avoids addressing the genuine dispute of material fact as to the pressure differential between the inlet and the outlet, as discussed further below.

### B.    Under Kurin's Construction, the Kurin Jet Infringes All Asserted Claims

Under Kurin's construction, the relevant pressure differential must be "in the space that separates" the moveable plug or valve and the outlet. Kurin asserts that, as applied to the Jet, this means that the pressure differential must exist somewhere in the region between the top of the moveable plug or valve and the outlet.



*See* Voronov Ex. K (KUR-CA-00001165) at -1166 (annotated diagram depicting region between top of the moveable plug or valve and outlet).

There is a factual dispute between the parties regarding whether the Kurin Jet meets this limitation. According to Professor Meinhart, the pressure differential that is the difference between a pressure at the inlet and a pressure at the outlet satisfies this limitation because *one* of the two pressures is located in the region between the top of the moveable plug or valve and the outlet. The "differential" between those pressures exists throughout the space between them, and hence the "differential" is also in that region. *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶ 660.

13

Professor Meinhart's testing confirms that the pressure differential between the inlet and the outlet is "in the space that separates" the moveable plug or valve and the outlet. *See, e.g.*, *id.* at ¶¶ 542-44. Kurin may disagree, but that presents a factual dispute for the jury to resolve.

In addition to Professor Meinhart's opinions, testimony by Kurin's own witnesses reinforces the genuine dispute on this issue. Kurin's CEO, Bob Rogers, testified that the plug or valve in the Kurin Jet moves because of "a pressure differential created" by "the patient's blood pressure being applied to the back side of [the plug], in addition to the vacuum pulling." RSOF ¶ 40. This testimony confirms that the portion of the pressure differential that results from the vacuum source is in "the space that separates" the moveable plug or valve and the outlet and is the differential that prompts the plug or valve's movement or transition. Similarly, Kurin's witness responsible for designing the Jet testified that the moveable plug or valve in the Jet moves because of a difference in pressure between "the patient's blood pressure" and pressure "above the volume in the sample channel above the stopper and above the membrane . . . which is going to be a lower pressure." RSOF ¶ 41 (quoting Voronov Ex. J (Nason Dep. Tr.) at 84:23-85:12). That testimony supports that the differential necessarily exists in the space between the plug or valve (the "stopper") and the outlet.

14

To the extent Kurin argues that a pressure differential between the inlet and the outlet can satisfy only the "pressure differential between the inlet and the outlet" limitations and not also the "pressure differential . . . between the [moveable plug/valve] and the outlet" limitations, *see* D.I. 255 at 1, that is also a genuinely disputed factual issue. Professor Meinhart analyzed the changes in the pressure differential between the inlet and the outlet over five phases of the Jet's operation.



RSOF ¶ 32. Professor Meinhart's measurements show an earlier pressure differential associated with blood flowing into the containment channel and a later pressure differential associated with the movement of the moveable plug or valve. These differentials are different in time and magnitude. A reasonable jury could find that the first satisfies the "pressure differential between the inlet and the outlet"

limitations (which Kurin calls the "first pressure differential" limitations) and the second satisfies the "pressure differential . . . between the [moveable plug/ valve] and the outlet" limitations.

Finally, Kurin does not dispute that the pressure differential between the inlet and the outlet meets the other requirements of the relevant pressure differential limitations—i.e., that it "build[s] to an extent sufficient to" move the moveable plug from a first position to a second position or to transition the valve from a first state to a second state, that the moveable plug is configured to move from a first position to a second position or that the valve is configured to transition from a first state to a second state "in response to" this pressure differential, and that this pressure differential "exceed[s] a threshold pressure." D.I. 255, at 8-9; D.I. 254 ¶ 13.

Therefore, drawing all reasonable inferences in the light most favorable to Magnolia, there is a genuine dispute of material fact as to whether the pressure differential between the inlet and the outlet is the claimed differential between the moveable plug or valve and the outlet, precluding summary judgment.

## C.     The Pressure Differential Between the Top of the Blood Barrier and the Outlet Satisfies Certain Claims of the Magnolia Patents

The pressure differential between the top of the blood barrier and the outlet—i.e., the differential between the pressures at the locations labeled A and B in the below diagram—meets the limitations of claims 1 and 11 of the #081 Patent and claim 1 of the #709 Patent:

16



RSOF ¶ 16. Given the location of ***both*** the pressures that give rise to this differential, Kurin does not dispute that, even according to its expert's disputed view of the facts, the differential between these pressures is "in the space that separates" the moveable plug or valve and the outlet. *See* D.I. 255 at 9-11. Instead, Kurin seeks to establish as a matter of law that this differential cannot satisfy other disputed elements regarding the movement or transition of the plug or valve in relation to the differential. *Id.* at 11-17. It cannot do so. Magnolia has adduced evidence from which a reasonable jury can find that this differential satisfies all of those claim elements.

### 1.    Claim 1 of the #081 Patent and Claim 1 of the #709 Patent

Claim 1 of the #081 Patent and claim 1 of the #709 Patent do not require a causal relationship between the movement of the moveable plug (or transition of the valve) and the "pressure differential . . . between" the moveable plug (or valve) and the outlet. During the first claim-construction hearing in this case, the parties agreed that the terms "as a result of" and "in response to" should receive their plain and

ordinary meaning, which is "because of." Voronov Ex. L (Mar. 20, 2025 Markman Hr'g Tr.) at 93:16-94:12. While other claims of the Magnolia Patents require that the moveable plug or valve is configured to move or transition "in response to"— i.e., "because of"—a change in the "pressure differential . . . between" the moveable plug (or valve) and the outlet, claim 1 of the #081 Patent and claim 1 of the #709 Patent do not. Instead, those claims require only that the "pressure differential in at least a portion of the sampling channel between the [moveable plug/ valve] and the outlet to **build to an extent sufficient to**" move the moveable plug or transition the valve. *Id.* at Ex. A (#081 Patent) at cl. 1; *id.* at Ex. C (#709 Patent) at cl. 1 (emphasis added).

Unlike other claims that require the "pressure differential . . . between" the moveable plug (or valve) and the outlet to "exceed[] a threshold pressure" or become "greater than the first pressure differential," claim 1 of the #081 Patent and claim 1 of the #709 Patent only require the pressure differential to "build." Build does not necessarily mean to become large.[2] As Professor Meinhart explained in his expert report and in his deposition, in this field, that phrase does not require an increase in magnitude—for example, a negative pressure differential can "build" toward zero while decreasing in magnitude. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 548-49; RSOF ¶ 22 (citing Voronov Ex. E (Meinhart Dep. Tr.) at 236:10-237:22

---

[2] Neither party sought a construction of the term "build."

("[A]s the barrier is sealed by the liquid and shuts off during Regime B throughout that period, that's when ***the pressure gradient is negative, building to a value of zero***." (emphasis added))). That occurs in the Kurin Jet, where the negative pressure differential between the top of the blood barrier and the outlet builds toward zero pounds per square inch ("psi") after blood in the containment channel comes into contact with the blood barrier. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 548-49; RSOF ¶ 22.

By building towards zero psi, the pressure differential becomes sufficient to move the moveable plug or transition the valve in the Kurin Jet. As Professor Meinhart explains, the pressure differential between the top of the blood barrier and the outlet must build to zero in order for the plug to move or the valve to transition. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 553-55 (explaining that, if the pressure differential between the top of the blood barrier and the outlet did not become sufficiently small, "the moveable plug would not move to the second position"); *see also id.* at Ex. E (Meinhart Dep. Tr.) at 236:10-237:22. If, for example, the blood barrier broke and blood flowed through it to the outlet, then the pressure differential between the top of the blood barrier and the outlet would not build to zero, and the plug would never move (or the valve would never transition). *id.* at Ex. D (Meinhart Infringement Report) ¶ 555.

As Kurin's CEO testified, the plug or valve in the Kurin Jet moves, in part, because of "the vacuum source pulling" on the plug or valve. RSOF ¶ 40. In other words, two things must happen for the plug to move or the valve to transition—pressure underneath the plug must be large, and pressure above the plug must be small. *See* Voronov Ex. E (Meinhart Dep. Tr.) at 207:20-208:11 (explaining that "force that's coming from underneath" plug is "only half the story"). By building toward zero psi, the pressure differential between the top of the blood barrier and the outlet thus becomes sufficient to move the moveable plug or transition the valve.

Based on this evidence, drawing all reasonable inferences in the light most favorable to Magnolia, a reasonable jury could find that, even under Kurin's proposed construction, that claim 1 of the #081 Patent and claim 1 of the #709 Patent are infringed based on the pressure differential between the top of the blood barrier and the outlet. This genuine dispute of material fact precludes summary judgment.

### 2.    Claim 11 of the #081 Patent

There is also a genuine factual dispute regarding whether the pressure differential between the blood barrier and the outlet satisfies claim 11 of the #081 Patent. That claim requires that the moveable plug is "configured to move from the first position to a second position in response to an increase in a pressure differential between the moveable plug and the outlet." As explained above, Professor Meinhart opines that the pressure differential between the top of the blood barrier and the

outlet increases from a negative value to zero. RSOF ¶ 22 (citing Voronov Ex. E (Meinhart Dep. Tr.) at 236:10-237:22 ("[A]s the barrier is sealed by the liquid and shuts off during Regime B throughout that period, that's when ***the pressure gradient is negative, building to a value of zero***." (emphasis added))); *see also id.* at Ex. D (Meinhart Infringement Report) ¶¶ 663-73. Moreover, this change in pressure is part of the net force that causes the moveable plug in the Kurin Jet to move, as explained above. Again, this evidence more than suffices to establish a genuine factual dispute regarding infringement of claim 11 of the #081 patent.

## <u>CONCLUSION</u>

For the foregoing reasons, Magnolia respectfully requests that the Court deny Kurin's motion for summary judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Natalie Stoecklein
Elazar Chertow
Keon Zemoudeh
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

David Jiang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

August 15, 2025

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Magnolia Medical Technologies, Inc.*

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify that the foregoing MAGNOLIA MEDICAL

TECHNOLOGIES, INC.'S ANSWERING BRIEF IN OPPOSITION TO KURIN,

INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

OF BULLINGTON PATENTS complies with the type and number limitations set

forth in the November 10, 2022 Standing Order. The total number of words,

including introductions and footnotes, but excluding the cover page, table of

contents, table of authorities, and signature page is 3,433 according to the word

processing system used to compile the brief. The text of the brief is 14-point,

Times New Roman.

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 15, 2025, upon the following in the manner indicated:

Kelly E. Farnan                                             *VIA ELECTRONIC MAIL*
Sara M. Metzler
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
One Rodney Square
Wilmington, DE 19801
*Attorneys for Defendant Kurin, Inc.*

Gregg F. LoCascio, P.C.                                *VIA ELECTRONIC MAIL*
Sean M. McEldowney
Kelly Tripathi
Matthew J. McIntee
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
*Attorneys for Defendant Kurin, Inc.*

Sam Blake                                                      *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
*Attorneys for Defendant Kurin, Inc.*

Jonathan Hangartner, Esq.                          *VIA ELECTRONIC MAIL*
X-PATENTS, APC
5670 La Jolla Blvd.
La Jolla, CA 92037
*Attorneys for Defendant Kurin, Inc.*

*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)