IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGNOLIA MEDICAL )
TECHNOLOGIES, INC., )
 )
           Plaintiff, )      C.A. No. 24-1124 (CFC)
 )
    v. )
 )
 )    ███████████████████
KURIN, INC., )
 )
           Defendant. )    REDACTED - PUBLIC VERSION
 )

**MAGNOLIA MEDICAL TECHNOLOGIES, INC.'S RESPONSE TO
DEFENDANT KURIN, INC.'S CONCISE STATEMENT OF FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
<u>NON-INFRINGEMENT OF BULLINGTON PATENTS</u>**

OF COUNSEL:
Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Keon Zemoudeh
Natalie Stoecklein
Elazar Chertow
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

David Jiang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Magnolia Medical
Technologies, Inc.*

August 15, 2025

## I.      RESPONSE TO KURIN'S CONCISE STATEMENT OF FACTS

Magnolia Medical Technologies, Inc. ("Magnolia") submits this response to Kurin, Inc.'s ("Kurin") concise statement of facts in support of its motion for summary judgment (D.I. 254).

1.      Every remaining independent claim requires a "pressure differential… *between the* [moveable plug/valve] and the outlet" to move the moveable plug from a first position to a second position, or a valve from a first state to a second state. Declaration of S. McEldowney in Support of Motion for Summary Judgment ("Decl.") at Ex. 1 ('081 Patent), cls. 1, 11, 21, *id.* at Ex. 2 ('863 Patent), cls. 1, 11, 22, *id.* at Ex. 3 ('709 Patent), cls. 1, 10, 19, 28.

> **Magnolia's Response:** Disputed in part. All of the asserted independent claims require a "pressure differential . . . between the [moveable plug/valve] and the outlet." The claims vary in how they describe the relationship between this pressure differential and the movement of the moveable plug or the transition of the valve. *See* Declaration of Serge A. Voronov in Support of Magnolia's Response to Kurin's Concise Statement of Facts ("Voronov") Ex. A (#081 Patent), cls. 1, 11, 21; *id.* at Ex. B (#863 Patent), cls. 1, 11, 22; *id.* at Ex. C (#709 Patent), cls. 1, 10, 19, 28.

1

2.    Several independent claims require this pressure differential "between" the moveable plug/valve and outlet ***increase or build*** to move the plug/change of state of the valve:

- "the pressure differential … ***to build to an extent <u>sufficient to</u> move the moveable plug from the first position to a second position***." Decl. at Ex. 1 ('081 Patent, cl. 1)
- "the moveable plug configured to ***move from the first position to a second position <u>in response to</u> an increase*** in a pressure differential ..." Decl. at Ex. 1 ('081 Patent, cl. 11)
- "the pressure differential … ***to build to an extent <u>sufficient to</u> transition the valve from the first state to a second state***." Decl. at Ex. 3 ('709 Patent, cl. 1)
- "the valve configured to ***transition from the first state to a second state <u>in response to</u> an increase*** in a pressure differential ..." Decl. at Ex. 3 ('709 Patent, cl. 10)

**Magnolia's Response:** Disputed in part. The claims Kurin cites use the words "increase" or "build"; however, the claims vary in how they describe the relationship between this change in pressure differential and the movement of the moveable plug or the transition of the valve. *See* Voronov Ex. A (#081 Patent), cls. 1, 11; *id.* at Ex. C (#709 Patent), cls. 1, 10. Two of the four claims Kurin cites contain no "sufficiency" requirement. *Id.* at Ex. A (#081 Patent), cl. 11; *id.* at Ex. C (#709 Patent), cl. 10.

3.    Other independent claims require this pressure differential "between" the moveable plug/valve and outlet ***exceed a threshold pressure*** to move the plug/change of state of the valve:

2

- "the moveable plug configured to *__move from a first position to a second position in response to__* a pressure differential… *__exceeding a threshold pressure__*" Decl. at Ex. 2 ('863 Patent, cl. 1)

- "the moveable plug configured to *__move to a second position in response to__* a pressure differential … *__exceeding a threshold pressure__*." Decl. at Ex. 2 ('863 Patent, cl. 11)

- "the moveable plug configured to *__move from a first position to a second position in response to__* a pressure differential … *__exceeding a threshold pressure__*." Decl. at Ex. 2 ('863 Patent, cl. 21)

- "the valve configured to *__transition to a second state in response to__* a pressure differential … *__exceeding a threshold pressure__*." Decl. at Ex. 3 ('709 Patent, cl. 28)

**Magnolia's Response:** Undisputed.

4.     The remaining independent claims require this pressure differential "between" the moveable plug/valve and outlet *__to be greater than the first pressure differential, i.e., the pressure differential between the inlet and outlet__* to move the plug/change of state of the valve:

- "*__first pressure differential between the inlet and the outlet__*…, the moveable plug configured to *__move from the first position to a second position in response to__* a second pressure differential *__greater than the first pressure differential__*." Decl. at Ex. 1 ('081 Patent, cl. 21)

- "*__first pressure differential between the inlet and the outlet__*…, the valve configured to *__transition from a first state to a second state in response to__* a second pressure differential *__greater than the first pressure differential__*." Decl. at Ex. 3 ('709 Patent, cl. 19)

**Magnolia's Response:** Undisputed.

5.     Kurin informed Magnolia that it will seek to construe "pressure differential…between the [moveable plug/ valve] and the outlet," in all independent

3

claims of the Bullington Patents," as "pressure differential…in the space that separates the [moveable plug/valve] and the outlet."

**Magnolia's Response:** Undisputed.

6.    Magnolia accuses the Kurin Jet's stopper of meeting the elements of the "moveable plug" and "valve." *See, e.g.*, Decl. at Ex. 4 (Meinhart Infringement Report), ¶514.

**Magnolia's Response:** Undisputed.

7.    Dr. Meinhart conducted an experiment measuring the pressure differential across the entire Jet device, *i.e.*, between 3a and 10a in the figure below. Decl. at Ex. 4 (Meinhart Infringement Report), ¶129:



*Id.* at 53 (red and yellow added), *see also id.* ¶133.

**Magnolia's Response:** Disputed in part. Professor Meinhart conducted an experiment measuring the pressure differential between positions 3a and 10a.

*See* Voronov Ex. D (Meinhart Infringement Report) ¶ 139. Magnolia does not adopt or otherwise agree with Kurin's annotations on the figure included in D.I. 254 ¶ 7, including its annotations of the sampling channel and stopper. Professor Meinhart also calculated and analyzed various pressures within the Kurin Jet. That is material to Kurin's motion, and to the extent Kurin disagrees with it, disputed.

8.     Dr. Meinhart's experiment showed the following pressure differentials across the Jet. *Id.* ¶139.



**Magnolia's Response:** Undisputed.

9.     Dr. Meinhart explained that "At Regime C, the pressure difference peaks at t = 1194 ms to a value of Δp = 6.34 psi. ***At this point in time, the pressure differential exceeds a critical value and is sufficient to move the movable***

***plug*…**[T]he pressure difference measure by the ***pressure transducer between position 3a and position 10a is nearly the same as the pressure between the bottom and top of the moveable plug [i.e., between points 5 and 7 in the experimental set up diagram]*.**" *Id.* ¶144.

    **Magnolia's Response:** Undisputed.

10.    Dr. Meinhart did not measure the pressure differential between the stopper and outlet (*i.e.*, points 7 and 9). *See* Decl. at Ex. 6 (Meinhart Dep.) at 199:19-200:11; 212:4-213:1. He also "didn't measure any pressures specifically inside the Jet" and instead measured only "on the outside of the device." *Id* at 212:4-213:1.

    **Magnolia's Response:** Disputed. Using experimental pressure measurements "near the inlet and the outlet of the device during device operation," Professor Meinhart was able to "calculate pressure at other locations within the device," including the pressures at the stopper and the outlet. *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 527, 528 ("Specifically, I was able to calculate the pressure at the outlet and below the plug . . . .").

11.    Dr. Meinhart conducted computational fluid dynamics ("CFD") modeling to simulate flow through a portion of the sample channel and tube c. Dr. Meinhart concluded "[t]he CFD results show that the viscous pressure drop through tube c is about $\Delta p = 0.012$ psi, ***which is far lower than [the] relevant pressure required to move the movable plug*.**" Decl. at Ex. 4 (Meinhart Infringement

6

Report), ¶153; *see also id.* ¶129. Dr. Antonsson stated this "CFD analysis demonstrates there is no pressure differential in the sampling channel, as the pressure in the top portion of the device, *i.e.* the sampling channel, appears consistent." Decl. at Ex. 8 (Antonsson Rebuttal Non-Infringement Report) ¶239.



**Magnolia's Response:** Undisputed that the quotations are accurate. The content of Dr. Antonsson's statement is material and disputed. There is a pressure differential in the sampling channel, which Professor Meinhart has identified. *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 514-55; *id.* at Ex. E (Meinhart Deposition Tr.) at 213:2-216:22 (testifying about pressures in above diagram); *id.* at Ex. F (Antonsson Deposition Tr.) at 171:17-173:11 (agreeing there is a "non-zero" pressure differential "in the sample channel between the stopper and the outlet of the Kurin Jet device.").

12.     Dr. Meinhart's lead infringement opinion is that a pressure differential between points A and B in the diagrams below "builds" "to an extent sufficient to move the moveable plug from the first position to a second position." *See, e.g.*, Decl. at Ex. 4 (Meinhart Infringement Report), ¶521, 536.



*Id.* at 634.



*Id.* at 638.

**Magnolia's Response:** Disputed in part. Professor Meinhart opines that a pressure differential "'builds' 'to an extent sufficient to move the moveable

plug from the first position to a second position'" for claim 1 of the #081 Patent. The two figures that Kurin cites from Professor Meinhart's infringement report correspond to two different ways in which the Kurin Jet infringes, not one "lead" opinion, as Kurin characterizes it. *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 521-544.

13.     Dr. Meinhart admitted that the pressure differential between "the bottom surface of the movable plug and the outlet [] causes the plug to move." Decl. at Ex. 6 (Meinhart Dep.) at 200:20-201:6; *see also id.* at 204:5-205:1 ("It's really the pressure differential between the bottom of the movable plug and the outlet. So that difference in pressure creates a force that moves the movable plug."); 205:21-206:18.

**Magnolia's Response:** Undisputed that the quotations are accurate.

14.     Under the proper construction, the pressure differential between points A and B in the figures above is across the stopper and not the "pressure differential in the space between the moveable plug/valve and the outlet." *See* Decl. at Ex. 8 (Antonsson Rebuttal Non-Infringement Report) ¶249. Furthermore, Dr. Meinhart does not show the portion indicated with an "A" in the above two figures to be a part of the sampling channel. *See id.* ¶257.

**Magnolia's Response:** Disputed. Kurin's proposed claim construction is wrong and, in any event, a question of law. Further, the figures above depict

different pressure differentials. Under Magnolia's proposed claim construction, the pressure differential between points A and B in the first figure above is a "pressure differential . . . between the [moveable plug/valve] and the outlet." *See, e.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶ 533. Professor Meinhart has shown that point A in the first figure above is within the sampling channel. *See, e.g.*, *id.* ¶ 532. Under Kurin's proposed claim construction, the pressure differential between points A and B in the first figure above is a "pressure differential . . . in the space that separates the [moveable plug/valve] and the outlet." *See, e.g.*, *id.* ¶ 542.

15.    The Court determined that Magnolia cannot put forth infringement opinions under the doctrine of equivalence. D.I. 140 at 305:11-22.

**Magnolia's Response:** Undisputed.[1]

16.    Recognizing that the opinions above did not track Magnolia's infringement contentions and that they required a tortured reading of "between," Dr. Meinhart also included an alternative opinion. There, Dr. Meinhart opines on a pressure differential between A and B in the following figure. *See, e.g.*, Decl. at Ex. 4 (Meinhart Infringement Report) at 639-40.

---

[1] Magnolia assumes Kurin intends to refer to the doctrine of ***equivalents***.



**Magnolia's Response:** Disputed. Professor Meinhart provided infringement opinions regarding the pressure differential between the top of the blood barrier and the outlet. *E.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 545-55. Kurin's misdescriptions of those opinions are material to its motion and disputed.

17.     The location of "A" and "B" roughly corresponds with "8" and "9" respectively in Dr. Meinhart's experiment. *Compare* Decl. at Ex. 4 (Meinhart Infringement Report) at 640 *with id.* at 53; *see also* Decl. at Ex. 7 (Meinhart Dep. Ex. 1 Excerpt).



**Magnolia's Response:** Undisputed.

18.    Dr. Meinhart ***only*** offers this alternative opinion with respect to independent claims 1, 11, 21 of the '081 Patent and independent claim 1 of the '709 Patent. *See id.* at 639-641, 750-752, 866-868, 1323-1325; *see also id.* at 938-963, 1038-1071, 1166-1199, 1385-1415, 1488-1515, 1579-1610.

**Magnolia's Response:** Undisputed.

19.    Dr. Meinhart testified that the pressure differential between 8 and 9 would be "less than 0.012 psi," and "[i]t could be, like, 0.002, 0.003 [psi]." Decl. at Ex. 6 (Meinhart Dep.) at 200:20-201:6; 232:22-234:17.

**Magnolia's Response:** Undisputed.

20.    Dr. Meinhart testified that the pressure differential between 3 and 10 is about 6.3 psi, or three orders of magnitude greater than the differential between 8 and 9. *Id.* at 218:5-219:4; 273:7-13; 234:18-235:15.

**Magnolia's Response:** Undisputed.

21.    In reference to his pressure differential graph (CSOF #8), Dr. Meinhart agreed that "in Regime B the magnitude of the pressure differential between 8 and 9 is decreasing," *i.e.*, "the absolute values [of the difference] are going closer to zero." *Id.* at 242:14-243:18. Dr. Meinhart explained that "when the barrier starts to seal. . . caus[ing] the pressure gradient between 8 and 9 to build to a zero value." *Id.* at 239:5-12.

**Magnolia's Response:** Undisputed.

22.    Dr. Meinhart testified that before the Jet's stopper is dislodged, the pressure differential between 8 and 9 ***falls to zero***. *Id.* at 240:4-240:15, 243:8-243:18, 230:4-230:15.

**Magnolia's Response:** Disputed. Professor Meinhart did not testify that the pressure differential between 8 and 9 "falls to zero." He testified, that "during Regime B . . . the pressure gradient [between 8 and 9] is negative, building to a value of zero." Voronov Ex. E (Meinhart Deposition Tr.) at 236:10-237:22.

23.    When asked whether the pressure differential between 8 and 9 causes the Jet's stopper to move, Dr. Meinhart testified that "it is ***necessary*** for the pressure differential between X1 [8] and Y1 [9] to change in order for the plug to move." *Id.* at 200:20-202:18, 219:5-221:10. Dr. Meinhart never opined that the pressure differential between 8 and 9 (Dr. Meinhart estimates around 0.003 psi) is ***sufficient*** to move the plug/transition the valve, whereas the pressure differential between the

inlet and outlet (*i.e.*, 6.3 psi) was sufficient. *See* CSOF #8-9. Dr. Meinhart stated the second pressure differential between 8 and 9 "can be neglected." Decl. at Ex. 4 (Meinhart Infringement Report) ¶152. Dr. Antonsson agreed, stating "any pressure difference [in this location] is insignificant." Decl. at Ex. 8 (Antonsson Rebuttal Non-Infringement Report) ¶235, *see also id.* ¶242.

> **Magnolia's Response:** Disputed. Professor Meinhart opined that the pressure differential between portions 8 and 9 of the Kurin Jet is sufficient to move the movable plug and to transition the valve. *E.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶¶ 545, 1232. Professor Meinhart did not opine that the pressure differential between points 8 and 9 "can be neglected"; instead, he opined that "***the viscous losses*** due to air flow through the tubes (including tube c) ***can be neglected***." *Id.* ¶ 152 (emphasis added). By contrast, Dr. Antonsson opined: "[V]iscous losses (drag or friction) of air in the outlet channel are so small that ***any pressure difference is insignificant***." Voronov Ex. G (Antonsson Rebuttal Report) ¶ 235 (emphasis added). That opinion addresses an issue of fact that is material to Kurin's motion and disputed.

24.    Certain independent claims require the pressure differential "between the [movable plug/valve] and the outlet," be ***greater*** than the pressure differential between the inlet and outlet. Decl. at Ex. 1 ('081 Patent), cl. 21; *id.* at Ex. 3 ('709 Patent), cl. 19.

14

**Magnolia's Response:** Undisputed.

25.    Dr. Meinhart agreed that "the pressure differential between 8 and 9 cannot be the second pressure differential that's recited in [claim 19 of the '709 Patent]" "[b]ecause it's not greater than, yes." Decl. at Ex. 6 (Meinhart Dep.) at 273:7-273:17. Dr. Meinhart testified that the "second pressure differential" only occurs later in *time* than the "first pressure differential." *Id*. at 273:14-274:4, *see also* (CSOF #8).

> **Magnolia's Response:** Disputed in part. Professor Meinhart did not testify that the "second pressure differential" "only" occurs "later in time" (Kurin's phrase) than the "first pressure differential." *See* Voronov Ex. E (Meinhart Deposition Tr.) at 273:14-274:4.

## II.    MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE ISSUE NECESSARY TO BE LITIGATED

26.    Professor Meinhart opines that the Kurin Jet infringes the asserted claims. His infringement opinions establish infringement under either side's proposed construction of "pressure differential . . . between the [moveable plug/ valve] and the outlet."

27.    Under Magnolia's proposed construction, the pressure differential between points A and B in the figure below is a "pressure differential . . . between" the moveable plug or valve and the outlet. *E.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶ 521; *see also id.* ¶¶ 522-529.



28.     In the Kurin Jet, the sampling channel begins below the moveable plug and ends at the outlet. *E.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶ 532.

29.     Under Kurin's proposed construction, a pressure differential may be "in the space that separates the [moveable plug/valve] and the outlet" even if one of the relevant pressures is outside of the space that separates the moveable plug or valve and the outlet. *E.g.*, Voronov Ex. D (Meinhart Infringement Report) ¶ 660.

30.     In the Kurin Jet, once blood comes into contact with the blood barrier, the pressure differential between the points labeled 8 and 9 in the diagram below "is negative" and "build[s] to a value of zero." Voronov Ex. E (Meinhart Deposition Tr.) at 236:10-237:22.

16



Voronov Ex. D (Meinhart Infringement Report) ¶ 129.

31.    The pressure differential between the points labeled 8 and 9 in the diagram above must build to zero in order for the plug to move or for the valve to transition. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 553-55 (explaining that, if pressure differential between top of the blood barrier and outlet did not build to zero, "the moveable plug would not move to the second position"); *id.* at Ex. E (Meinhart Deposition Tr.) at 207:20-208:11 (testifying that the "force that's coming from underneath" the plug is "only half the story").

32.    Professor Meinhart's experiment analyzed the changes in the pressure differential between the inlet and the outlet over five phases of the Jet's operation. Voronov Ex. D (Meinhart Infringement Report) ¶ 139.



33.    The first phase, termed "Regime A," begins after a user attaches a sample collection device and continues as liquid flows into the inlet and containment channel. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 140-41.



34.    The second phase, termed "Regime B," begins as liquid starts to contact the blood barrier and continues until liquid seals the barrier. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 142-43.



35.     The third phase, termed "Regime C," occurs when the moveable plug moves from its first position to a second position. Voronov Ex. D (Meinhart Infringement Report) ¶¶ 144-45.



36.     The fourth phase, termed "Regime D," begins after the moveable plug moves to its second position and continues as liquid flows into the sampling channel. Voronov Ex. D (Meinhart Infringement Report) ¶ 146.



37.    The fifth phase, termed "Regime E," occurs as liquid flows through the sampling channel and outlet to the sample collection device. Voronov Ex. D (Meinhart Infringement Report) ¶ 147.

38.    Professor Meinhart's simulations showed, among other things, pressures directly below the moveable plug and at the inlet during "Regime B." Voronov Ex. D (Meinhart Infringement Report) ¶ 149.



39.    Shan Gaw, one of the inventors of the Magnolia Patents, testified that "a pressure differential within a portion of the housing" means that "[o]ne or both of the [relevant pressures] would reside in one of the elements of the product." Voronov Ex. H (Gaw Deposition Tr.) at 177:22-178:2.

40.    Bob Rogers, Kurin's CEO, testified that the plug or valve in the Kurin Jet moves because of "a pressure differential created" by "the patient's blood pressure being applied to the back side of [the plug], in addition to the vacuum pulling." Voronov Ex. I (Rogers Deposition Tr.) at 103:6-18; *see also id.* at 105:12-16 ("Q. And it's also the vacuum source pulling that causes the moveable plug in the Jet to move, in part? A. It's my understanding.").

41.    Kevin Nason, the head of Kurin's engineering group, testified that the stopper in the Kurin Jet moves because of a difference between two pressures: "the

patient's blood pressure . . . [is] one pressure," and "everything above the volume in the sample channel above the stopper and above the membrane are at the same pressure as the vacuum bottle or syringe which is going to be a lower pressure." Voronov Ex. J (Nason Deposition Tr.) at 84:23-85:12.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Natalie Stoecklein
Elazar Chertow
Keon Zemoudeh
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

David Jiang
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

August 15, 2025

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Magnolia Medical Technologies, Inc.*

## CERTIFICATION OF COUNSEL

I hereby certify that the foregoing MAGNOLIA MEDICAL TECHNOLOGIES, INC.'S RESPONSE TO DEFENDANT KURIN, INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF BULLINGTON PATENTS complies with the type and number limitations set forth in the November 10, 2022 Standing Order. The total number of words, including introductions and footnotes, but excluding the cover page, the paragraphs from Kurin's Concise Statement of Facts which are reproduced for ease of reference, and the signature page is 1,739 according to the word processing system used to compile the Response. The text of the Response is 14-point, Times New Roman.

/s/ Anthony D. Raucci

_____

Anthony D. Raucci (#5948)

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 15, 2025, upon the following in the manner indicated:

Kelly E. Farnan                                           *VIA ELECTRONIC MAIL*
Sara M. Metzler
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
One Rodney Square
Wilmington, DE 19801
*Attorneys for Defendant Kurin, Inc.*

Gregg F. LoCascio, P.C.                              *VIA ELECTRONIC MAIL*
Sean M. McEldowney
Kelly Tripathi
Matthew J. McIntee
Socrates L. Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
*Attorneys for Defendant Kurin, Inc.*

Sam Blake                                                  *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
*Attorneys for Defendant Kurin, Inc.*

Jonathan Hangartner, Esq.                              *VIA ELECTRONIC MAIL*
X-Patents, APC
5670 La Jolla Blvd.
La Jolla, CA 92037
*Attorneys for Defendant Kurin, Inc.*

                                        */s/ Anthony D. Raucci*
                                        _____
                                        Anthony D. Raucci (#5948)

1