# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KURIN, INC., <br><br> Defendant. | C.A. No. 24-01124 (CFC) <br><br> **JURY TRIAL DEMANDED** <br><br> **REDACTED** <br> **PUBLIC VERSION** |

## KURIN, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF BULLINGTON PATENTS

OF COUNSEL:
Gregg F. LoCascio, P.C.
Sean M. McEldowney
Matthew J. McIntee
Kelly Tripathi
Socrates L. Boutsikaris
M. Houston Brown, Jr.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Sam Blake
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Jonathan Hangartner
X-Patents, APC
5670 La Jolla Blvd.
(858) 454-4313

Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant Kurin, Inc.*

Dated: August 29, 2025

# **TABLE OF CONTENTS**

I.  Argument ........................................................................................................1

    A.  Magnolia's First and Third Theories Cannot Show Infringement as a Matter of Law Under Kurin's Construction of "Pressure Differential … Between the [Moveable Plug/ Valve] and the Outlet"......................2

    B.  Magnolia's Second Theory Cannot Show Infringement as a Matter of Law ...................................................................................................5

        1.  The pressure differential Dr. Meinhart points to in his second infringement theory is decreasing to zero, not "increasing" or "building," as the claims require..................................................6

        2.  The pressure differential Dr. Meinhart points to in his second infringement theory is not "sufficient" to move/transition the plug/valve, as two of the claims require ......................................9

II. Conclusion ...................................................................................................11

*All *emphasis* added unless otherwise notated

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
   349 F.3d 1373 (Fed. Cir. 2003) ............................................................................7

*Kyowa Hakko Bio, Co., Ltd v. Ajinomoto Co.*,
   2019 WL 5061066 (D. Del. Oct. 9, 2019)............................................................7

*Twp. of Tinicum v. U.S. Dep't of Transp.*,
   582 F.3d 482 (3d Cir. 2009) ................................................................................10

*Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*,
   2021 WL 2823563 (S.D.N.Y. July 7, 2021).........................................................8

Magnolia's opposition mischaracterizes Kurin's arguments and the asserted claims to obfuscate fatal flaws in Magnolia's infringement theories. The claim element at issue is the second pressure differential recited in all independent claims in the asserted patents, i.e., the "pressure differential … between the [moveable plug/ valve] and the outlet." Two of Magnolia's infringement theories, proffered through its expert Dr. Meinhart, rely on a pressure differential across the entire accused Kurin Jet device, rather than a pressure differential between the plug and outlet as the claims require.

Magnolia's final infringement theory is offered for a few of the asserted independent claims. Those claims, however, additionally require the relevant pressure differential between the plug and outlet to "increase" or "build" until it moves the plug. Yet, Dr. Meinhart has admitted that the purported pressure differential in the Kurin Jet that he relies on for this theory starts very small, then ***decreases to zero*** before the plug moves. That is the opposite of what the claims at issue require. Not surprisingly, this small, decreasing pressure differential is not what causes the plug to move in Kurin's Jet, which is another reason this theory fails. All three infringement theories fail as a matter of law.

**I.    ARGUMENT**

Magnolia puts forward three infringement theories for the claim elements reciting a "pressure differential . . . between the [moveable plug/ valve] and the

1

outlet."  Magnolia refers to these as Dr. Meinhart's first, second, and third infringement theories.  D.I. 289 at 6-8.  Dr. Meinhart asserted his first and third theories as to all asserted independent claims, but only asserted his second theory as to four of those claims.  (Magnolia's Response to Kurin's Concise Statement of Facts, D.I. 293 ("RSOF")) ¶ 18.  For the reasons explained in Kurin's opening brief and reiterated below, all three of these theories fail as a matter of law.

    **A.**    **Magnolia's First and Third Theories Cannot Show Infringement as a Matter of Law Under Kurin's Construction of "Pressure Differential … Between the [Moveable Plug/ Valve] and the Outlet"**

In his first and third theories, Dr. Meinhart relies on a pressure difference between one point that is upstream of the plug and therefore *not* in the space separating the plug and the outlet (labeled "A" in Dr. Meinhart's figures below), and a second point that is in the space between the plug and outlet (labeled "B").

**Dr. Meinhart's <u>First</u> Infringement Theory**



**Dr. Meinhart's <u>Third</u> Infringement Theory**



RSOF ¶ 12.  Neither of these pressure differentials meets Kurin's (correct) proposed construction of the claim, which requires that the pressure differential at issue be based on a comparison of two points that are both "in the space that separates the [moveable plug/valve] and the outlet." *See, e.g.*, Dkt. 279 at 1.  While Magnolia acknowledges in its summary judgment opposition that "Kurin's construction forecloses the first" of Dr. Meinhart's infringement theories (D.I. 289 at 9), Magnolia inexplicably ignores that Dr. Meinhart's third infringement theory suffers the same fatal flaw.  In fact, point A in Dr. Meinhart's third infringement theory is further away from the relevant space than point A in his first theory.

The pressure differential in Dr. Meinhart's third theory is the pressure differential between the inlet and outlet of the device.  Clearly that is not the right pressure differential for the claim element at issue, because that specific pressure differential is expressly recited in a different claim element.  *Compare* '081 Patent,

Claim Element 21[d] (reciting "first pressure differential between the inlet and the outlet"), *with* '081 Patent, Claim Element 21[e] (reciting "second pressure differential greater than the first pressure differential applied between the moveable plug and the outlet"). Dr. Meinhart does not point to any pressure differential between the plug and outlet in his third infringement theory, only a pressure differential between the inlet and outlet of the device.

For the reasons explained in Kurin's claim construction briefing, the correct construction of the claim element at issue requires that both points for this pressure differential be in the space separating the plug and the outlet. *See, e.g.*, D.I. 279; D.I. 307. If the Court adopts Kurin's proposed construction, then Dr. Meinhart's first and third infringement theories fail as a matter of law.[1] Magnolia's brief simply ignores the straightforward conclusion compelled by Kurin's proposed construction and raises no relevant factual dispute that could avoid summary judgment.

---

[1] Dr. Meinhart's first and third theories are the only infringement theories Magnolia offers for claims 1, 11, 22 of the '863 Patent and claims 10, 19, 28 of the '709 Patent. RSOF ¶ 18. If the Court adopts Kurin's construction, Magnolia cannot show infringement of these claims.

### B.   Magnolia's Second Theory Cannot Show Infringement as a Matter of Law

Dr. Meinhart's second theory, which applies only to (at most[2]) four of the ten independent asserted claims, also fails as a matter of law. Three of these claims require that the pressure differential between the plug and the outlet "builds" or "increases" until the difference in pressure is great enough to move the plug or transition the valve. *See* '081 Patent, Claim 1 ("the pressure differential … to build to an extent sufficient to move the moveable plug"); '081 Patent, Claim 11 ("the moveable plug configured to move … in response to an increase in a pressure differential"); '709 Patent, Claim 1 ("the pressure differential … to build to an extent sufficient to transition the valve"). But in his second infringement theory, Dr. Meinhart relies on a purported pressure differential that decreases to zero and that could not be sufficient to move the plug.

---

[2]   Magnolia does not address claim 21 of the '081 Patent which requires "the moveable plug configured to move … in response to a second pressure differential greater than the first pressure differential applied between the moveable plug and the outlet" in its opposition, thus apparently conceding non-infringement under Magnolia's second theory. *See* D.I. 289 at 16-21. This claim requires the second pressure differential be "greater than" the first, which Magnolia seems to concede it cannot show. *Id.; see also* RSOF ¶ 25.

1. **The pressure differential Dr. Meinhart points to in his second infringement theory is decreasing to zero, not "increasing" or "building," as the claims require**

In his second infringement theory, Dr. Meinhart contends that a pressure difference between points A and B in the figure below satisfies the relevant claim element:

**Dr. Meinhart's <u>Second</u> Infringement Theory**



RSOF ¶ 16. Dr. Meinhart agreed that any pressure difference in this area is very small, i.e., "less than 0.012 psi," and "[i]t could be, like 0.002, 0.003." RSOF ¶ 19. He also admitted that this very small pressure difference is "decreasing" in the time leading up to the accused plug moving. RSOF ¶ 21. In fact, he admitted that the magnitude of the difference reaches zero (i.e., the pressure differential ceases to exist) before the plug moves. RSOF ¶ 22. That should be the end of this theory. A difference in pressure that is decreasing to zero is not "increasing" or "building" as these claims require.

Hoping to obscure this fatal flaw, Dr. Meinhart arbitrarily switches the sign on the pressure differential in his second infringement theory from positive to negative as compared to his calculations in the other two infringement theories. Then he argues that the pressure differential is mathematically "increasing" and "building" from a negative number to zero. RSOF ¶ 22. That is, rather than looking at the magnitude of the pressure difference, he subtracts the higher pressure at point A from the lower pressure at point B, which necessarily yields a negative number. He offers no justification for this arbitrary choice to switch the sign.

If the claims in fact left open the choice of whether to subtract the bigger pressure from the smaller pressure, or vice versa, then literally any changing pressure differential would simultaneously be both "increasing" (infringing) and "decreasing" (non-infringing). That would be textbook indefiniteness. *See Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (rejecting a reading of the claim that would render the claim indefinite, where the construction would lead to conclusion that "a given embodiment would simultaneously infringe and not infringe the claims, depending on the particular bacteria chosen for analysis."); *Kyowa Hakko Bio, Co., Ltd v. Ajinomoto Co.*, , 2019 WL 5061066, at *9 (D. Del. Oct. 9, 2019) ("Where the type of measurement chosen [e.g., using arithmetic mean versus volume weighted average] makes the difference between practices that infringe or do not infringe the patent, ambiguity in the patent

7

about exactly which measurement to employ creates indefiniteness."); *Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, 2021 WL 2823563, at *5 (S.D.N.Y. July 7, 2021) (stating "the role of the district court is to construe all terms whose meaning or scope is in controversy" and holding that claim language that is "contradictory and nonsensical" is indefinite).

But that is not what the claims require, as evidenced by the fact that Dr. Meinhart's own first and third infringement theories subtract the lower pressure from the higher pressure to identify a pressure difference that is increasing in magnitude until it moves the plug. For instance, in Dr. Meinhart's third infringement theory he measures the pressure at the outlet (point B in Dr. Meinhart's figure below) and subtracts it from the pressure he measures at the inlet (point A in Dr. Meinhart's figure). RSOF ¶ 8.

**Dr. Meinhart's <u>Third</u> Infringement Theory**



RSOF ¶ 12. Based on his measurements, Dr. Meinhart concludes that the magnitude of the pressure difference between the inlet and the outlet "increases" or "builds" from less than 2 psi at t = 619 milliseconds and "peaks at t = 1194 ms to a value of Δp = 6.34 psi." RSOF ¶¶ 8, 9. Using the logic from Dr. Meinhart's second infringement theory where he subtracts A from B to yield a negative number, Dr. Meinhart's first and third theories would fail because the pressure differential would be getting more negative, i.e., mathematically "decreasing" on a number line from negative 2 psi to negative 6.34 psi.

Dr. Meinhart's arbitrary choice to switch the sign on the pressure differential does not generate a genuine dispute of material fact. The magnitude of the pressure differential Dr. Meinhart identifies in his second infringement theory is decreasing to zero before the plug moves in Kurin's Jet product. That cannot meet the claim elements at issue that require the pressure difference to be "increasing" or "building."

> 2. The pressure differential Dr. Meinhart points to in his second infringement theory is not "sufficient" to move/transition the plug/valve, as two of the claims require

Two of the four claims for which Magnolia asserts its second theory also require that the "pressure differential" must "build to an extent *sufficient* to move[/transition] the moveable plug[/valve] from the first position[/state] to a second position[/state]" '081 Patent, cl. 1, '709 Patent, cl. 1. Even if the pressure

9

differential in Magnolia's second theory was increasing, which it is not, Dr. Meinhart admits it is not sufficient to move the plug/transition the valve.

In discussing his first and third theories of infringement, Dr. Meinhart opines that a pressure differential of 6.34 psi "is sufficient to move the movable plug." RSOF ¶ 9. The purported pressure differential in Dr. Meinhart's second theory is orders of magnitude less. For instance, Dr. Meinhart concluded that the pressure differential in the sampling channel is "about $\Delta p = 0.012$ psi, which is *far lower* than [the] relevant pressure *required* to move the movable plug." RSOF ¶ 11. Magnolia's opposition does not dispute this admission that the pressure differential in the sampling channel is insufficient to move the plug.

Instead, Magnolia states that whereas some claims "require that the moveable plug or valve is configured to move or transition 'in response to'—i.e., 'because of'—a change in the "pressure differential," others "only" require that the "pressure differential … build to an extent sufficient to" move the plug or transition the valve. D.I. 289 at 18. Magnolia's implication that the "sufficient to" requirement is less exacting is incorrect. "Sufficient to" requires a more direct causal relationship between a condition and result than "necessary to." *See Twp. of Tinicum v. U.S. Dep't of Transp.*, 582 F.3d 482, 488-89 (3d Cir. 2009) ("A necessary condition describes a prerequisite … A sufficient condition is a guarantee.").

The undisputed facts are clear that any pressure differential that may exist downstream of the accused plug is not itself sufficient to move the plug. As Magnolia explained, "two things must happen for the plug to move or the valve to transition—pressure underneath the plug must be large, and pressure above the plug must be small." D.I. 289 at 20. Yet Magnolia follows this assertion with the non-sequitur "the pressure differential between the top of the blood barrier and the outlet [i.e., space downstream of the plug] thus becomes sufficient to move the moveable plug or transition the valve." D.I. 289 at 20. If two things must happen, one occurring alone, as a principle of logic, is not sufficient. Instead it is merely necessary, which does not meet the claim elements requiring it to be sufficient.

## II.   CONCLUSION

For these reasons, Kurin requests entry of summary judgment of no infringement on all asserted claims in the Bullington Patents.

11

| | |
|---|---|
| OF COUNSEL: | /s/ Sara M. Metzler |
| | Kelly E. Farnan (#4395) |
| Gregg F. LoCascio, P.C. | Sara M. Metzler (#6509) |
| Sean M. McEldowney | One Rodney Square |
| Matthew J. McIntee | Richards, Layton & Finger, P.A. |
| Kelly Tripathi | 920 N. King Street |
| Socrates L. Boutsikaris | Wilmington, DE 19801 |
| M. Houston Brown, Jr. | (302) 651-7700 |
| KIRKLAND & ELLIS LLP | farnan@rlf.com |
| 1301 Pennsylvania Avenue, N.W. | metzler@rlf.com |
| Washington, D.C. 20004 | |
| (202) 389-5000 | *Attorneys for Defendant Kurin, Inc.* |

Sam Blake
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

Jonathan Hangartner
X-PATENTS, APC
5670 La Jolla Blvd.
La Jolla, CA 92037
(585) 454-4313

Dated: August 29, 2025

12

# **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Kurin, Inc.'s Reply Brief in Support of Motion for Summary Judgment of Non-Infringement of Bullington Patents complies with the type and word limitations set forth in the Court's November 10, 2022 Standing Order regarding Briefing in All Cases and Paragraph 16 of the Scheduling Order (D.I. 102). The total number of words, including introductions and footnotes, but excluding the cover page, table of contents, table of authorities, and signature page is 2,208 words according to the word processing system to compile the brief. The text of the brief is 14-point, Times New Roman.

                                                                    */s/ Sara M. Metzler*
                                                                   Sara M. Metzler (#6509)

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, copies of the foregoing were caused to be served upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
Rodger D. Smith II
Anthony D. Raucci
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Ashok Ramani
Micah G. Block
Serge A. Voronov
Elaine M. Andersen
Natalie J. Stoecklein
Elazar Chertow
David Jiang
Keon Zemoudeh
Davis Polk & Wardwell LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063

*/s/ Sara M. Metzler*
Sara M. Metzler (#6509)