# EXHIBIT 4A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGNOLIA MEDICAL
TECHNOLOGIES, INC.,                    )
                                       )
                                       )
            Plaintiff,                 )
                                       )
                                       )   C.A. No. 24-1124 (CFC)
      v.                               )
                                       )
KURIN, INC.,                           )
                                       )
            Defendant.                 )

**EXHIBIT 4A**

**MAGNOLIA'S STATEMENT OF ISSUES OF LAW
THAT REMAIN TO BE LITIGATED AS TO THE MAGNOLIA
ASSERTED PATENTS**

# TABLE OF CONTENTS

PAGE

I.   Infringement ................................................................................2

    A.   Issues of Law to be Litigated .................................................2

    B.   Legal Authority .......................................................................6

        1.   Direct Infringement.......................................................6

        2.   Induced Infringement....................................................7

        3.   Willful Infringement .....................................................8

II.  Damages to Magnolia ..................................................................10

    A.   Issues of Law to be Litigated ...............................................10

    B.   Legal Authority .....................................................................11

        1.   Damages Generally......................................................11

        2.   Lost Profits..................................................................13

        3.   Reasonable Royalty.....................................................17

        4.   Pre-Judgment and Post-Judgment Interest...................22

III. Objective Indicia of Nonobviousness..........................................23

    A.   Issues of Law to be Litigated ...............................................23

    B.   Legal Authority .....................................................................25

        1.   Objective Indicia of Nonobviousness Generally .......25

        2.   Commercial Success ...................................................26

        3.   Praise and Recognition ...............................................27

Ex. 4A – i
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

4.    Copying ...................................................................28

5.    Long-Felt But Unsolved Need ..................................28

6.    Failure of Others .....................................................30

7.    Unexpected Results ..................................................32

IV.    Injunctive Relief to Magnolia ..........................................33

A.    Issues of Law to be Litigated ...............................33

B.    Legal Authority .....................................................34

V.    Enhanced Damages, Attorneys' Fees, and Costs ...........36

A.    Issues of Law to be Litigated ...............................36

B.    Legal Authority .....................................................37

1.    Enhanced Damages ..................................................37

2.    Attorneys' Fees and Costs under 35 U.S.C. § 285 ...................38

VI.    Invalidity ..........................................................39

A.    Issues of Law to be Litigated ...............................39

B.    Legal Authority .....................................................41

1.    Invalidity Generally ................................................41

2.    Qualifying as Prior Art ...........................................44

3.    Anticipation ............................................................45

4.    Obviousness ............................................................47

5.    Written Description .................................................50

6.    Enablement ..............................................................52

Ex. 4A – ii

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

7.    Indefiniteness ...............................................................53

Ex. 4A – iii

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

Magnolia respectfully submits this Statement of Issues of Law as to the Magnolia Asserted Patents, which is based on Magnolia's claims and Magnolia's current understanding of the defenses and counterclaims of Kurin and the proceedings in this action to date.

To the extent Magnolia's Statement of Issues of Fact That Remain to be Litigated as to the Magnolia Asserted Patents set forth in **Exhibit 2A** contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified below is more appropriately considered an issue of fact, Magnolia incorporates such issues by reference into **Exhibit 2A**. By including an issue herein, Magnolia does not assume the burden of proof or production with regard to that issue.

Magnolia reserves the right to supplement and amend this statement, for example, to respond to any issues, argument, or evidence raised by Kurin, or in the event of any Court ruling that might raise new or additional issues. The following statements are not exhaustive, and Magnolia reserves the right to prove any matters identified in its pleadings, infringement contentions, interrogatory responses, and/or expert reports. Magnolia also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order. Magnolia further intends to offer evidence to rebut evidence offered by Kurin, and to argue that Kurin is precluded from offering evidence in support of theories and claims not adequately

disclosed in accordance with the scheduling order.  Magnolia incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

Magnolia reserves the right to rely upon the legal authorities cited by Kurin in its corresponding exhibit, **Exhibit 5A**.

## I.      INFRINGEMENT

### A.      Issues of Law to be Litigated

1.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 1, 5-11, 15-21, and 25-30 of the #081 Patent by making, using, selling, and offering to sell in the United States the accused Kurin blood culture collection sets:  DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, TJ-PIV18, SJ-PIV4, and SJ-PIV10, (collectively, the "Kurin Accused Products").

2.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 1, 5-11, 15-21, and 25-30 of the #081 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the Kurin Accused Products.

3.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 2, 12, and 22 of

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

the #081 Patent by making, using, selling, and offering to sell in the United States the accused Kurin blood culture collection sets: SJ-PIV4 and SJ-PIV10.

4.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 2, 12, and 22 of the #081 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the accused Kurin blood culture collection sets: SJ-PIV4 and SJ-PIV10.

5.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 3, 4, 13, 14, 23, and 24 of the #081 Patent by making, using, selling, and offering to sell in the United States the accused Kurin blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

6.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 3, 4, 13, 14, 23, and 24 of the #081 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the accused Kurin blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

7.      Whether Magnolia has proven by a preponderance of the evidence that Kurin willfully infringed the #081 Patent.

Ex. 4A – 3
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

8. Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 1, 5-11, and 15-30 of the #863 Patent by making, using, selling, and offering to sell in the United States the Kurin Accused Products.

9. Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 1, 5-11, and 15-30 of the #863 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the Kurin Accused Products.

10. Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 2 and 12 of the #863 Patent by making, using, selling, and offering to sell in the United States the accused Kurin blood culture collection sets:  SJ-PIV4 and SJ-PIV10.

11. Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 2 and 12 of the #863 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the accused Kurin blood culture collection sets:  SJ-PIV4 and SJ-PIV10.

12. Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 3, 4, 13, and 14 of the #863 Patent by making, using, selling, and offering to sell in the United States the accused Kurin blood culture collection sets:  DJ-221, DJ-223, MJ-221,

MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

13.   Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 3, 4, 13, and 14 of the #863 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the accused Kurin blood culture collection sets:  DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

14.   Whether Magnolia has proven by a preponderance of the evidence that Kurin willfully infringed the #863 Patent.

15.   Whether Magnolia has proven by a preponderance of the evidence that Kurin has directly infringed under 35 U.S.C. § 271(a) claims 1-3, 6-12, 15-21, and 24-30 of the #709 Patent by making, using, selling, and offering to sell in the United States the Kurin Accused Products.

16.   Whether Magnolia has proven by a preponderance of the evidence that Kurin has indirectly infringed, and continues to indirectly infringe claims 1-3, 6-12, 15-21, and 24-30 of the #709 Patent under 35 U.S.C. § 271(b) by actively inducing the use of the Kurin Accused Products.

**B.    Legal Authority**

**1.    Direct Infringement**

17.    "Infringement is a question of fact."  *Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).  Magnolia's burden of proof is preponderance of the evidence.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).  A patentee may prove infringement by "any method of analysis that is probative of the fact of infringement," including direct or circumstantial evidence.  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009).

18.    Direct infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a).  "Determination of a claim of infringement involves a two step inquiry.  First, the claims are construed, a question of law in which the scope of the asserted claim is defined.  Second, the claims, as construed, are compared to the accused device." *Advanced Cardiovascular Sys.*, 261 F.3d at 1336 (internal citations omitted).  "To prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

## 2. Induced Infringement

19.    "Whoever actively induced infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (cleaned up).  "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) . . . even in the absence of actual knowledge."  *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).  Willful blindness has "two basic requirements: (1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  "[A] belief as to invalidity cannot negate the scienter required for induced infringement."  *Commil*, 575 U.S. at 645.  "A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence."  *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006).  "The mere fact, if true, that [the defendant] knew or should have known that there was a substantial risk that the acts of those using its accused products would infringe the patent is not sufficient for active inducement of

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

infringement." *Barry v. Medtronic, Inc.*, Case No. 14-cv-104 (E.D. Tex.), Dkt. No. 427 at 25 (Trial Tr. Nov. 11, 2016).

### 3.    Willful Infringement

20.    Willfulness of behavior is a question of fact. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). To prove willful infringement, the patentee must establish by a preponderance of the evidence that the accused infringer's conduct was subjectively willful. *See id.* at 1340; *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). "Section 284 allows district courts to punish the full range of culpable behavior." *Halo*, 579 U.S. at 106.

21.    "Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)) (cleaned up). In determining willfulness, the factfinder must consider all factors, including, but not limited to:

> (1) Whether or not [defendant] intentionally copied a product of [plaintiff] that is covered by the . . . patent; (2) Whether or not [defendant] reasonably believed it did not infringe or that the patent was invalid; (3) Whether or not [defendant] made a good-faith effort to avoid infringing the . . . patent, for example, whether [defendant]

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

attempted to design around the . . . patent; and (4) Whether or not [defendant] tried to cover up its infringement.

*Eko*, 946 F.3d at 1378–79 (finding that "the latter half of [the Federal Circuit Bar Association's Model Patent Jury Instruction] provides a list of facts that the jury could properly consider").

22.    "[T]o prove willful infringement of a claim," it is sufficient for a plaintiff to show "that it is more likely true than not true that [the defendant] intentionally ignored or recklessly disregarded that claim." *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 592 (D. Del. 2019), *aff'd*, 981 F.3d 1030 (Fed. Cir. 2020); *see also Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1296 (Fed. Cir. 2023) ("All of this provided the jury with substantial evidence to support a finding that [defendant] 'recklessly' disregarded [plaintiff]'s patent rights and, therefore, willfully infringed.").

23.    "[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness." *Minn. Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992).  Courts consider whether a party's pre-patent conduct is "particularly egregious" under the totality of the circumstances. *Bioverativ Inc. v. CSL Behring LLC*, C.A. No. 17-914-RGA, 2020 WL 1332921, at *2 (D. Del. Mar. 23, 2020) (citing *Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416,

422 (D. Del. 2003)); *Minnesota Min.*, 976 F.2d at 1581 ("When determining whether infringing conduct warrants a finding of willfulness the court must examine the totality of the circumstances of the case."). Particularly egregious conduct includes "[p]re-patent copying," "consciously wrongful" conduct, and "malicious" behavior. *Bioverativ*, 2020 WL 1332921, at *2–*3; *see also Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 978–79 (Fed. Cir. 1986) (affirming finding of willfulness where there was evidence of pre-patent copying). Copying with respect to willfulness merely requires that "the infringer intentionally copied the ideas of another." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996) (cleaned up) (finding that willfulness does not require a finding of "slavish copying").

24.    "Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP*, 829 F.3d at 1341.

## II.    DAMAGES TO MAGNOLIA

### A. Issues of Law to be Litigated

25.    The amount of compensatory damages to which Magnolia is entitled for Kurin's infringement of the Magnolia Asserted Patents, including the amount of lost profits damages and, where lost profits are not available, reasonable royalty damages.

26.    Whether, during the damages period:  (1) there was demand for the patented product; (2) there were no available, acceptable non-infringing alternatives; (3) Magnolia had the manufacturing and marketing capacity to make the infringing sales that Kurin made; and (4) Magnolia would have made a quantifiable amount of lost profits if Kurin had not infringed.

27.    For any infringement for which Magnolia is not entitled to lost profits damages, the amount of reasonable royalty damages that Magnolia is entitled to for Kurin's infringement.

28.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to an accounting of damages for post-verdict infringement prior to any injunction, and the amount of such damages.

29.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

**B.    Legal Authority**

**1.    Damages Generally**

30.    Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  The plaintiff must

Ex. 4A – 11
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

show the amount of damages by a preponderance of the evidence.  *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).  "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.

31.    The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" them for the infringement, such that the patent owner is restored to the financial position they would have been in had the infringement not occurred.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545, 1547 (Fed. Cir. 1995) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("[T]he Supreme Court has interpreted [Section 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement.") (emphasis in original).

32.    A patentee is entitled to "lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder."  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

33.    "While [the patentee] is not required to prove the amount of its damages with mathematical precision, [it] must prove them with reasonable certainty.  [The jury] may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork."  *Magnolia Medical Techs., Inc. v. Kurin, Inc.*, CA. No. 19-97-CFC (D. Del.), Final Jury Instructions

Ex. 4A – 12

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

(D.I. 450 at 16).  However, mere difficulty in ascertaining damages is not fatal to the patentee.  *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 2.    Lost Profits

34.    "Lost profits may be in the form of diverted sales, eroded prices, or increased expenses.  The patent owner must establish a causation between his lost profits and the infringement.  A factual basis for the causation is that 'but for' the infringement, the patent owner would have made the sales that the infringer made, charged higher prices, or incurred lower expenses."  *Lam*, 718 F.2d at 1065; *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995) ("To recover lost profits damages for patent infringement, the patent owner must show that it would have received the additional profits 'but for' the infringement.").  "The patent owner bears the burden to present evidence sufficient to show a reasonable probability that it would have made the asserted profits absent infringement."  *King Instruments*, 65 F.3d at 952.  "When the patentee establishes the reasonableness of this inference, e.g., by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales.  The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales."  *Rite-Hite*, 56 F.3d at 1545 (internal citations omitted).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

35.    "There is no particular required method to prove but for causation" in patent cases.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017).  "One useful, but non-exclusive method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit" in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). *Mentor Graphics*, 851 F.3d at 1284 (cleaned up).  Under the *Panduit* test, a patentee is entitled to lost profits if it can establish:  (1) "demand for the patented product"; (2) "absence of acceptable noninfringing substitutes"; (3) "manufacturing and marketing capability to exploit the demand"; and (4) "the amount of the profit [the patentee] would have made."  575 F.2d at 1156. "Lost profit damages do not depend on the number of patents infringed by one single product . . . .  The lost profit calculation depends only on market variables." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001).

36.    "The first factor—demand for the patented product—considers demand for the product as a whole."  *Mentor Graphics*, 851 F.3d at 1285 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330–31 (Fed. Cir. 2009)).  "This factor does not require any allocation of consumer demand among the various limitations recited in a patent claim.  Instead, the first *Panduit* factor simply asks whether demand existed for the 'patented product,' i.e.,

a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'" *DePuy*, 567 F.3d at 1330 (quoting *Rite-Hite*, 56 F.3d at 1548–49).

37.    "The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention." *Mentor Graphics*, 851 F.3d at 1285 (citing *DePuy*, 567 F.3d at 1331).

38.    "[I]f purchasers are motivated to purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).  Similarly, "products lacking the advantages of the patented invention 'can hardly be termed a substitute acceptable to the customer who wants those advantages.'" *Presidio*, 702 F.3d at 1362, quoting *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901–02 (Fed. Cir. 1986); *see also Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556 (Fed. Cir. 1986) (affirming district court's finding of no acceptable, noninfringing alternatives where "[t]he various [proposed alternative] wheelbarrows to which [infringer] refers incorporate only some, but not all, of the elements of the patent.").  This is especially true where the "proposed non-infringing substitutes are not adequate substitutes in the same market" and/or the market is moving away from the

Ex. 4A – 15

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

proposed non-infringing substitute to the infringing design. *Presidio*, 702 F.3d at 1361. Products cannot qualify as non-infringing substitutes if they "infringe any one of plaintiffs' patents," as such "substitutes are illegally on the market and it would thus be reasonable to conclude that plaintiffs would make those sales instead." *Parker-Hannifin Corp. v. Champion Labs., Inc.*, No. 1:06-cv-2616, 2008 WL 3166318, at *6 (N.D. Oh. Aug. 4, 2008).

39.    "[T]he patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether" in order to satisfy the second *Panduit* factor. *State Indus.*, 883 F.2d at 1577 (quoting *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984)) (emphasis in original); *see also Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 613 (D. Del. 2004) ("A patentee need not negate every possibility that a purchaser might have bought a product other than its own.").

40.    Under the third *Panduit* factor, a patentee may prove it had the requisite manufacturing and marketing capacity through evidence as to previous manufacturing rates and growth rate. *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997). A patentee may also show sufficient manufacturing and marketing capacity through evidence regarding its pre-existing marketing and distribution channels, as well as by showing that the additional demand would

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

represent only a small fraction of its prior manufacturing. *AOS Holding Co. v. Bradford White Corp.*, C.A. No. 18-412-LPS, 2021 WL 5411103, at *36 (D. Del. Mar. 31, 2021). Ability to subcontract to meet additional demand may also be used to meet the third *Panduit* factor. *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 780 (D. Del. 2015).

41.     As to the fourth *Panduit* factor, a patentee may prove the amount of profits it lost by reasonably quantifying the incremental profits it would have made from the sales it lost. *See Paper Converting Machine*, 745 F.2d at 22. "The incremental income approach to the computation of lost profits is well established in the law relating to patent damages. The approach recognizes that it does not cost as much to produce unit $N + 1$ if the first $N$ (or fewer) units produced already have paid the fixed costs. Thus fixed costs—those costs which do not vary with increases in production, such as management salaries, property taxes, and insurance—are excluded when determining profits." *Id.* (internal citations omitted).

### 3.     Reasonable Royalty

42.     "A patentee receives a reasonable royalty for any of the infringer's sales not included in the lost profit calculation." *Crystal*, 246 F.3d at 1354; *see also Mentor Graphics*, 851 F.3d at 1286 ("For sales in which the patentee cannot

prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales.").

43.    While the patent statute provides a floor of "a reasonable royalty for the use made of the invention by the infringer," 35 U.S.C. § 284, it provides no method for defining a "reasonable" royalty, an exercise that "is not an exact science." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). One approach to determining a reasonable royalty is the "hypothetical negotiation" approach, which the Federal Circuit has held is a reasonable method. *See Summit 6*, 802 F.3d at 1299. The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Id.*

44.    The fifteen factors identified in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), are most commonly used for this analysis. The *Georgia-Pacific* factors are:

1.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

Ex. 4A – 19

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

45.    While the Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions and district courts have repeatedly applied the analysis, the factors are not exclusive, and some or all of the factors may be relevant to a particular case, depending on the facts of the case.  *See, e.g.*, *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008); *Rite-Hite*, 56 F.3d at 1555; *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011).

46.    As described in *Georgia-Pacific*, there is no mathematical formula to determining reasonable royalties:

> [A] multiplicity of inter-penetrating factors bear[s] upon the amount of a reasonable royalty.  But there is no formula by which these factors can be rated precisely in the order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent.  In discharging its responsibility as fact finder, the Court has attempted to exercise a discriminating judgment reflecting its ultimate appraisal of all pertinent factors in the context of the credible evidence.

*Georgia-Pacific*, 318 F. Supp. at 1120–21.  "[A]ny reasonable royalty analysis necessarily involves an element of approximation, and uncertainty."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 857–58 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).  In *Summit 6*, the Federal Circuit held "[t]his court has recognized that estimating a reasonable royalty is not an exact science.  The record may support a

Ex. 4A – 20
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

range of reasonable royalties, rather than a single value.  Likewise, there may be more than one reliable method for estimating a reasonable royalty."  802 F.3d at 1296.

> All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case. Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination. That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible.

*Id.*

47.    "The determination of a reasonable royalty . . . is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started." *State Indus.*, 883 F.2d at 1580; *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) ("[I]t is settled law that an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped."); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013); *Rite-Hite*, 56 F.3d at 1555.

48.    "Regardless of the type of damages [that the jury] choose[s] to award, [it] must be careful to ensure the award is no more and no less than the value of the

patented invention." *Magnolia Medical Techs., Inc. v. Kurin, Inc.*, CA. No. 19-97-CFC (D. Del.), Final Jury Instructions (D.I. 450 at 17).

49.     A patentee "must apportion or separate the damages between the patented improvement and the conventional components" recited in the claims. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).  The "patented improvement" is the feature that contributes to the end product "in a manner that distinguishes it from prior art." *Id.*; *see also Prolitec Inc. v. ScentAir Techs., LLC*, C.A. No. 20-984-WCB, 2023 WL 8697973, at *12 (D. Del. Dec. 13, 2023) ("[D]amages stemming from infringement of the [asserted] dependent claims are confined to the value added by those claims, excluding the value associated with the invalidated claims [from which the asserted claims depend], i.e., 'the incremental value that the patented invention adds to the end product.'"); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("[T]he court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.").

### 4.     Pre-Judgment and Post-Judgment Interest

50.     "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (quoting *General Motors Corp. v. Devex*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

*Corp.*, 461 U.S. 648, 657 (1983)). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *General Motors*, 461 U.S. at 656). Furthermore, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

51. Courts in this district routinely award post-judgment interest in patent infringement cases. *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest for patent infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (same).

## III. OBJECTIVE INDICIA OF NONOBVIOUSNESS

### A. Issues of Law to be Litigated

52. Whether objective indicia of nonobviousness rebut any prima facie showing of obviousness for the asserted claims of the Magnolia Asserted Patents.

Ex. 4A – 23
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

53.     Whether objective indicia of nonobviousness have a nexus to the inventive aspects of the asserted claims of the Magnolia Asserted Patents.

54.     Whether others failed to develop the invention(s) of the asserted claims of the Magnolia Asserted Patents.

55.     Whether the asserted claims of the Magnolia Asserted Patents fulfilled long-felt but unsolved needs.

56.     Whether the asserted claims of the Magnolia Asserted Patents produced unexpected results.

57.     Whether the asserted claims of the Magnolia Asserted Patents received praise by others.

58.     Whether Magnolia's Steripath Flow product ("the Practicing Product") practices the asserted claims of the Magnolia Asserted Patents.

59.     Whether products covered by the asserted claims of the Magnolia Asserted Patents fulfilled long-felt but unsolved needs due to the inventive aspects of the asserted claims of the Magnolia Asserted Patents.

60.     Whether products covered by the asserted claims of the Magnolia Asserted Patents produced unexpected results attributable to the inventive aspects of the asserted claims of the Magnolia Asserted Patents.

Ex. 4A – 24
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

61.     Whether products covered by the asserted claims of the Magnolia Asserted Patents have received praise by others attributable to the inventive aspects of the asserted claims of the Magnolia Asserted Patents.

62.     Whether products covered by the asserted claims of the Magnolia Asserted Patents have achieved commercial success attributable to the inventive aspects of the asserted claims of the Magnolia Asserted Patents.

63.     Whether Kurin copied the inventions of the asserted claims of the Magnolia Asserted Patents.

### B.     Legal Authority

#### 1.     Objective Indicia of Nonobviousness Generally

64.     The party challenging the validity of a patent always has the burden of persuading the trial court of invalidity. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Moreover, the Supreme Court requires that "all evidence relevant to obviousness or nonobviousness be considered, and be considered collectively." *In re Cyclobenzaprine Litig.*, 676 F.3d 1063, 1077–78 (Fed. Cir. 2012). In particular, objective indicia, "when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias." *Id*. at 1079. Although not exhaustive, objective indicia may include: "copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

industry respect for the invention, and skepticism of [persons of ordinary skill in the art] before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966).

65.    The Federal Circuit "has emphasized that consideration of the objective indicia is *part of* the whole obviousness analysis, not just an afterthought." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013) (emphasis in original).  Objective indicia are "not just a cumulative or confirmatory part of the obviousness calculus but constitute[] independent evidence of nonobviousness." *Id.* at 1358 (quoting *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008)).  They "can be the most probative evidence of nonobviousness in the record, and enables the [Court] to avert the trap of hindsight." *Id.*  (quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310 (Fed. Cir. 2010)).

### 2.    Commercial Success

66.    For commercial success, a "prima facie case of nexus is made when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent." *Crocs, Inc.*, 598 F.3d at 1310–11; *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2020).  But the patented invention need not be "solely

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

responsible for the commercial success." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991). Relatedly, the patentee "need not show that all possible embodiments within the claims were successfully commercialized in order to rely on the success in the marketplace of the embodiment that was commercialized." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1570 (Fed. Cir. 1996). Courts have considered evidence that the patented device enjoys a market premium over non-patented devices, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012); that customers specifically request the patented device, *id.*; that customers would be less likely to purchase, or would pay less for, a device without the patented feature, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1055–56 (Fed. Cir. 2016); and that the patented device garnered a significant market share after launch, *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1340 (Fed. Cir. 2010).

### 3.     Praise and Recognition

67.    Recognition by others of skill in the art that the inventor's contribution was an invention may support a finding of nonobviousness. *Apple*, 839 F.3d at 1053–54; *see also Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1333–34 (Fed. Cir. 2019) (affirming a patent non-obvious in part in light of two industry awards); *Arctic Cat*, 876 F.3d at 1364–65 ("Evidence that the industry

praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious.").

### 4.    Copying

68.    "[C]opying the claimed invention, rather than one within the public domain, is indicative of non-obviousness." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986).  Stated plainly, "[t]he fact that a competitor copied technology suggests it would not have been obvious." *WBIP*, 829 F.3d at 1336; *see also Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993); *Crocs*, 598 F.3d at 1311 ("Copying may indeed be another form of flattering praise for inventive features," suggesting non-obviousness). "Indeed, the litigation argument that an innovation is really quite ordinary carries diminished weight when offered by those who," among other things, "promptly adopted the solution that they are now denigrating." *Heidelberger Druckmaschinen AG v. Hantscho Comm. Prods., Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994).

### 5.    Long-Felt But Unsolved Need

69.    "Evidence of a long felt but unresolved need tends to show non-obviousness because it is reasonable to infer that the need would have not persisted had the solution been obvious." *WBIP*, 829 F.3d at 1332.  "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

to solve that problem." *Texas Instruments*, 988 F.2d at 1178 (explaining that "there is substantial evidence to support the Commission's finding of long-felt need" for the claimed invention because "[e]arly attempts encountered problems . . . and multiple inventors were working on the problem"). Evidence of long-felt need is "particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand." *In re Cyclobenzaprine*, 575 F.3d at 1082; *see also Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1500 (Fed. Cir. 1986) (finding nonobviousness where the relevant industry had searched for a solution, and major manufacturers tried but failed to develop a reliable solution).

70.     When evaluating unmet needs, courts "look to the filing date of the challenged invention to assess the presence of a long-felt and unmet need," and evidence of competing inventions are not relevant, particularly when "the competing inventions were not actually produced until after the claimed invention's filing date." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) (rejecting the proposition that "the long-felt need must be unmet at the time the invention becomes available on the market, when it can actually satisfy that need").

71.     "The length of the intervening time between the publication dates of the prior art and the claimed invention can also qualify as an objective indicator of

Ex. 4A – 29
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

nonobviousness," such as a long felt but unsolved need, as "[t]he intervening time between the prior art's teaching of the components and the eventual preparation of a successful composition speaks volumes to the nonobviousness of the . . . patent." *Leo Pharm.*, 726 F.3d at 1359.

### 6.    Failure of Others

72.    "Evidence that others tried but failed to develop a claimed invention may carry significant weight in an obviousness inquiry." *In re Cyclobenzaprine*, 676 F.3d at 1081.  "[E]vidence of failed attempts by others could be determinative on the issue of obviousness." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000).  Indeed, "there can be little better evidence negating an expectation of success than actual reports of failure." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed. Cir. 2003).

73.    "If people are clamoring for a solution, and the best minds do not find it for years, that is practical evidence—the kind that can't be bought from a hired expert, the kind that does not depend on fallible memories or doubtful inferences— of the state of knowledge. . . . If [the patented] device were obvious, other persons skilled in the art would have made it." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1378 (N.D. Ill. 1993), *aff'd* 71 F.3d 1573 (Fed. Cir. 1995); see also *In re Cyclobenzaprine*, 676 F.3d at

1082 ("The purpose of evidence of failure of others is to show 'indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan.'"); *Advanced Display*, 212 F.3d at 1285 (holding that the objective evidence supported an nonobviousness finding where others had "tried for a long time" to develop the claimed invention but found it "very hard" and "were all not successful"); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 835 (Fed. Cir. 1991) (explaining that "failure of others to provide a feasible solution to a long-standing problem is probative of non-obviousness") (citation omitted); *Alco Standard*, 808 F.2d at 1500, 1501 (finding strong secondary considerations of nonobviousness when "[t]he evidence fully supports the district court's finding that others in the industry were unable to solve the problem" and noting that "a large corporation working on this matter had tried but failed").

74.    The patent holder does not have to demonstrate why other companies failed, only that they did fail. *See Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 341 (2d Cir. 1982) ("It is plain that appellants' device answered a long-felt need that others skilled in the art had failed to fulfill, and so it seems beyond question that appellants' invention was not an obvious one."). "[A]n accused infringer's inability to develop a product made possible by the claimed invention indicated nonobviousness." *Advanced Display*, 212 F.3d at 1285. "[F]ailure by

Ex. 4A – 31
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

others, including the accused infringer, to develop the claimed invention constitutes 'virtually irrefutable' evidence of nonobviousness." *Id.*

### 7. Unexpected Results

75.    The Federal Circuit "has repeatedly explained" that "evidence [of surprising or unexpected results] is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of non-obviousness." *Ortho-McNeil*, 520 F.3d at 1365. Unexpected results are a "superior property or advantage that [a person skilled in the art] would have found surprising or unexpected." *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995). They are probative of nonobviousness because "that which would have been surprising . . . would not have been obvious." *Id.* "The principle applies most often to the less predictable fields, such as chemistry, where minor changes in a product or process may yield substantially different results." *Id.* "Unexpected results are useful to show the 'improved properties provided by the claimed compositions are much greater than would have been predicted.'" *Leo Pharm.*, 726 F.3d at 1358. A finding of "unexpected results" is "tantamount to a finding of nonobviousness." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.28 (Fed. Cir. 1993).

76.    Furthermore, it is not necessary that the unexpected properties be known at the time of the invention or disclosed in the patent:

> Evidence developed after the patent grant is not excluded from consideration, for understanding of the full range of an invention is not always achieved at the time of filing the patent application.  It is not improper to obtain additional support consistent with the patented invention, to respond to litigation attacks on validity.  There is no requirement that an invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention, in order for that work to be introduced into evidence in response to litigation attack. Nor is it improper to conduct additional experiments and provide later-obtained data in support of patent validity.

*Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354, 1360 (Fed. Cir. 2014).

77.    Finally, an invention need have only one unexpected superior property when compared to the prior art to overcome a *prima facie* obviousness case, and may be the same or even inferior in other properties.  *See, e.g., In re Chupp*, 816 F.2d 643, 646 (Fed. Cir. 1987).

## IV.    INJUNCTIVE RELIEF TO MAGNOLIA

### A. Issues of Law to be Litigated

78.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Kurin and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

privity or concert with them from further infringement of the Magnolia Asserted Patents.

79.   Whether Magnolia has proven by a preponderance of the evidence that, as part of the injunctive relief, it is entitled to an order that requires the recall, removal, seizure, or destruction of all infringing products currently in the marketplace.

## B.   Legal Authority

80.   Under 35 U.S.C. § 283, the Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

81.   To obtain an injunction under § 283, "[a] plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury;
>
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
>
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
>
> (4) that the public interest would not be disserved by a permanent injunction."

*eBay*, 547 U.S. at 391.

Ex. 4A – 34
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

82.    "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics*, 717 F.3d at 1345.  In balancing the hardships between the parties, the Court "assesses the relative effect of granting or denying an injunction." *Apple*, 809 F.3d at 645.  Factors that the Court may consider include: "the parties' sizes, products, and revenue sources." *Evonik Degussa Gmbh v. Materia, Inc.*, C.A. No. 09-636 (NLH/JS), 2017 WL 3434156, at *3 (D. Del. Aug. 10, 2017) (citing *Microsoft*, 598 F.3d at 862).  "A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

83.    "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions.  'The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Apple*, 809 F.3d at 647 (quoting *Sanofi-Synthelabo*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

84.    The Court has the power to order the recall, seizure, or destruction of any infringing products that are in the marketplace to prevent further acts of infringement. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

1552, 1564–65 (Fed. Cir. 1984) ("The district court may frame an effective injunction against Nyman's 'use' of the patented display by specifying that such use includes the furnishing of the racks to the customers, and that to terminate such use Nyman must recall the racks from its customers."); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1346 (Fed. Cir. 2003) (affirming district court's grant of preliminary injunction to recall accused products); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-41-CFC, 2020 WL 4015481, at *5 (D. Del. July 16, 2020) (ordering recall of infringing product); *see also Fisher-Price, Inc. v. Safety 1st, Inc.*, C.A. No. 01-051-GMS, 2008 WL 1976624, *3 (D. Del. May 5, 2008) (holding infringer in contempt for not exercising all reasonable efforts to retrieve infringing product from the retailers it sold to).

## V.    ENHANCED DAMAGES, ATTORNEYS' FEES, AND COSTS

### A. Issues of Law to be Litigated

1.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

2.    Whether Magnolia has proven by a preponderance of the evidence that this is an exceptional case pursuant 35 U.S.C. § 285.

3.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to attorneys' fees, expenses, or costs, and the amount.

4.    Whether Magnolia has proven by a preponderance of the evidence that it is entitled to any further relief that the Court deems just and proper.

**B.    Legal Authority**

**1.    Enhanced Damages**

85.    Under 35 U.S.C. § 284, the "court may increase the damages up to three times the amount found or assessed."  Whether to award enhanced damages is within the discretion of the district court.  *Halo*, 579 U.S. at 103–04.

86.    The Federal Circuit has set forth several factors that the Court may consider in determining whether to award enhanced damages:

    (1)    whether the infringer deliberately copied the ideas or design of another;

    (2)    whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

    (3)    the infringer's behavior as a party to the litigation;

    (4)    defendant's size and financial condition;

    (5)    closeness of the case;

    (6)    duration of defendant's misconduct;

    (7)    remedial action by the defendant;

    (8)    defendant's motivation for harm; and

    (9)    whether defendant attempted to conceal its misconduct.

*Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 n.6 (Fed. Cir. 2017) (citing *Read Corp. v. Portec. Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992)); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1030 (N.D. Cal. 2017) ("After *Halo*'s elimination of 'rigid formulas,' trial courts now look to the *Read* factors as 'useful guideposts' even though they 'are no longer the sole set of criteria' that can be considered.").

87.    There is "no precise rule or formula" for enhancing damages under § 284, *Halo*, 579 U.S. at 103, and courts consider "the egregiousness of the defendant's conduct based on all the facts and circumstances." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1385 (Fed. Cir. 2013).  Egregious conduct may be "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Halo*, 579 U.S. at 103–04.

88.    "[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard.  Enhanced damages are no exception." *Id.* at 107 (cleaned up).

### 2.    Attorneys' Fees and Costs under 35 U.S.C. § 285

89.    "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The court "may determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Id.*

90. Attorney fees may be awarded for willful infringement, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Rule 11 of the Federal Rules of Civil Procedure, or like infractions. *Id.* at 550. However, attorneys' fees are not limited to independently sanctionable conduct. *Id.* at 555.

91. A prevailing party must establish its entitlement to fees under 35 U.S.C. § 285 by a preponderance of the evidence. *Id.* at 557–58.

## VI. INVALIDITY

### A. Issues of Law to be Litigated

92. The scope and content of the asserted prior art, and differences between the claimed inventions of the Magnolia Asserted Patents and the asserted prior art.

93. Whether each asserted prior art reference qualifies under 35 U.S.C. § 102 as prior art to the asserted claim against which it is asserted.

94. Whether Kurin can prove by clear and convincing evidence that any asserted claim of the Magnolia Asserted Patents is invalid under 35 U.S.C. § 102

as being anticipated in view of Kurin's asserted prior art as set forth in Kurin's pretrial disclosures.

95.    Whether Kurin can prove by clear and convincing evidence that any asserted claim of the Magnolia Asserted Patents is invalid under 35 U.S.C. § 103 as being obvious in view of Kurin's asserted prior art combinations as set forth in Kurin's pretrial disclosures.

96.    Whether Kurin can prove by clear and convincing evidence that a person of ordinary skill in the art would modify the prior art asserted by Kurin to arrive at the inventions of the asserted claim against which such prior art is asserted.

97.    Whether Kurin can prove by clear and convincing evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by Kurin to arrive at the invention of the asserted claim against which such prior art is asserted.

98.    Whether Kurin can rebut objective indicia of nonobviousness.

99.    Whether Kurin can prove by clear and convincing evidence that any of the asserted claims is invalid for lack of adequate written description under 35 U.S.C. § 112.

100.    Whether Kurin can prove by clear and convincing evidence that any of the asserted claims is invalid for lack of enablement under 35 U.S.C. § 112.

Ex. 4A – 40
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

101.   Whether Kurin can prove by clear and convincing evidence that certain of the asserted claims is invalid for indefiniteness under 35 U.S.C. § 112.

102.   Whether Kurin can prove by clear and convincing evidence that it is entitled to a declaratory judgment of invalidity of any of the asserted claims of the Patents-in-Suit.

## B.   Legal Authority

### 1.   Invalidity Generally

103.   The Asserted Claims of the Magnolia Asserted Patents are presumed to be valid, and the burden of proving invalidity of each claim rests with Kurin. *See* 35 U.S.C. § 282.  Given this presumption of validity, any invalidity defense or counterclaim must be proven by clear and convincing evidence.  *i4i Ltd. P'ship*, 564 U.S. at 95; *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ("[P]atent invalidity must be proved by clear and convincing evidence."); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid."); *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, C.A. No. 19-434-CFC, 2021 WL 3680317, at *4 (D. Del. Aug. 19, 2021) ("The party challenging the patent's validity bears the burden of proving obviousness by clear and convincing evidence.").  "Clear and convincing evidence means that it is highly probable that a fact is true." *Magnolia Medical Techs. v. Kurin Inc.*, C.A. No. 19-97-CFC

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

(D. Del.), Preliminary Jury Instructions and Final Jury Instructions (D.I. 449 at 5, 450 at 5).

104.    "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims."  35 U.S.C. § 282(a).  Thus, a party asserting a patent is invalid "must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy."  *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992) (cleaned up).

105.    In light of the presumption of validity, a party responding to a challenge to the patent's validity need only submit sufficient evidence to rebut any proof of invalidity offered by the challenger.  *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue."  *Id.*  "[T]he burden of persuasion is and remains always upon the party asserting invalidity."  *Lannom Mfg. Co. v. U.S. Int'l Trade Comm'n*, 799 F.2d 1572, 1578 (Fed. Cir. 1986); *see also Novo Nordisk*, 719 F.3d at 1352.  "It is not necessary that a district court declare a patent 'valid.'  In a proper case, it is necessary only to hold that the patent challenger failed to carry the burden assigned to it by 35 U.S.C. § 282."  *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

106.   Furthermore, there is an added burden imposed when a challenger attempts to invalidate a patent using prior art that was already considered by the United States Patent and Trademark Office.  *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) ("Defendants therefore 'ha[ve] the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.'") (internal citations omitted); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) (A patent challenger's "burden [to prove invalidity by clear and convincing evidence] is especially difficult when the prior art was before the PTO examiner during prosecution of the application.").  As the Supreme Court has stated, "if the PTO did not have all material facts before it, its considered judgment may lose significant force," and "the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110–111 (2011).  "[T]he jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence." *Id.*  Evidence of invalidity that has not been considered by

Ex. 4A – 43
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents

the Patent Office may "carry more weight and go further toward sustaining the attacker's unchanging burden." *Id.* "[A] jury instruction on the effect of new evidence can, and when requested, most often should, be given." *Id.*

## 2.      Qualifying as Prior Art

107.   The scope of prior art for purposes of anticipation (35 U.S.C. § 102) and obviousness (35 U.S.C. § 103) is defined by 35 U.S.C. § 102(AIA). [1] *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003) ("The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. § 102."). Magnolia has the burden to show by clear and convincing evidence that the documents it intends to assert as prior art meet the requirements of 35 U.S.C. § 102. *See ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019). To establish that a document is prior art, it is Magnolia's burden to present sufficient evidence to establish the reference must have been patented, published, in public use, on sale, or otherwise publicly available before the "effective filing date of the claimed invention." 35 U.S.C. § 102(a); *Kyocera Wireless Corp. v. U.S. Int'l Trade Comm'n*, 545 F.3d 1340, 1350

---

[1] The Leahy-Smith America Invents Act ("AIA") became effective, in relevant part, as of March 16, 2013. The post-AIA version of 35 U.S.C. § 102 applies to patent applications that were filed after that effective date, and to patents that claim priority to any such application. Leahy–Smith America Invents Act, Pub. L. No. 112–29, sec. 3(c), 125 Stat. 284, 293 (2011).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

(Fed. Cir. 2008).  Whether a reference qualifies as prior art is a question of law based on underlying facts.  *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1197 n.3 (Fed. Cir. 1994).

### 3.    Anticipation

108.   The Patent Act provides that "[a] person shall be entitled to a patent unless—(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."  35 U.S.C. § 102 (AIA).

109.   Analyzing whether a prior art reference anticipates a patent claim is a two-step process.  First, the claim must be construed as a matter of law; and second, the prior art reference must be compared to the properly construed claim. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). In the second step, each claim element must be compared to the reference to determine whether the reference anticipates the claim. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).  Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272,1282 (Fed. Cir. 2000) (citations omitted).  A prior art reference may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is inherently present as recognized by a person of ordinary skill in the art.  *See Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991).

110.   In addition to showing that a reference discloses all the limitations of a patent claim, the reference must also meet several other requirements in order to be considered an anticipating reference under § 102.  First, the reference must have been publicly available or on sale before the effective filing date of the claimed invention. 35 U.S.C. § 102.

111.   The reference must also be enabling to a person of ordinary skill.  *See, e.g., Seymour v. Osborne*, 78 U.S. 516 (1870); *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. and Research*, 346 F.3d 1051 (Fed. Cir. 2003); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002); *Bristol- Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001) ("To anticipate, the reference must also enable one of skill in the art to make and use the claimed invention.").

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

### 4.    Obviousness

112.    The Patent Act provides that "[a] patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103 (AIA).

113.    While obviousness is ultimately a question of law, a factfinder is required to determine several underlying factual inquiries, including:  (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  All four factors must be considered before a patent can be found invalid.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000) ("Our precedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness.").

114.    Obviousness is determined from the perspective of a person having ordinary skill in the art at the time of the invention.  35 U.S.C. § 103; *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000); *Sensonics, Inc.*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

*v. Aerosonic Corp.*, 81 F.3d 1566, 1570 (Fed. Cir. 1996). "The 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under § 103, and is not descriptive of some particular individual." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).

115.   "Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination." *Unigene Lab'ys., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011).

116.   Rather, "a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine*, 676 F.3d at 1068–69 (cleaned up).

117.   A claimed invention is not obvious if it is a solution to a problem which does not "present a finite (and small in the context of the art) number of options easily traversed to show obviousness." *Ortho-McNeil*, 520 F.3d at 1364.

118.   A claimed invention is not obvious in light of routine experimentation if the prior art provides no reasonable expectation of success that the experimentation will succeed. *In re Cyclobenzaprine*, 676 F.3d at 1070 ("While it may have been obvious to experiment with the use of the same PK profile when

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

contemplating an extended-release formulation, there is nothing to indicate that a skilled artisan would have had a reasonable expectation that such an experiment would succeed in being therapeutically effective."). "Without a reasonable expectation of success or clues pointing to the most promising combinations, an artisan could have spent years experimenting without success." *Leo Pharm.*, 726 F.3d at 1357.

119. A claimed invention is not obvious if the prior art only gives general guidance with respect to the particular form of the claimed invention or how to achieve the invention. *In re Cyclobenzaprine*, 676 F.3d at 1073; *E.g.*, *In re Armodafinil*, 939 F. Supp. 2d 456, 500–02 (D. Del. 2013) ("[F]or a patent challenger to establish obviousness, it is insufficient to allege a general motivation to discover an undefined solution that could take many possible forms.").

120. "[U]se of inherency in the context of obviousness must be carefully circumscribed because that which may be inherent is not necessarily known and that which is unknown cannot be obvious." *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1354–55 (Fed. Cir. 2017) (cleaned up).

121. Objective indicia of non-obviousness "may often be the most probative and cogent evidence of nonobviousness in the record." *Gambro Lundia*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Magnolia Asserted Patents

*AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) (cleaned up);

*see supra* at Section IIIB for legal authority.

### 5.    Written Description

122.    A patent's "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."  35 U.S.C. § 112(a).

123.    A defendant must prove by clear and convincing evidence that the asserted claims are invalid for lack of written description and/or lack of enablement.  *See Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962–63 (Fed. Cir. 2002); *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1335–36 (Fed. Cir. 2013).

124.    The written description requirement is met if "the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter."  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (cleaned up).  The disclosure does not need to "describe exactly the subject matter claimed . . . ."  *Id.* at 1562–63 (cleaned up).  The test for reasonably conveying possession of an invention is a

flexible one, requiring an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 21 F.4th 1362, 1368–69 (Fed. Cir. 2022) (cleaned up).

125.   "Patentees may choose their own descriptive terms as long as those terms adequately divulge a reasonably clear meaning to one of skill in the art." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1375 (Fed. Cir. 1999).  That is, the "reasonably conveys" standard does not require the disclosure and claims to match exactly.  *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009) ("The form and presentation of the description can vary with the nature of the invention; compliance with the written description requirement is a fact-dependent inquiry.").  An invention need not have been reduced to practice to have been adequately described.  *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366–67 (Fed. Cir. 2006).  The "requirement is satisfied by the patentee's disclosure of such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Enzo Biochem*, 323 F.3d at 969 (cleaned up).

126.   The question of whether a patent meets the written description requirement is a factual one.  *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1334–35 (Fed. Cir. 2008).  Written

description is determined as of the filing date. *Falko-Gunter Falkner*, 448 F.3d at 1363.

### 6.    Enablement

127.   The requirement of enablement is met, if "the specification teach[es] those in the art to make and use the invention without undue experimentation." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 981 (Fed. Cir. 2021) (cleaned up).

128.   Whether the necessary experimentation is undue is based on weighing factors, including: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). "The fact that some experimentation is necessary does not preclude enablement; what is required is that the amount of experimentation must not be unduly extensive." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (cleaned up). Additionally, the need for "extensive experimentation does not necessarily render the experiments unduly extensive where the experiments involve repetition of known or commonly used techniques." *Cephalon*, 707 F.3d at 1338.

129.   Whether the specification enables the invention is a question of law based on underlying factual inquiries.  *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).  Enablement is determined as of the effective filing date of the patent's application.  *Cephalon*, 707 F.3d at 1336.

### 7.    Indefiniteness

130.   35 U.S.C. § 112(b) provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as his invention."  This provision strikes a "delicate balance," which recognizes that the definiteness requirement must tolerate "[s]ome modicum of uncertainty" as "the price of ensuring the appropriate incentives for innovation."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (cleaned up).

131.   As such, a party seeking to invalidate a patent claim based on indefiniteness under 35 U.S.C. § 112(b) must prove by clear and convincing evidence that a patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228–29 (Fed. Cir. 2016) (cleaned up).  It is "the claims, not particular claim terms" that are pertinent to "the dispositive question in an indefiniteness inquiry . . . ."  *Cox*, 838 F.3d at 1231–32 (cleaned up).

132.   Claims are not indefinite when the intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine" the scope of the claim.  *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) (cleaned up).  "[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement."  *Sonix Tech. Co., Ltd v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (cleaned up).  "[B]readth is not indefiniteness."  *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed Cir. 2017) (cleaned up).

133.   The inquiry regarding indefiniteness is a question of law to be assessed as of the filing date.  *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1371 (Fed. Cir. 2005).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the
Magnolia Asserted Patents