# EXHIBIT 4B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 24-1124 (CFC) |
| KURIN, INC., | ) ) | |
| Defendant. | ) | |

**EXHIBIT 4B**

**MAGNOLIA'S STATEMENT OF ISSUES OF LAW
THAT REMAIN TO BE LITIGATED AS TO THE KURIN ASSERTED
PATENT**

# TABLE OF CONTENTS

PAGE

I.  Non-Infringement ...................................................................................................2

    A.  Issues of Law to be Litigated ................................................................2

    B.  Legal Authority ......................................................................................3

        1.  Literal Infringement .................................................................3

        2.  Induced Infringement ..............................................................3

        3.  Contributory Infringement .......................................................4

II.  Invalidity ................................................................................................................5

    A.  Issues of Law to be Litigated ................................................................5

    B.  Legal Authority ......................................................................................6

        1.  Invalidity Generally ................................................................6

        2.  Qualifying as Prior Art ............................................................8

        3.  Anticipation .............................................................................9

        4.  Obviousness ...........................................................................10

        5.  Written Description ................................................................13

        6.  Enablement .............................................................................15

III.  Objective Indicia of Non-obviousness ...............................................................17

    A.  Issues of Law to be Litigated ..............................................................17

    B.  Legal Authority ....................................................................................18

        1.  Objective Indicia of Non-obviousness Generally ....................18

Ex. 4B – i

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

2. Commercial Success ...................................................20

3. Praise & Recognition ................................................21

4. Long-Felt But Unsolved Need ...................................21

5. Failure of Others .....................................................22

6. Unexpected Results..................................................24

IV. Damages to Kurin .................................................................26

A. Issues of Law to be Litigated ...............................................26

B. Legal Authority ......................................................................27

1. Damages Generally .................................................27

2. Lost Profits..............................................................28

3. Reasonable Royalty.................................................33

4. Marking ...................................................................38

5. Pre-Judgment and Post-Judgment Interest.............39

V. Injunctive Relief to Kurin...................................................41

A. Issues of Law to be Litigated ...............................................41

B. Legal Authority ......................................................................41

VI. Enhanced Damages, Attorneys' Fees, and Costs ...........................43

A. Issues of Law to be Litigated ...............................................43

B. Legal Authority ......................................................................44

1. Attorneys' Fees and Costs under 35 U.S.C. § 285 ...................44

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

Magnolia respectfully submits this Statement of Issues of Law as to the Kurin Asserted Patent, which is based on Magnolia's claims and Magnolia's current understanding of the defenses and counterclaims of Kurin and the proceedings in this action to date.

To the extent Magnolia's Statement of Issues of Fact That Remain to be Litigated as to the Kurin Asserted Patent set forth in **Exhibit 2B** contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified below is more appropriately considered an issue of fact, Magnolia incorporates such issues by reference into **Exhibit 2B**. By including an issue herein, Magnolia does not assume the burden of proof or production with regard to that issue.

Magnolia reserves the right to supplement and amend this statement, for example, to respond to any issues, argument, or evidence raised by Kurin, or in the event of any Court ruling that might raise new or additional issues. The following statements are not exhaustive, and Magnolia reserves the right to prove any matters identified in its pleadings, infringement contentions, interrogatory responses, and/or expert reports. Magnolia also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order. Magnolia further intends to offer evidence to rebut evidence offered by Kurin, and to argue that Kurin is precluded from offering evidence in support of theories and claims not adequately

disclosed in accordance with the scheduling order. Magnolia incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

Magnolia reserves the right to rely upon the legal authorities cited by Kurin in its corresponding exhibit, **Exhibit 5B**.

## I.     NON-INFRINGEMENT

### A. Issues of Law to be Litigated

1.     Whether Kurin has proven by a preponderance of the evidence that Magnolia has directly infringed under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, claims 1, 6-13, and 18-24 of U.S. Patent No. 12,138,052 ("the #052 Patent").

2.     Whether Kurin has proven by a preponderance of the evidence that Magnolia has infringed under 35 U.S.C. § 271(b) claims 10 and 22 of the #052 Patent.

3.     Whether Kurin has proven by a preponderance of the evidence that Magnolia has infringed under 35 U.S.C. § 271(c) claims 10 and 22 of the #052 Patent.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

## B. Legal Authority

### 1. Literal Infringement

4.      An accused product or process literally infringes if it literally incorporates each and every limitation of a claim. *See MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). "To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). Infringement is thus examined on an element-by-element basis; if an element of the claim is not present in the accused device or process, then there is no literal infringement of the claims. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

### 2. Induced Infringement

5.      "Whoever actively induced infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (cleaned up). "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) . . . even in the absence of actual knowledge." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016). "A patentee may prove direct infringement or

Ex. 4B – 3
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

inducement of infringement by either direct or circumstantial evidence." *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006).

### 3. Contributory Infringement

6. Section 271(c) of Title 35 of the United States Code provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

7. A party is liable for contributory infringement if that party (1) sells, or offers to sell, a material or apparatus for use in practicing a patented process; (2) that material or apparatus is a material part of the invention and must not be a staple article or commodity of commerce that has no substantial noninfringing uses; and (3) the material or apparatus is known by the accused infringer to be especially made or especially adapted for use in an infringement of such patent. *i4i Ltd. P'ship* v. *Microsoft Corp.*, 598 F.3d 831, 850–51 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238 (2011); *see also Fujitsu Ltd.* v. *Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

8.      Direct infringement is a necessary predicate for a finding of contributory infringement in ordinary patent infringement cases. *See, e.g.*, *Cross Med. Prods., Inc.* v. *Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (indicating that a showing of contributory infringement requires "proving an act of direct infringement").

## II.    INVALIDITY

### A. Issues of Law to be Litigated

9.      Whether each asserted prior art reference qualifies under 35 U.S.C. § 102 as prior art to the patent against which it is asserted.

10.     Whether Magnolia can prove by clear and convincing evidence that any asserted claim of the Kurin Asserted Patent is invalid under 35 U.S.C. § 102 as being anticipated by Magnolia's asserted prior art as set forth in Magnolia's pretrial disclosures.

11.     Whether Magnolia can prove by clear and convincing evidence that any asserted claim of the Kurin Asserted Patent is invalid under 35 U.S.C. § 103 as being obvious in view of Magnolia's asserted prior art combinations as set forth in Magnolia's pretrial disclosures.

12.     Whether Magnolia can prove by clear and convincing evidence that a person of ordinary skill in the art would modify the prior art asserted by Magnolia

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

to arrive at the inventions of the asserted claim against which such prior art is asserted.

13.    Whether Magnolia can prove by clear and convincing evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by Magnolia to arrive at the invention of the asserted claim against which such prior art is asserted.

14.    Whether Magnolia can rebut objective indicia of non-obviousness.

15.    Whether Magnolia can prove by clear and convincing evidence that any of the asserted claims is invalid for lack of adequate written description under 35 U.S.C. § 112.

16.    Whether Magnolia can prove by clear and convincing evidence that any of the asserted claims is invalid for lack of enablement under 35 U.S.C. § 112.

17.    Whether Magnolia can prove by clear and convincing evidence that it is entitled to a declaratory judgment of invalidity of the Kurin Asserted Patent.

## B. Legal Authority

### 1. Invalidity Generally

18.    The Asserted Claims of the Asserted Patent are presumed to be valid, and the burden of proving invalidity of each claim rests with Magnolia. *See* 35 U.S.C. § 282. Given this presumption of validity, any invalidity defense or counterclaim must be proven by clear and convincing evidence. *Microsoft Corp. v.*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ("[P]atent invalidity must be proved by clear and convincing evidence."); *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, C.A. No. 19-434-CFC, 2021 WL 3680317, at *4 (D. Del. Aug. 19, 2021) ("The party challenging the patent's validity bears the burden of proving obviousness by clear and convincing evidence."). "Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact an abiding conviction that the truth of the factual contentions [is] highly probable." *Intel Corp.*, 946 F.2d at 830 (cleaned up).

19.    "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). Thus, a party asserting a patent is invalid "must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992) (cleaned up).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

## 2. Qualifying as Prior Art

20.    The scope of prior art for purposes of anticipation (35 U.S.C. § 102) and obviousness (35 U.S.C. § 103) is defined by 35 U.S.C. § 102(AIA). [1] *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003) ("The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. § 102."). Magnolia has the burden to show by clear and convincing evidence that the documents it intends to assert as prior art meet the requirements of 35 U.S.C. § 102. *See ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019). To establish that a document is prior art, it is Magnolia's burden to present sufficient evidence to establish the reference must have been patented, published, in public use, on sale, or otherwise publicly available before the "effective filing date of the claimed invention." 35 U.S.C. § 102(a); *Kyocera Wireless Corp. v. U.S. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008). Whether a reference qualifies as prior art is a question of law based on underlying facts. *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1197 n.3 (Fed. Cir. 1994).

---

[1] The Leahy-Smith America Invents Act ("AIA") became effective, in relevant part, as of March 16, 2013. The post-AIA version of 35 U.S.C. § 102 applies to patent applications that were filed after that effective date, and to patents that claim priority to any such application. Leahy–Smith America Invents Act, Pub. L. No. 112–29, sec. 3(c), 125 Stat. 284, 293 (2011).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

### 3. Anticipation

21.     The Patent Act provides that "[a] person shall be entitled to a patent unless—(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." 35 U.S.C. § 102 (AIA).

22.     Analyzing whether a prior art reference anticipates a patent claim is a two-step process. First, the claim must be construed as a matter of law; and second, the prior art reference must be compared to the properly construed claim. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). In the second step, each claim element must be compared to the reference to determine whether the reference anticipates the claim. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272,1282 (Fed. Cir.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

2000) (citations omitted).  A prior art reference may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is inherently present as recognized by a person of ordinary skill in the art.  *See Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991).

23.    In addition to showing that a reference discloses all the limitations of a patent claim, the reference must also meet several other requirements in order to be considered an anticipating reference under § 102.  First, the reference must have been publicly available or on sale before the effective filing date of the claimed invention. 35 U.S.C. § 102.

24.    The reference must also be enabling to a person of ordinary skill.  *See, e.g., Seymour v. Osborne*, 78 U.S. 516 (1870); *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. and Research*, 346 F.3d 1051 (Fed. Cir. 2003); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002); *Bristol- Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001) ("To anticipate, the reference must also enable one of skill in the art to make and use the claimed invention.").

### 4. Obviousness

25.    The Patent Act provides that "[a] patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103 (AIA).

26.     While obviousness is ultimately a question of law, a fact-finder is required to determine several underlying factual inquiries, including:  (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  All four factors must be considered before a patent can be found invalid.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000) ("Our precedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness.").

27.     Obviousness is determined from the perspective of a person having ordinary skill in the art at the time of the invention.  35 U.S.C. § 103; *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1570 (Fed. Cir. 1996).  "The 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under § 103, and is not descriptive of some particular individual." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

28.    "Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination." *Unigene Lab'ys., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011).

29.    Rather, "a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine*, 676 F.3d at 1068–69 (cleaned up).

30.    A claimed invention is not obvious if it is a solution to a problem which does not "present a finite (and small in the context of the art) number of options easily traversed to show obviousness." *Ortho-McNeil*, 520 F.3d at 1364.

31.    A claimed invention is not obvious in light of routine experimentation if the prior art provides no reasonable expectation of success that the experimentation will succeed. *In re Cyclobenzaprine*, 676 F.3d at 1070 ("While it may have been obvious to experiment with the use of the same PK profile when contemplating an extended-release formulation, there is nothing to indicate that a skilled artisan would have had a reasonable expectation that such an experiment would succeed in being therapeutically effective."). "Without a reasonable expectation of success or clues pointing to the most promising combinations, an

Ex. 4B – 12

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

artisan could have spent years experimenting without success." *Leo Pharm.*, 726 F.3d at 1357.

32.    A claimed invention is not obvious if the prior art only gives general guidance with respect to the particular form of the claimed invention or how to achieve the invention. *In re Cyclobenzaprine*, 676 F.3d at 1073; *E.g.*, *In re Armodafinil*, 939 F. Supp. 2d 456, 500–02 (D. Del. 2013) ("[F]or a patent challenger to establish obviousness, it is insufficient to allege a general motivation to discover an undefined solution that could take many possible forms.").

33.    "[U]se of inherency in the context of obviousness must be carefully circumscribed because that which may be inherent is not necessarily known and that which is unknown cannot be obvious." *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1354–55 (Fed. Cir. 2017) (cleaned up).

34.    Objective indicia of non-obviousness "may often be the most probative and cogent evidence of nonobviousness in the record." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) (cleaned up); *see infra* at Section IIIB for legal authority.

**5. Written Description**

35.    A patent's "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear,

concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112(a).

36.    A defendant must prove by clear and convincing evidence that the asserted claims are invalid for lack of written description and/or lack of enablement. *See Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962–63 (Fed. Cir. 2002); *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1335–36 (Fed. Cir. 2013).

37.    The written description requirement is met if "the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (cleaned up). The disclosure does not need to "describe exactly the subject matter claimed . . . ." *Id.* at 1562–63 (cleaned up). The test for reasonably conveying possession of an invention is a flexible one, requiring an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 21 F.4th 1362, 1368–69 (Fed. Cir. 2022) (cleaned up).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

38.    "Patentees may choose their own descriptive terms as long as those terms adequately divulge a reasonably clear meaning to one of skill in the art." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1375 (Fed. Cir. 1999). That is, the "reasonably conveys" standard does not require the disclosure and claims to match exactly. *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009) ("The form and presentation of the description can vary with the nature of the invention; compliance with the written description requirement is a fact-dependent inquiry."). An invention need not have been reduced to practice to have been adequately described. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366–67 (Fed. Cir. 2006). The "requirement is satisfied by the patentee's disclosure of such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Enzo Biochem*, 323 F.3d at 969 (cleaned up).

39.    The question of whether a patent meets the written description requirement is a factual one. *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n.*, 535 F.3d 1322, 1334–35 (Fed. Cir. 2008). Written description is determined as of the filing date. *Falko-Gunter Falkner*, 448 F.3d at 1363.

**6. Enablement**

40.    The requirement of enablement is met, if "the specification teach[es] those in the art to make and use the invention without undue experimentation."

*Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 981 (Fed. Cir. 2021) (cleaned up).

41.     Whether the necessary experimentation is undue is based on weighing factors, including: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  "The fact that some experimentation is necessary does not preclude enablement; what is required is that the amount of experimentation must not be unduly extensive." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (cleaned up).  Additionally, the need for "extensive experimentation does not necessarily render the experiments unduly extensive where the experiments involve repetition of known or commonly used techniques." *Cephalon*, 707 F.3d at 1338.

42.     Whether the specification enables the invention is a question of law based on underlying factual inquiries.  *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).  Enablement is determined as of the effective filing date of the patent's application.  *Cephalon*, 707 F.3d at 1336.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

## III.    OBJECTIVE INDICIA OF NON-OBVIOUSNESS

### A. Issues of Law to be Litigated

43.    Whether objective indicia of non-obviousness rebut any prima facie showing of obviousness for the asserted claims of the Kurin Asserted Patent.

44.    Whether objective indicia of non-obviousness have a nexus to the inventive aspect of the asserted claims of the Kurin Asserted Patent.

45.    Whether others failed to develop the invention(s) of the asserted claims of the Kurin Asserted Patent.

46.    Whether the asserted claims of the Kurin Asserted Patent fulfilled long-felt but unsolved needs.

47.    Whether the asserted claims of the Kurin Asserted Patent produced unexpected results.

48.    Whether the asserted claims of the Kurin Asserted Patent received praise by others.

49.    Whether the Kurin's Jet products (collectively, "the Practicing Product") practice claim 1, 12, and 13 of the #052 Patent ("the Practiced Claims").

50.    Whether the Practicing Product fulfilled long-felt but unsolved needs.

51.    Whether the Practicing Product produced unexpected results.

52.    Whether the Practicing Product has received praise by others attributable to the inventive aspect of the Practiced Claims.

Ex. 4B – 17

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

53.    Whether the Practicing Product has achieved commercial success attributable to the inventive aspect of the Practiced Claims.

54.    Whether the Magnolia Accused Products fulfilled long-felt but unsolved needs due to the inventive aspect of the asserted claims of the Kurin Asserted Patent.

55.    Whether the Magnolia Accused Products produced unexpected results attributable to the inventive aspect of the asserted claims of the Kurin Asserted Patent.

56.    Whether the Magnolia Accused Products have received praise by others attributable to the inventive aspect of the asserted claims of the Kurin Asserted Patent.

57.    Whether the Magnolia Accused Products have achieved commercial success attributable to the inventive aspect of the asserted claims of the Kurin Asserted Patent.

## B. Legal Authority

### 1. Objective Indicia of Non-obviousness Generally

58.    The party challenging the validity of a patent has the burden of persuading the trial court of invalidity. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Moreover, the Supreme Court requires that "all evidence relevant to obviousness or nonobviousness be considered, and be considered collectively." *In*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*re Cyclobenzaprine Litig.*, 676 F.3d 1063, 1077–78 (Fed. Cir. 2012).  In particular, objective indicia, "when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias."  *Id.* at 1079.  Although not exhaustive, objective indicia may include: "copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of [persons of ordinary skill in the art] before the invention."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966).

59.     The Federal Circuit "has emphasized that consideration of the objective indicia is *part of* the whole obviousness analysis, not just an afterthought."  *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013) (emphasis in original).  Objective indicia are "not just a cumulative or confirmatory part of the obviousness calculus but constitute[] independent evidence of nonobviousness."  *Id.* at 1358 (quoting *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008)).  They "can be the most probative evidence of nonobviousness in the record, and enables the [Court] to avert the trap of hindsight."  *Id.*  (quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310 (Fed. Cir. 2010)).

## 2. Commercial Success

60.    For commercial success, a "prima facie case of nexus is made when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent." *Crocs, Inc.*, 598 F.3d at 1310–11; *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2020).  But the patented invention need not be "solely responsible for the commercial success." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).  Relatedly, the patentee "need not show that all possible embodiments within the claims were successfully commercialized in order to rely on the success in the marketplace of the embodiment that was commercialized." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1570 (Fed. Cir. 1996).  Courts have considered evidence that the patented device enjoys a market premium over non-patented devices, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012); that customers specifically request the patented device, *id.*; that customers would be less likely to purchase, or would pay less for, a device without the patented feature, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1055–56 (Fed. Cir. 2016); and that the patented device garnered a significant market share after launch, *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1340 (Fed. Cir. 2010).

### 3. Praise & Recognition

61.    Recognition by others of skill in the art that the inventor's contribution was an invention may support a finding of non-obviousness. *Apple*, 839 F.3d at 1053–54; *see also Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1333–34 (Fed. Cir. 2019) (affirming a patent non-obvious in part in light of two industry awards); *Arctic Cat*, 876 F.3d at 1364–65 ("Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious.").

### 4. Long-Felt But Unsolved Need

62.    "Evidence of a long felt but unresolved need tends to show non-obviousness because it is reasonable to infer that the need would have not persisted had the solution been obvious." *WBIP*, 829 F.3d at 1332. "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem." *Texas Instruments*, 988 F.2d at 1178 (explaining that "there is substantial evidence to support the Commission's finding of long-felt need" for the claimed invention because "[e]arly attempts encountered problems . . . and multiple inventors were working on the problem"). Evidence of long-felt need is "particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand." *In re Cyclobenzaprine*, 575 F.3d at 1082; *see also Alco*

Ex. 4B – 21

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1500 (Fed. Cir. 1986) (finding non-obviousness where the relevant industry had searched for a solution, and major manufacturers tried but failed to develop a reliable solution).

63. When evaluating unmet needs, courts "look to the filing date of the challenged invention to assess the presence of a long-felt and unmet need," and evidence of competing inventions are not relevant, particularly when "the competing inventions were not actually produced until after the claimed invention's filing date." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) (rejecting the proposition that "the long-felt need must be unmet at the time the invention becomes available on the market, when it can actually satisfy that need").

64. "The length of the intervening time between the publication dates of the prior art and the claimed invention can also qualify as an objective indicator of nonobviousness," such as a long felt but unsolved need, as "[t]he intervening time between the prior art's teaching of the components and the eventual preparation of a successful composition speaks volumes to the nonobviousness of the . . . patent." *Leo Pharm.*, 726 F.3d at 1359.

### 5. Failure of Others

65. "Evidence that others tried but failed to develop a claimed invention may carry significant weight in an obviousness inquiry." *In re Cyclobenzaprine*,

676 F.3d at 1081. "[E]vidence of failed attempts by others could be determinative on the issue of obviousness." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000). Indeed, "there can be little better evidence negating an expectation of success than actual reports of failure." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed. Cir. 2003).

66. "If people are clamoring for a solution, and the best minds do not find it for years, that is practical evidence—the kind that can't be bought from a hired expert, the kind that does not depend on fallible memories or doubtful inferences— of the state of knowledge. . . . If [the patented] device were obvious, other persons skilled in the art would have made it." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1378 (N.D. Ill. 1993), *aff'd* 71 F.3d 1573 (Fed. Cir. 1995); see also *In re Cyclobenzaprine*, 676 F.3d at 1082 ("The purpose of evidence of failure of others is to show 'indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan.'"); *Advanced Display*, 212 F.3d at 1285 (holding that the objective evidence supported an nonobviousness finding where others had "tried for a long time" to develop the claimed invention but found it "very hard" and "were all not successful")); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 835 (Fed. Cir. 1991) (explaining

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

that "failure of others to provide a feasible solution to a long-standing problem is probative of non-obviousness") (citation omitted); *Alco Standard*, 808 F.2d at 1500, 1501 (finding strong secondary considerations of nonobviousness when "[t]he evidence fully supports the district court's finding that others in the industry were unable to solve the problem" and noting that "a large corporation working on this matter had tried but failed").

67.    The patent holder does not have to demonstrate why other companies failed, only that they did fail.  *See Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 341 (2d Cir. 1982) ("It is plain that appellants' device answered a long-felt need that others skilled in the art had failed to fulfill, and so it seems beyond question that appellants' invention was not an obvious one.").  "[A]n accused infringer's inability to develop a product made possible by the claimed invention indicated nonobviousness." *Advanced Display*, 212 F.3d at 1285.  "[F]ailure by others, including the accused infringer, to develop the claimed invention constitutes 'virtually irrefutable' evidence of nonobviousness." *Id.*

**6. Unexpected Results**

68.    The Federal Circuit "has repeatedly explained" that "evidence [of surprising or unexpected results] is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of non-obviousness." *Ortho-McNeil*, 520 F.3d at 1365.  Unexpected results are a

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

"superior property or advantage that [a person skilled in the art] would have found surabling or unexpected." *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995). They are probative of non-obviousness because "that which would have been surprising . . . would not have been obvious." *Id.* "The principle applies most often to the less predictable fields, such as chemistry, where minor changes in a product or process may yield substantially different results." *Id.* "Unexpected results are useful to show the 'improved properties provided by the claimed compositions are much greater than would have been predicted.'" *Leo Pharm.*, 726 F.3d at 1358. A finding of "unexpected results" is "tantamount to a finding of nonobviousness." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.28 (Fed. Cir. 1993).

69. Furthermore, it is not necessary that the unexpected properties be known at the time of the invention or disclosed in the patent:

> Evidence developed after the patent grant is not excluded from consideration, for understanding of the full range of an invention is not always achieved at the time of filing the patent application. It is not improper to obtain additional support consistent with the patented invention, to respond to litigation attacks on validity. There is no requirement that an invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention, in order for that work to be introduced into evidence in response to litigation attack. Nor is it improper to conduct additional experiments and provide later-obtained data in support of patent validity.

Ex. 4B – 25

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354, 1360 (Fed. Cir. 2014).

70.    Finally, an invention need have only one unexpected superior property when compared to the prior art to overcome a *prima facie* obviousness case, and may be the same or even inferior in other properties.  *See, e.g.*, *In re Chupp*, 816 F.2d 643, 646 (Fed. Cir. 1987).

## IV.    DAMAGES TO KURIN

### A. Issues of Law to be Litigated

71.    The date on which the Practicing Product was marked with the #052 Patent pursuant to 35 U.S.C. § 287.

72.    The amount of compensatory damages to which Kurin is entitled for Magnolia's infringement of the Kurin Asserted Patent, including the amount of lost profits and, where lost profit damages are not available, a reasonable royalty.

73.    Whether Kurin has proven by a preponderance of the evidence that, during the damages period: (1) there was demand for the patented products; (2) there were no acceptable non-infringing alternatives; (3) Kurin had the manufacturing and marketing capacity to make the infringing sales Magnolia made; and (4) Kurin would have made a quantifiable amount of lost profits if Magnolia had not infringed.

Ex. 4B – 26
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

74.    For any infringement for which Kurin is not entitled to lost profits, the amount of reasonable royalty damages Kurin is entitled to for Magnolia's infringement.

75.    Whether Kurin has proven by a preponderance of the evidence that it is entitled to an accounting of damages for post-verdict infringement prior to any injunction, and the amount of such damages.

76.    Whether Kurin has proven by a preponderance of the evidence that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

## B. Legal Authority

### 1. Damages Generally

77.    Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  The plaintiff must show the amount of damages by a preponderance of the evidence.  *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).  "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

78.    The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" them for the infringement, such that the patent owner is restored to the financial position they would have been in had the infringement not occurred. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545, 1547 (Fed. Cir. 1995) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("[T]he Supreme Court has interpreted [Section 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement.") (emphasis in original).

79.    A patentee is entitled to "lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

## 2.  Lost Profits

80.    "Lost profits may be in the form of diverted sales, eroded prices, or increased expenses. The patent owner must establish a causation between his lost profits and the infringement. A factual basis for the causation is that 'but for' the infringement, the patent owner would have made the sales that the infringer made, charged higher prices, or incurred lower expenses." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995) ("To recover lost profits damages for patent infringement, the patent owner must show that it would have received the

Ex. 4B – 28
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin
Asserted Patent

additional profits 'but for' the infringement."). "The patent owner bears the burden to present evidence sufficient to show a reasonable probability that it would have made the asserted profits absent infringement." *King Instruments*, 65 F.3d at 952. "The patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement. When the patentee establishes the reasonableness of this inference, e.g., by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales. The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales." *Rite-Hite*, 56 at 1545 (internal citations omitted).

81.    "There is no particular required method to prove but for causation" in patent cases. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017). "One useful, but non-exclusive method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit" in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). *Mentor Graphics*, 851 F.3d at 1284 (cleaned up). Under the *Panduit* test, a patentee is entitled to lost profits if it can establish: (1) "demand for the patented product"; (2) "absence of acceptable noninfringing substitutes"; (3) "manufacturing and marketing capability to exploit the demand"; and (4) "the amount of the profit [the patentee] would have made." 575 F.2d at 1156. "Lost

Ex. 4B – 29

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

profit damages do not depend on the number of patents infringed by one single product . . . . The lost profit calculation depends only on market variables." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001)

82.     "The first factor—demand for the patented product—considers demand for the product as a whole." *Mentor Graphics*, 851 F.3d at 1285 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330–31 (Fed. Cir. 2009)).  "This factor does not require any allocation of consumer demand among the various limitations recited in a patent claim.  Instead, the first *Panduit* factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'"  *DePuy*, 567 F.3d at 1330 (quoting *Rite-Hite*, 56 F.3d at 1548–49).

83.     "The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention." *Mentor Graphics*, 851 F.3d at 1285 (citing *DePuy*, 567 F.3d at 1331).

84.     "[I]f purchasers are motivated to purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,

Ex. 4B – 30

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

953 F.2d 1360, 1373 (Fed. Cir. 1991).  Similarly, "products lacking the advantages of the patented invention 'can hardly be termed a substitute acceptable to the customer who wants those advantages.'"  *Presidio*, 702 F.3d at 1362, quoting *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901–02 (Fed. Cir. 1986); *see also Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556 (Fed. Cir. 1986) (affirming district court's finding of no acceptable, noninfringing alternatives where "[t]he various [proposed alternative] wheelbarrows to which [infringer] refers incorporate only some, but not all, of the elements of the patent.").  This is especially true where the "proposed non-infringing substitutes are not adequate substitutes in the same market" and/or the market is moving away from the proposed non-infringing substitute to the infringing design.  *Presidio*, 702 F.3d at 1361.  Product cannot qualify as non-infringing substitutes if they "infringe any one of plaintiffs' patents," as such "substitutes are illegally on the market and it would thus be reasonable to conclude that plaintiffs would make those sales instead."  *Parker-Hannifin Corp. v. Champion Labs., Inc.*, No. 1:06-cv-2616, 2008 WL 3166318, at *6 (N.D. Oh. Aug. 4, 2008).

85.    "[T]he patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether" in order to satisfy the second *Panduit* factor.  *State Indus.*, 883 F.2d at 1577 (quoting *Paper Converting Mach. Co. v. Magna-Graphics Corp.*,

Ex. 4B – 31

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

745 F.2d 11, 21 (Fed. Cir. 1984)) (emphasis in original); *see also Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 613 (D. Del. 2004) ("A patentee need not negate every possibility that a purchaser might have bought a product other than its own.").

86.     Under the third *Panduit* factor, a patentee may prove it had the requisite manufacturing and marketing capacity through evidence as to previous manufacturing rates and growth rate.  *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997).  A patentee may prove it had the requisite manufacturing and marketing capacity through evidence as to previous manufacturing rates and growth rate.  *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997).  A patentee may also show sufficient manufacturing and marketing capacity through evidence regarding its pre-existing marketing and distribution channels, as well as by showing that the additional demand would represent only a small fraction of its prior manufacturing.  *AOS Holding Co. v. Bradford White Corp.*, C.A. No. 18-412-LPS, 2021 WL 5411103, at *36 (D. Del. Mar. 31, 2021).  Ability to subcontract to meet additional demand may also be used to meet the third *Panduit* factor.  *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 780 (D. Del. 2015).

87.     As to the fourth *Panduit* factor, a patentee may prove the amount of profits it lost by reasonably quantifying the incremental profits it would have made

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

from the sales it lost.  *See Paper Converting Machine*, 745 F.2d at 22.  Fixed costs are not allocated to lost profits.  *See id.*  "The incremental income approach to the computation of lost profits is well established in the law relating to patent damages.  The approach recognizes that it does not cost as much to produce unit *N + 1* if the first *N* (or fewer) units produced already have paid the fixed costs.  Thus fixed costs—those costs which do not vary with increases in production, such as management salaries, property taxes, and insurance—are excluded when determining profits."  *Id.* (internal citations omitted).

### 3.  Reasonable Royalty

88.     "A patentee receives a reasonable royalty for any of the infringer's sales not included in the lost profit calculation."  *Crystal*, 246 F.3d at 1354; *see also Mentor Graphics*, 851 F.3d at 1286 ("For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales.").

89.     While the patent statute provides a floor of "a reasonable royalty for the use made of the invention by the infringer," 35 U.S.C. § 284, it provides no method for defining a "reasonable" royalty, an exercise that "is not an exact science."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).  One approach to determining a reasonable royalty is the "hypothetical negotiation" approach, which the Federal Circuit has held is a reasonable method.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*See Summit 6*, 802 F.3d at 1299.  The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *Id.*

90.     The fifteen factors identified in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), are most commonly used for this analysis.  The *Georgia-Pacific* factors are:

1.     The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.     The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.     The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.     The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.     The duration of the patent and the term of the license.

8.     The established profitability of the product made under the patent; its commercial success; and its current popularity.

Ex. 4B – 34
Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

91. While the Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions and district courts have repeatedly applied the analysis, the factors are not exclusive, and some or all of the factors may be relevant to a particular case, depending on the facts of the case. *See, e.g., Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008); *Rite-Hite*, 56 F.3d at 1555; *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011).

92.    As described in *Georgia-Pacific*, there is no mathematical formula to determining reasonable royalties:

> [A] multiplicity of inter-penetrating factors bear[s] upon the amount of a reasonable royalty.  But there is no formula by which these factors can be rated precisely in the order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent.  In discharging its responsibility as fact finder, the Court has attempted to exercise a discriminating judgment reflecting its ultimate appraisal of all pertinent factors in the context of the credible evidence.

*Georgia-Pacific*, 318 F. Supp. at 1120–21.  "[A]ny reasonable royalty analysis necessarily involves an element of approximation, and uncertainty."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 857–58 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011).  In *Summit 6*, the Federal Circuit held "[t]his court has recognized that estimating a reasonable royalty is not an exact science.  The record may support a range of reasonable royalties, rather than a single value.  Likewise, there may be more than one reliable method for estimating a reasonable royalty."  802 F.3d at 1296.

> "All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case. Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination. That

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible."

*Id.*

93.    "The determination of a reasonable royalty . . . is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started." *State Indus.*, 883 F.2d at 1580; *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) ("[I]t is settled law that an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped."); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013); *Rite-Hite*, 56 F.3d at 1555.

94.    "To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)).  When an expert seeks to use a general economic theory to calculate damages in the context of a reasonable royalty analysis, they must properly "justif[y] the application of [the] general theory" without relying on "evidence unrelated to the claimed invention." *Id.* at 1315–16.  If the expert "fails to tie the theory to the facts of the case, the testimony must be excluded." *Id.* at 1315.

95.    Where the accused product includes both a patented feature and allegedly unpatented or conventional features, "damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc. v. D-Link Sys.*, 773 F. 3d 1201, 1226 (Fed. Cir. 2014)).  Such apportionment can be applied to the royalty rate or the royalty base, or a combination of both.  *Ericsson*, 773 F.3d at 1226.  In an apportionment analysis, courts may consider and "discuss[] the claimed [invention] and the real world benefits tied to that [invention]." *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 11-cv-201-JRG, 2017 WL 1079441, at *3 (E.D. Tex. Mar. 22, 2017). In determining the benefits of the invention "patent damages experts often rely on technical expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014).

### 4.  Marking

96.    The Patent Act provides that, if a patentee fails to mark a patent-practicing product, "no damages shall be recovered . . . except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."  35 U.S.C. § 287(a).  "Compliance with section 287(a) is a question of fact."  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

97.     Although the patentee bears the burden of persuasion as to compliance with § 287, the alleged infringer bears the "initial burden of production to articulate the products it believes are unmarked 'patented articles.'" *Arctic Cat*, 876 F.3d at 1367–68 (requiring that alleged infringer specifically identify the unmarked "patented articles"); *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 688 (D. Del. 2017), *aff'd sub nom. Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674 (Fed. Cir. 2019).

98.     A patented article may be marked on the packaging rather than the article itself. *Glob. Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 905–06 (Fed. Cir. 2015). When evaluating whether package marking complies with § 287, courts "evaluate the specific character of the article at issue," taking into account "many factors." *Id.* at 905. The Federal Circuit has indicated that such factors include, but are not limited to, the physical size of the article, whether the article has multiple components, and whether it is "immediately installed out of the public view once unpackaged." *Id.* "This factual inquiry regarding the character of the patented article, moreover, may be submitted to a jury." *Glob. Traffic Techs.*, 630 F. App'x at 906.

### 5.  Pre-Judgment and Post-Judgment Interest

99.     "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co.,*

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

*Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)).  "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment."  *Id.*  (citing *General Motors*, 461 U.S. at 656).  Furthermore, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).  Post-judgment interest is governed by regional circuit law.  *Id.* at 1348.  Interest begins to accrue on the date of the entry of judgment.  *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

100.    Courts in this district award post-judgment interest in patent infringement cases.  *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest for patent infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (same).

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

## V.    INJUNCTIVE RELIEF TO KURIN

### A. Issues of Law to be Litigated

101.   Whether Kurin has proven by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Magnolia and its officers, agents, servants, and employees from further infringement of the Kurin Asserted Patent.

102.   Whether Kurin has proven by a preponderance of the evidence that, as part of the injunctive relief, it is entitled to an order that requires the recall, removal, seizure, or destruction of all infringing products currently in the marketplace.

### B. Legal Authority

103.   Under 35 U.S.C. § 283, the Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

104.   To obtain an injunction under § 283, "[a] plaintiff must demonstrate:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

Ex. 4B – 41

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction."

*eBay*, 547 U.S. at 391.

105.   "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics*, 717 F.3d at 1345.  In balancing the hardships between the parties, the Court "assesses the relative effect of granting or denying an injunction." *Apple*, 809 F.3d at 645.  Factors that the Court may consider include: "the parties' sizes, products, and revenue sources." *Evonik Degussa Gmbh v. Materia, Inc.*, C.A. No. 09-636 (NLH/JS), 2017 WL 3434156, at *3 (D. Del. Aug. 10, 2017) (citing *Microsoft*, 598 F.3d at 862).  "A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

106.   "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions.  'The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to

Ex. 4B – 42

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

exclude.'" *Apple*, 809 F.3d at 647 (quoting *Sanofi-Synthelabo*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

107.    The Court has the power to order the recall, seizure, or destruction of any infringing products that are in the marketplace to prevent further acts of infringement. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1564–65 (Fed. Cir. 1984) ("The district court may frame an effective injunction against Nyman's 'use' of the patented display by specifying that such use includes the furnishing of the racks to the customers, and that to terminate such use Nyman must recall the racks from its customers."); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1346 (Fed. Cir. 2003) (affirming district court's grant of preliminary injunction to recall Accused Products); *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, C.A. No. 16-41-CFC, 2020 WL 4015481, at *5 (D. Del. July 16, 2020) (ordering recall of infringing product); *see also Fisher-Price, Inc. v. Safety 1st, Inc.*, C.A. No. 01-051-GMS, 2008 WL 1976624, *3 (D. Del. May 5, 2008) (holding infringer in contempt for not exercising all reasonable efforts to retrieve infringing product from the retailers it sold to).

## VI.    ENHANCED DAMAGES, ATTORNEYS' FEES, AND COSTS

### A. Issues of Law to be Litigated

108.    Whether Kurin has proven by a preponderance of the evidence that this is an exceptional case pursuant 35 U.S.C. § 285.

Ex. 4B – 43

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent

109.   Whether Kurin has proven by a preponderance of the evidence that it is entitled to attorneys' fees, expenses, or costs, and the amount.

110.   Whether Kurin has proven by a preponderance of the evidence that it is entitled to any further relief that the Court deems just and proper.

## B.  Legal Authority

### 1.  Attorneys' Fees and Costs under 35 U.S.C. § 285

111.   "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The court "may determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances."  *Id.*

112.   Attorney fees may be awarded for willful infringement, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Rule 11 of the Federal Rules of Civil Procedure, or like infractions.  *Id.* at 550.  However, attorneys' fees are not limited to independently sanctionable conduct.  *Id.* at 555.  A prevailing party must establish its entitlement to fees under 35 U.S.C. § 285 by a preponderance of the evidence.  *Id.* at 557–58.

Magnolia's Statement of Issues of Law That Remain to be Litigated as to the Kurin Asserted Patent