# EXHIBIT 5A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., | ) |
| | ) |
| | ) |
| *Plaintiff and Counter-Defendant,* | ) |
| | ) |
| v. | ) C.A. No. 24-1124-CFC |
| | ) |
| KURIN, INC., | ) |
| | ) |
| *Defendant and Counter-Plaintiff.* | ) |
| | ) |

**EXHIBIT 5A:**

## KURIN'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED AS TO THE MAGNOLIA ASSERTED PATENTS

**EXHIBIT 5A**

**TABLE OF CONTENTS**

I.    NON-INFRINGEMENT ................................................................4

   A.    Issues of Law to be Litigated...............................................4

      1.    Non-Infringement of U.S. Patent No. 11,529,081 (the "'081 Patent") ........................................................4

      2.    Non-Infringement of U.S. Patent No. 11,653,863 (the "'863 Patent") ........................................................6

      3.    Non-Infringement of U.S. Patent No. 11,903,709 (the "'709 Patent") ........................................................8

   B.    Legal Authority....................................................................8

      1.    Direct Infringement.....................................................8

      2.    Indirect Induced Infringement ...................................10

      3.    Willful Infringement .................................................11

II.    INVALIDITY ...........................................................................12

   A.    Issues of Law to be Litigated.............................................12

   B.    Legal Authority..................................................................13

      1.    Person of Ordinary Skill in the Art............................13

      2.    Presumption of Validity.............................................14

      3.    Prior Art Considered by the Patent and Trademark Office ......15

      4.    Anticipation...............................................................15

      5.    Obviousness ..............................................................18

      6.    Secondary Considerations of Nonobviousness............21

      7.    Written Description....................................................24

      8.    Enablement................................................................26

## EXHIBIT 5A

9. Indefiniteness ................................................................28

III. UNENFORCEABILITY ..............................................................30

    A. Issues of Law to be Litigated ...................................................30

    B. Legal Authority.........................................................................30

        1. Inequitable Conduct ......................................................30

IV. MONETARY RELIEF TO MAGNOLIA...................................34

    A. Issues of Law to be Litigated ...................................................34

    B. Legal Authority.........................................................................35

        1. Damages in General .......................................................35

        2. Lost Profits....................................................................36

        3. Reasonable Royalty .......................................................39

        4. Damages for Post-Trial Infringement ...........................43

        5. Prejudgment Interest .....................................................45

        6. Post-Judgment Interest..................................................45

        7. Attorneys' Fees and Costs Under 35 U.S.C. § 285 ..................46

V. INJUNCTIVE RELIEF TO MAGNOLIA..................................47

    A. Issues of Law to Be Litigated ...................................................47

    B. Legal Authority.........................................................................48

        1. Permanent Injunctive Relief .........................................48

## EXHIBIT 5A

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
579 F. Supp. 2d 554 (D. Del. 2008) .................................................................51

*Alarm.com, Inc. v. SecureNet Techs. LLC*,
2019 WL 133228 (D. Del. Jan. 8, 2019) ..........................................................23

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) .........................................................................9

*ALZA Corp. v. Andrx Pharms., LLC*,
603 F.3d 935 (Fed. Cir. 2010) .........................................................................27

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*,
768 F.3d 1185 (Fed. Cir. 2014) ..................................................................31, 32

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
2019 WL 2330855 (E.D.N.Y. May 31, 2019) ..................................................12

*Amgen Inc., v. Sanofi*,
872 F.3d 1367 (Fed. Cir. 2017) ..................................................................27, 51

*Apple Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2013) .......................................................................49

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) .......................................................................49

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) .......................................................................49

*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (Fed. Cir. 2016) (en banc) ..................................................21, 22

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..................................................25, 26

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) .......................................................................10

## EXHIBIT 5A

*ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*,
932 F.3d 1364 (Fed. Cir. 2019) ....................................................................17, 18

*Athletic Alts., Inc.* v. *Benetton Trading USA, Inc.*,
174 F. App'x 571 (Fed. Cir. 2006) ......................................................................15

*Bard Peripheral Vascular, Inc.* v. *W.L. Gore & Assocs., Inc.*,
2009 WL 920300 (D. Ariz. Mar. 31, 2009),
*aff'd*, 670 F.3d 1171 (Fed. Cir. 2012),
*opinion vacated in part on reconsideration,* 682 F.3d 1003 (Fed. Cir. 2012),
*vacated in part on reh'g en banc,* 476 F. App'x 747 (Fed. Cir. 2012) ......................................................................................................................51

*Bianco* v. *Globus Med., Inc.*,
2014 WL 1049067 (E.D. Tex. Mar. 17, 2014) ....................................................51

*BIC Leisure Prod., Inc.* v. *Windsurfing Int'l, Inc.*,
1 F.3d 1214 (Fed. Cir. 1993) .........................................................................36, 37

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ..........................................................................50

*Biomedino, LLC v. Waters Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007) .......................................................................28, 29

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016) ..........................................................................16

*BMC Res., Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007) .............................................................................9

*Bristol-Myers Squibb Co.* v. *Teva Pharm. USA, Inc.*,
752 F.3d 967 (Fed. Cir. 2014) .............................................................................24

*Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.*,
229 F.3d 1120 (Fed. Cir. 2000) ..........................................................................19

*Capon v. Eshhar*,
418 F.3d 1349 (Fed. Cir. 2005) ..........................................................................25

*Care, Ltd. v. Laurain*,
98 F.4th 1081 (Fed. Cir. 2013) ...........................................................................33

## EXHIBIT 5A

*Chestnut Hill Sound Inc. v. Apple Inc.*,
2015 WL 6870037 (D. Del. Nov. 6, 2015)...................................................49, 50

*Chore-Time Equip., Inc.* v. *Cumberland Corp.*,
713 F.2d 774 (Fed. Cir. 1983) ...................................................................14

*In re Clay*,
966 F.2d 656 (Fed. Cir. 1992) ...................................................................19

*Conceptus, Inc. v. Hologic, Inc.*,
2012 WL 44064 (N.D. Cal. Jan. 9, 2012)...................................................50, 51

*Cook Biotech Inc.* v. *Acell, Inc.*,
460 F.3d 1365 (Fed. Cir. 2006) ...................................................................8

*Cordis Corp.* v. *Bos. Sci. Corp.*,
99 F. App'x 928 (Fed. Cir. 2004) ...................................................................51

*Cot'n Wash, Inc. v. Henkel Corp.*,
56 F. Supp. 3d 626 (D. Del. 2014)...................................................................24

*Cross Med. Prod., Inc.* v. *Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ...................................................................8

*Crystal Semiconductor Corp.* v. *TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ...................................................................39

*CSIRO* v. *Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ...........................................................41, 42, 43

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*,
676 F.3d 1063 (Fed. Cir. 2012) ...........................................................21, 22, 23

*Dayco Products, Inc. v. Total Containment, Inc.*,
329 F.3d 1358 (Fed. Cir. 2003) ...................................................................31

*Deering Precision Instruments, L.L.C.* v. *Vector Distrib. Sys., Inc.*,
347 F.3d 1314 (Fed. Cir. 2003) ...................................................................9

*Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*,
851 F.2d 1387 (Fed. Cir. 1987) ...........................................................22, 23

v

**EXHIBIT 5A**

*DeMartini Sports, Inc. v. Worth, Inc.*,
  239 F.3d 1314 (Fed. Cir. 2001) ...................................................................9

*DSU Med. Corp. v. JSM Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) .................................................................10

*Duke Univ.* v. *BioMarin Pharm. Inc.*,
  685 F. App'x 967 (Fed. Cir. 2017) ............................................................17

*eBay Inc.* v. *MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...............................................................48, 50, 51, 52

*Ecolochem, Inc.* v. *S. Cal. Edison Co.*,
  227 F.3d 1361 (Fed. Cir. 2000) .................................................................20

*Edwards Lifesciences AG v. CoreValve, Inc.*,
  2011 WL 446203 (D. Del. Feb. 7, 2011),
  *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ...........44, 45, 46

*Eisai Co. Ltd. v. Dr. Reddy's Lab., Ltd.*,
  533 F.3d 1353 (Fed. Cir. 2008) .................................................................19

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) ...................................................................20

*EMC Corp.* v. *Zerto, Inc.*,
  2016 WL 1291757 (D. Del. Mar. 31, 2016),
  *aff'd*, 691 F. App'x 623 (Fed. Cir. 2017) .................................................50

*EMC Corp. v. Zerto, Inc.*,
  2017 WL 3434212 (D. Del. Aug. 10, 2017).................................................44

*Envtl. Designs, Ltd.* v. *Union Oil Co.*,
  713 F.2d 693 (Fed. Cir. 1983) ...................................................................14

*Erfindergemeinschaft UroPep GbR* v. *Eli Lilly & Co.*,
  2017 WL 3034655 (E.D. Tex. July 18, 2017) (Bryson, J.) ...............................44

*Ericsson, Inc.* v. *D–Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .........................................................35, 39, 41

*Exergen Corp.* v. *Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ...................................................................9

# EXHIBIT 5A

*Exmark Mfg. Co., Inc.* v. *Briggs & Stratton Power Prod. Grp., LLC*,
 879 F.3d 1332 (Fed. Cir. 2018) .....................................................................41, 42

*Falko-Gunter Falkner v. Inglis*,
 448 F.3d 1357 (Fed. Cir. 2006) ...........................................................................26

*In re Fine*,
 837 F.2d 1071 (Fed. Cir. 1988) ...........................................................................21

*Finisar Corp. v. DirecTV Grp., Inc.*,
 523 F.3d 1323 (Fed. Cir. 2008) ...........................................................................16

*Fox Factory, Inc.* v. *SRAM, LLC*,
 944 F.3d 1366 (Fed. Cir. 2019) .....................................................................22, 23

*Genentech, Inc. v. Amgen Inc.*,
 2019 WL 3290167 (D. Del. July 18, 2019) .........................................................50

*Genentech, Inc. v. Novo Nordisk, A/S*,
 108 F.3d 1361 (Fed. Cir. 1997) ...........................................................................27

*General Motors Corp.* v. *Devex Corp.*,
 461 U.S. 648 (1983)..............................................................................................45

*Georgia-Pacific Corp v. United States Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) ...............................................................39, 41

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
 7 F.4th 1320 (Fed. Cir. 2021) ..............................................................................10

*In re GPAC Inc.*,
 57 F.3d 1573 (Fed. Cir. 1995) ..................................................................18, 19, 22

*Graham v. John Deere Co.*,
 383 U.S. 1 (1966)..................................................................................................18

*Grain Processing Corp.* v. *Am. Maize-Prod. Co.*,
 185 F.3d 1341 (Fed. Cir. 1999) ..............................................................36, 37, 38

*Greatbatch Ltd.* v. *AVX Corp.*,
 2016 WL 7217625 ................................................................................................11

## EXHIBIT 5A

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
769 F.3d 1371 (Fed. Cir. 2014), *vacated and remanded*, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016)....................................................................11, 12

*Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*,
579 U.S. 93 (2016)....................................................................................11, 12

*Hauser, Inc.* v. *Hawk Measurement Sys. Pty. Ltd.*,
122 F.3d 1040 (Fed. Cir. 1997) ........................................................................13

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
49 F.3d 1551 (Fed. Cir. 1995) ..........................................................................50

*Hospira, Inc.* v. *Amneal Pharm., LLC*,
285 F. Supp. 3d 776 (D. Del. 2018)..................................................................21

*Icon Health & Fitness, Inc. v. Polar Electro Oy*,
656 F. App'x 1008 (Fed. Cir. 2016) ..................................................................28

*Idenix Pharm. LLC* v. *Gilead Scis. Inc.*,
941 F.3d 1149 (Fed. Cir. 2019) ........................................................................26

*Intel Corp. v. VIA Techs.*,
319 F.3d 1357 (Fed. Cir. 2003) ........................................................................28

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ........................................................................20

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed. Cir. 2005) ..................................................................16, 17

*K-2 Corp.* v. *Salomon S.A.*,
191 F.3d 1356 (Fed. Cir. 1999) ..........................................................................9

*Keanrs v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994) ..........................................................................38

*KSR Int'l Co.* v. *Teleflex Inc.*,
550 U.S. 398 (2007)............................................................................18, 19, 20

*LaserDynamics, Inc.* v. *Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ............................................................................42

## EXHIBIT 5A

*Li Second Fam. Ltd. P'ship v. Toshiba Corp.*,
231 F.3d 1373 (Fed. Cir. 2000) ........................................................................30, 33

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)......................................................................................................10

*Lockwood v. Am. Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997) ..................................................................16, 25

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ..................................................................39, 43

*Magnolia Med. Techs., Inc. v. Kurin, Inc.*,
C.A. No. 24-1124 (D. Del.) ..................................................................................31

*MagSil Corp.* v. *Hitachi Global Storage Techs., Inc.*,
687 F.3d 1377 (Fed. Cir. 2012) ..................................................................26, 27

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) ..................................................................................39

*McKennson Info. Sols., Inc. v. Bridge Med., Inc.*,
487 F.3d 897 (Fed. Cir. 2007) ..................................................................................33

*Media Rts. Techs., Inc.* v. *Cap. One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015) ..................................................................................29

*Medrad, Inc.* v. *MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005) ..................................................................................15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)......................................................................................................11

*Microsoft Corp.* v. *I4I Ltd. P'ship*,
564 U.S. 91 (2011)........................................................................................................15

*Minks v. Polaris Indus., Inc.*,
546 F.3d 1364 (Fed. Cir. 2008) ..................................................................................41

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) ..........................................................31, 32, 33

## EXHIBIT 5A

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
  878 F.3d 1336 (Fed. Cir. 2018) ...............................................................16

*Motivation Innovations LLC* v. *Ulta Salon Cosm. & Fragrance Inc.*,
  59 F. Supp. 3d 663 (D. Del. 2014)..............................................................9

*Nautilus, Inc.* v. *Biosig Instruments, Inc.*,
  572 U.S. 898 (2014).............................................................................28, 29

*Novo Nordisk Pharm., Inc.* v. *Bio-Tech. Gen. Corp.*,
  424 F.3d 1347 (Fed. Cir. 2005) ...............................................................17

*Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).................................................................................46

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) .................................................30, 31, 32

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006) ...............................................................23

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004)..........................................................16

*Paice LLC* v. *Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007) ...............................................................43

*Panduit Corp.* v. *Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ............................................................37, 38

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
  745 F.2d 11 (Fed. Cir. 1984) ...................................................................38

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998)....................................................................................16

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017) ..........................................................37, 38

*Prometheus Labs., Inc. v. Roxane Labs., Inc.*,
  805 F.3d 1092 (Fed. Cir. 2015) ...............................................................21

**EXHIBIT 5A**

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
32 F.3d 1552 (Fed. Cir. 1994) ..........................................................................49

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ....................................................................35, 43

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000) ..........................................................................14

*In re Schreiber*,
128 F.3d 1473 (Fed. Cir. 1997) ........................................................................16

*Schumer v. Lab'y Comput. Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002) ..................................................................17, 18

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
No. 13-CV-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29,
2017) ..................................................................................................................12

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*,
926 F.2d 1161 (Fed. Cir. 1991) ............................................................35, 36, 42

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) ........................................................................21

*Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015) ..........................................................................10

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)...........................................................................................28

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) ........................................................................29

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc) ..................................................30, 31

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling
USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012) ..................................................................22, 24

*TransWeb, LLC v. 3M Innovative Prop. Co.*,
812 F.3d 1295 (Fed. Cir. 2016) ........................................................................32

**EXHIBIT 5A**

*TruePosition Inc.* v. *Andrew Corp.*,
611 F. Supp. 2d 400 (D. Del. 2009),
*aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) .......................................................46

*Union Carbide Corp.* v. *Am. Can Co.*,
724 F.2d 1567 (Fed. Cir. 1984) .......................................................................14

*Valmont Indus, Inc. v. Reinke Mfg. Co.*,
983 F.2d 1039 (Fed. Cir. 1993) .......................................................................29

*Vas-Cath Inc. v. Mahukar*,
935 F.2d 1555 (Fed. Cir. 1991) .......................................................................25

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988) .........................................................................27

*WBIP, LLC* v. *Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) .......................................................................11

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982)..........................................................................................48

*In re Winslow*,
365 F.2d 1017 (C.C.P.A. 1966) .......................................................................14

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
2022 WL 2438750 (D. Del. July 5, 2022) .......................................................49

*In re Wood*,
599 F.2d 1032 (C.C.P.A. 1979) .......................................................................18

*Wyers* v. *Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ............................................................18, 23, 24

**Statutes**

28 U.S.C. § 1920......................................................................................................47

28 U.S.C. § 1921......................................................................................................47

28 U.S.C. § 1961......................................................................................................45

35 U.S.C. § 102................................................................................................12, 15

# **EXHIBIT 5A**

35 U.S.C. § 103 ...................................................................................................13, 18

35 U.S.C. § 112 ...................................................................................................*passim*

35 U.S.C. § 122 ...................................................................................................15

35 U.S.C. § 151 ...................................................................................................15

35 U.S.C. § 271 ...................................................................................................*passim*

35 U.S.C. § 282 ...................................................................................................14

35 U.S.C. § 283 ...................................................................................................48, 50

35 U.S.C. § 284 ...................................................................................................35, 45

35 U.S.C. § 285 ...................................................................................................2, 46

35 U.S.C. § 298 ...................................................................................................12

## **Rules**

Fed. R. Civ. P. 54(d)(1)........................................................................................46

L.R. 16.3(c)(5) .....................................................................................................1

L.R. 54.1...............................................................................................................46, 47

## **Other Authorities**

MPEP § 2004 .......................................................................................................33

## EXHIBIT 5A

Pursuant to Local Rule 16.3(c)(5), Kurin, Inc. ("Kurin") submits the following issues of law that remain to be litigated, including a citation of authorities, for the Magnolia Asserted Patents.  Kurin includes in this statement, without waiver, both issues of law to be litigated in the jury trial and issues to be tried to the Court in a bench trial.

Magnolia accuses Kurin of infringing U.S. Patent Nos. 11,529,081 (the "'081 Patent"), 11,653,863 (the "'863 Patent"), and 11,903,709 (the "'709 Patent") (collectively the "Magnolia Asserted Patents").  *See* D.I. 1, 248.  Magnolia asserts the following claims of the Magnolia Asserted Patents, which are collectively referred to as the Magnolia Asserted Claims:[1]

| Patent | Claims |
|---|---|
| '081 Patent | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 |
| '863 Patent | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 |
| '709 Patent | 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, 27, 28, 29, 30 |

*See* D.I. 208 (Notice of Service of Magnolia's 3d Am. Disclosure of Asserted Claims and Infringement Contentions).

---

[1]    Magnolia continues to assert 84 claims against Kurin.  Kurin objects to the number of asserted claims as it is not conducive given trial time constraints and fails to put Kurin on notice of which claims Magnolia will assert at trial.

1

## **EXHIBIT 5A**

Kurin provides these disclosures based in part on its understanding of the arguments that Magnolia is likely to make based upon the pleadings, discovery, and motions filed to date.  Kurin does not, by way of including an issue in this statement, concede that such issue should be included in either the jury trial or any bench trial of this matter.  Certain issues included in this statement may be presented separately (e.g., injunctive relief and any award pursuant to 35 U.S.C. § 285).  Kurin reserves the right to modify or amend this statement to the extent necessary to fairly respond to any new issues that Magnolia may raise, if Magnolia is permitted to so raise new issues, and Kurin further reserves the right to modify or amend this statement based upon the resolution of any outstanding motion or other future ruling by the Court.  The following statements are not exhaustive, and Kurin reserves the right to prove any matters identified in its pleadings, infringement and invalidity contentions, interrogatory responses, and/or expert reports.  Kurin also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order.  Kurin further intends to offer evidence to rebut evidence offered by Magnolia, and to argue that Magnolia is precluded from offering evidence in support of theories and claims not adequately disclosed in accordance with the scheduling order.  Kurin incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

2

## <u>EXHIBIT 5A</u>

To the extent that Kurin's Statement of Issues of Fact That Remain to be Litigated as to the Magnolia Asserted Patents (Exhibit 3A) contains issues of law, those issues are incorporated herein by reference.  Moreover, if any issue of law identified below should properly be considered an issue of fact, then such statement shall be considered to be part of Kurin's Statement of Issues of Fact to be Litigated at Trial.

Kurin reserves the right to rely upon the legal authorities cited by Magnolia in its corresponding exhibit of issues of law to be litigated.  Kurin also incorporates by reference the law cited in the parties' jury instructions.

## EXHIBIT 5A

## I.   NON-INFRINGEMENT

### A.   Issues of Law to be Litigated

#### 1.   Non-Infringement of U.S. Patent No. 11,529,081 (the "'081 Patent")

1.   Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 1, 5–11, 15–21, 25–30 of the '081 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Kurin Jet blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, TJ-PIV18, SJ-PIV4, and SJ-PIV10 (collectively the "Kurin Accused Products").[2]

2.   Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 1, 5–11, 15–21, 25–30 of the '081 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the Kurin Accused Products.

3.   Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 2, 12, and 22 of

---

[2]  For purposes of infringement, invalidity, and damages in this case, the parties have stipulated that each model of Magnolia's Steripath Micro products made, used, offered for sale, sold, and/or imported by Magnolia are identical (except for needle gauges and collection equipment).  *See* D.I. 136.

**EXHIBIT 5A**

the '081 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Kurin Jet blood culture collection sets: SJ-PIV4 and SJ-PIV10.

4.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 2, 12, and 22 of the '081 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the accused Kurin Jet blood culture collection sets: SJ-PIV4 and SJ-PIV10.

5.      Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 3, 4, 13, 14, 23, and 24 of the '081 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Kurin Jet blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

6.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 3, 4, 13, 14, 23, and 24 of the '081 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the accused Kurin Jet blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

**EXHIBIT 5A**

7.      Whether Magnolia has proven by a preponderance of the evidence that Kurin willfully infringed, and continues to willfully infringe, the asserted claims of the '081 Patent.

### 2.      Non-Infringement of U.S. Patent No. 11,653,863 (the "'863 Patent")

8.      Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 1, 5-11, and 15-30 of the '863 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the Kurin Accused Products.

9.      Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 1, 5-11, and 15-30 of the '863 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the Kurin Accused Products.

10.     Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 2 and 12 of the '863 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Kurin Jet blood culture collection sets: SJ-PIV4 and SJ-PIV10.

11.     Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims

6

**EXHIBIT 5A**

2 and 12 of the '863 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the accused Kurin Jet blood culture collection sets: SJ-PIV4 and SJ-PIV10.

12.    Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 3, 4, 13 and 14 of the '863 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the accused Kurin Jet blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

13.    Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 3, 4, 13 and 14 of the '863 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the accused Kurin Jet blood culture collection sets: DJ-221, DJ-223, MJ-221, MJ-223, TJ-221, TJ-223, DJ-PIV12, DJ-PIV18, MJ-PIV12, MJ-PIV18, TJ-PIV12, and TJ-PIV18.

14.    Whether Magnolia has proven by a preponderance of the evidence that Kurin willfully infringed, and continues to willfully infringe, the asserted claims of the '863 Patent.

7

## EXHIBIT 5A

> **3.    Non-Infringement of U.S. Patent No. 11,903,709 (the "'709 Patent")**

15.    Whether Magnolia has proven by a preponderance of the evidence that Kurin directly infringed, and continues to directly infringe, claims 1–3, 6–12, 15–21, 24–30 of the '709 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, or importing into the United States the Kurin Accused Products.

16.    Whether Magnolia has proven by a preponderance of the evidence that Kurin has induced, and continues to induce, third parties to directly infringe claims 1–3, 6–12, 15–21, 24–30 of the '709 Patent under 35 U.S.C. § 271(b) by making, using, offering to sell, selling, or importing into the United States the Kurin Accused Products.

> **B.    Legal Authority**

> **1.    Direct Infringement**

17.    "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

18.    "Infringement . . . is a question of fact." *Cook Biotech Inc.* v. *Acell, Inc.*, 460 F.3d 1365, 1373 (Fed. Cir. 2006). The patentee has the burden of proving infringement by a preponderance of the evidence. *See Cross Med. Prod., Inc.* v. *Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

8

**EXHIBIT 5A**

19.    "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (quoting *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007)).  "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Deering Precision Instruments, L.L.C.* v. *Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003).  If there is any deviation or if any limitation is missing, there can be no literal infringement.  *See DeMartini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001).

20.    "An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present in the accused device . . . ." *K-2 Corp.* v. *Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir. 1999).  The proper analysis for infringement is "comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed." *Allen Eng'g Corp.* v. *Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).

21.    "If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon." *Motivation Innovations LLC* v. *Ulta Salon Cosm. & Fragrance Inc.*, 59 F. Supp. 3d 663, 669 (D. Del. 2014).

9

**EXHIBIT 5A**

### 2.    Indirect Induced Infringement

22.    "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  Direct infringement is a necessary predicate for a finding of induced infringement.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920–21 (2014).

23.    The patentee "has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringement." *DSU Med. Corp. v. JSM Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).  The patentee must prove that the accused infringer "knew of the patent" and had a "specific intent . . . to induce infringement." *Id.* at 1304–05.

24.    Circumstantial evidence can support a finding of specific intent to induce infringement.  *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010); *DSU Med.*, 471 F.3d at 1306.  "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1327 (Fed. Cir. 2021) (citation omitted).

25.    "Inducement can be found where there is '[e]vidence of active steps taken to encourage direct infringement,' which can in turn be found in 'advertising an infringing use or instructing how to engage in the infringing use.'" *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630–31 (Fed. Cir.

10

**EXHIBIT 5A**

2015) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)) (alteration in original).

### 3.      Willful Infringement

26.     The relevant standard for willful infringement is whether a party has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*, 579 U.S. 93, 103–04 (2016).  A determination of willfulness is an issue of fact. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1386 (Fed. Cir. 2014), *vacated and remanded*, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016); *see WBIP, LLC* v. *Kohler Co.*, 829 F.3d 1317, 1341 n. 13 (Fed. Cir. 2016).

27.     Pre-suit knowledge of the existence of a patent is insufficient as a matter of law to support a claim for willful infringement. *Greatbatch Ltd.* v. *AVX Corp.*, 2016 WL 7217625, at *3.  Rather, the "key inquiry . . . is whether there is evidence ***in addition to [the defendant's] pre-suit knowledge of the patent[]*** that could show that [its] infringement was 'egregious,' 'deliberate,' 'wanton,' or otherwise characteristic of the type of infringement that warrants the Court exercising its discretion to impose the 'punitive' sanction of enhanced damages." *Id.* (quoting *Halo Elecs., Inc.*, 579 U.S. at 103–04).  Further, "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed

11

## **EXHIBIT 5A**

patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent."  35 U.S.C. § 298.

28.    "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."  *Halo Elecs., Inc.*, 579 U.S. at 105.  A defendant's post-suit "ongoing manufacturing and sales, on their own, are equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit."  *Slot Speaker Techs., Inc.* v. *Apple, Inc.*, No. 13-CV-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017).  "[E]vidence pre-dating the [asserted] Patent's issue may not be offered to prove willful infringement."  *Am. Tech. Ceramics Corp.* v. *Presidio Components, Inc.*, 2019 WL 2330855, at *11 (E.D.N.Y. May 31, 2019).

## II.    INVALIDITY

29.    Kurin provides the below issues to be litigated and legal authorities.

### A.    Issues of Law to be Litigated

30.    Whether Kurin has proven by clear and convincing evidence that the Asserted Claims of the Magnolia Asserted Patents are invalid under 35 U.S.C. § 102 as being anticipated.

## EXHIBIT 5A

31.     Whether Kurin has proven by clear and convincing evidence that the Asserted Claims of the Magnolia Asserted Patents are invalid under 35 U.S.C. § 103 as being obvious.

32.     Whether Kurin has proven by clear and convincing evidence that claims 1, 5–11, 15–21, 25–30 of the '081 Patent, claims 1, 5–11, 15–23, 25–30 of the '863 Patent, and claims 1–5, 7–14, 16–23, 25–30 of the '709 Patent are invalid under 35 U.S.C. § 112 for lack of written description.

33.     Whether Kurin has proven by clear and convincing evidence that claims 1, 5–11, 15–21, 25–30 of the '081 Patent, claims 1, 5–11, 15–23, 25–30 of the '863 Patent, and claims 1–5, 7–14, 16–23, 25–30 of the '709 Patent are invalid under 35 U.S.C. § 112 for lack of enablement.

34.     Whether Kurin has proven by clear and convincing evidence that claims 1, 5–11, 15–21, 25–30 of the '081 Patent, claims 1, 5–11, 15–23, 25–30 of the '863 Patent, and claims 1–5, 7–14, 16–23, 25–30 of the '709 Patent are invalid under 35 U.S.C. § 112 as indefinite.

**B.      Legal Authority**

**1.      Person of Ordinary Skill in the Art**

35.     "The person of ordinary skill in the art is a theoretical construct used in determining obviousness under § 103." *Endress + Hauser, Inc.* v. *Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) (internal

13

**EXHIBIT 5A**

quotations omitted).  "Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field."  *Ruiz* v. *A.B. Chance Co.*, 234 F.3d 654, 666–67 (Fed. Cir. 2000).  "Not all such factors may be present in every case, and one or more of them may predominate."  *Id.* (quoting *Envtl. Designs, Ltd.* v.  *Union Oil Co.,* 713 F.2d 693, 696 (Fed. Cir. 1983)).  The hypothetical person of ordinary skill in the art is presumed to know all the teachings of the prior art references in the field of the invention at the time the invention was made. *See Union Carbide Corp.* v. *Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984) ("The starting place for determining the issue of obviousness is . . . with 'the inventor working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him.'" (quoting *In re Winslow*, 365 F.2d 1017, 1020 (C.C.P.A. 1966))).

### 2.    Presumption of Validity

36.    Patents are presumed to be valid.  35 U.S.C. § 282. "The presumption is, like all presumptions in law, a starting place and a procedural device assigning the burden of proof.  To treat the presumption as irrebuttable would be to oust the courts of their jurisdiction to consider a challenge to the validity of patents before them."  *Chore-Time Equip., Inc.* v. *Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir.

**EXHIBIT 5A**

1983) (rejecting argument that anticipation finding should be overturned because a patent must be presumed valid).  A challenger must prove by clear and convincing evidence that a patent is invalid.  *See Microsoft Corp.* v. *I4I Ltd. P'ship*, 564 U.S. 91, 95, 111 (2011).

### 3.   Prior Art Considered by the Patent and Trademark Office

37.   "[A] court is not bound by the PTO's actions and must make its own independent determination of patent validity."  *Medrad, Inc.* v. *MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005); *see also Athletic Alts., Inc.* v. *Benetton Trading USA, Inc.*, 174 F. App'x 571, 574 (Fed. Cir. 2006) (holding that a court has a right to consider prior art that was before an examiner).

### 4.   Anticipation

38.   A patent is invalid as anticipated where "(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under [35 U.S.C.] section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."  35 U.S.C. § 102(a).

**EXHIBIT 5A**

39.    "Anticipation is an issue of fact." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).  To anticipate a claim, "a single prior art reference must expressly or inherently disclose each claim limitation." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  This requires the performing of "an element-by-element comparison of each claim to each prior art reference." *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004).  Further, the prior art reference must "disclose[] each and every element of the claimed invention arranged or combined in the same way as in the claim." *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018) (quoting *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016)).  While a prior art reference may inherently disclose a claim limitation, it "is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation." *Id.* at 1343.

40.    Notably, a "device" that was "known or used by others" before the patent's priority date "qualifies as prior art." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997).

41.    A public use bar occurs where, before the patent's priority date, "the invention is in public use and ready for patenting." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005) (adopting "ready for patenting test" from *Pfaff*); *see also Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998) (outline

**EXHIBIT 5A**

"ready for patenting test").  The test for public use is "whether the purported use: (1) was accessible to the public; or (2) was commercially exploited."  *Invitrogen Corp.*, 424 F.3d at 1380.  "Commercial exploitation is a clear indication of public use . . . ."  *Id.*

42.    "To establish that an asserted reference is prior art under § [102(a)], the patent challenger must prove, by clear and convincing evidence, that it predates the critical date."  *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019).  Further, "[i]n order to anticipate, a prior art disclosure must also be enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation."  *Novo Nordisk Pharm., Inc.* v. *Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); s*ee also Duke Univ.* v. *BioMarin Pharm. Inc.*, 685 F. App'x 967, 973 (Fed. Cir. 2017) ("An anticipatory reference must be enabled, but no actual creation or reduction to practice is required." (internal quotations omitted)).

43.    Lastly, "testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.  The testimony is insufficient if it is merely conclusory."  *Schumer v. Lab'y Comput. Sys., Inc.*, 308 F.3d 1304, 1315–16 (Fed.

17

**EXHIBIT 5A**

Cir. 2002); *see also ATEN Int'l Co.*, 932 F.3d at 1368 (quoting same passage from *Schumer*).

### 5. Obviousness

44.     A patent is invalid as obvious if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103.

45.     "Obviousness is a question of law based on underlying findings of fact."  *Wyers* v. *Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).  "The underlying factual inquiries include: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations . . . ."  *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)); *see also KSR Int'l Co.* v. *Teleflex Inc.*, 550 U.S. 398, 406–07 (2007).

46.     The scope and content of the prior art includes art "reasonably pertinent to the particular problem with which the inventor was involved." *See In re GPAC Inc.*, 57 F.3d 1573, 1577 (Fed. Cir. 1995) (citing *In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A. 1979)).  This encompasses the field of the inventor's endeavor and any analogous art.  *Id.* at 1578 (citing *Wood*, 599 F.2d at 1036).  "A reference is

18

**EXHIBIT 5A**

reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem."   *Id.* (quoting *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992)).   "If a reference disclosure relates to the same problem as that addressed by the claimed invention, 'that fact supports use of that reference in an obviousness rejection.   An inventor may well have been motivated to consider the reference when making his invention.'"   *Id.* (quoting *Clay*, 966 F.2d at 659).

47.    The differences between the prior art and the claimed invention generally turns on whether there is a "showing of a suggestion, teaching, or motivation to combine the prior art references."   *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000); *see also KSR Int'l Co.*, 550 U.S. at 419–20; *Eisai Co. Ltd. v. Dr. Reddy's Lab., Ltd.*, 533 F.3d 1353, 1356–57 (Fed. Cir. 2008).   For example, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."   *KSR Int'l Co.*, 550 U.S. at 416.

48.    Combination of prior art in an obviousness analysis additionally requires a "reasonable expectation of success."   *Brown & Williamson Tobacco Corp.*, 229 F.3d at 1125.   The reasonable expectation of success requirement "refers to the likelihood of success in combining references to meet the limitations of the

19

## EXHIBIT 5A

claimed invention." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). Of note, a motivation to combine does not necessary establish a reasonable expectation of success. *See Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021) ("A finding by the Board that a patent challenger has demonstrated a motivation to combine references does not necessarily imply that the challenger has also met its burden of showing a reasonable expectation of success in achieving a claimed method of treatment.").

49. Importantly, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR Int'l Co.*, 550 U.S. at 418–19.

50. Further, it is impermissible to "use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention." *Ecolochem, Inc.* v. *S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir.

20

**EXHIBIT 5A**

2000) (quoting *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988)). "[T]he best defense against hindsight-based obviousness analysis is the rigorous application of the requirement for a showing of a teaching or motivation to combine the prior art references," as "[c]ombining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability." *Id.* at 1071–72.

### 6.    Secondary Considerations of Nonobviousness

51.    A patentee is not required to present evidence of secondary considerations. *See Prometheus Labs., Inc. v. Roxane Labs., Inc.*, 805 F.3d 1092, 1101 (Fed. Cir. 2015). Nonetheless, a patentee can proffer evidence of secondary considerations by a preponderance of evidence. *See Apple Inc.* v. *Samsung Elecs. Co.*, 839 F.3d 1034, 1053 (Fed. Cir. 2016) (en banc); *see also Hospira, Inc.* v. *Amneal Pharm., LLC*, 285 F. Supp. 3d 776, 784 (D. Del. 2018). "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063, 1075 (Fed. Cir. 2012) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983)).

52.    These secondary considerations (or objective indicia of non-obviousness) include the following non-exhaustive factors: commercial success,

21

**EXHIBIT 5A**

long-felt but unresolved need, failure of others, copying, unexpected results, skepticism, and industry praise. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012); *In re Cyclobenzaprine*, 676 F.3d at 1078; *Apple Inc.*, 839 F.3d at 1052.

53.     "[P]roffered evidence of objective considerations" should be given weight "only where the objective indicia are attributable to the inventive characteristics of the discovery as claimed in the patent." *In re Cyclobenzaprine*, 676 F.3d at 1079, n.6 (internal quotation marks omitted).  That is, "[f]or objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC, Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995).

54.     "[A] patentee is entitled to a rebuttable presumption of nexus between the asserted evidence of secondary considerations and a patent claim if the patentee shows that the asserted evidence is tied to a specific product and that the product 'is the invention disclosed and claimed.'" *Fox Factory, Inc.* v. *SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (quoting *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1987)) (emphasis omitted).

55.     Generally, "[a] prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in

22

**EXHIBIT 5A**

the patent." *Demaco Corp.*, 851 F.2d at 1392. But "'[w]hen the thing that is commercially successful is not coextensive with the patented invention—for example, if the patented invention is only a component of a commercially successful machine or process,' the patentee is not entitled to a presumption of nexus." *Fox Factory, Inc.*, 944 F.3d at 1373 (quoting *Demaco Corp.*, 851 F.2d at 1392) (alteration in original); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) (rejecting presumption of nexus because commercial success was not the result of claimed and novel features). Further, "if the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Ormco Corp.*, 463 F.3d at 1312.

56. "Longfelt need is closely related to the failure of others. Evidence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand." *In re Cyclobenzaprine*, 676 F.3d at 1082. The relevant analysis includes "the failure of others to find a solution to the problem which the patent[] in question purport[s] to solve." *Alarm.com, Inc. v. SecureNet Techs. LLC*, 2019 WL 133228, at *4 (D. Del. Jan. 8, 2019).

57. For copying, "[n]ot every competing product that arguably falls within the scope of a patent is evidence of copying." *Wyers*, 616 F.3d at 1246. Instead, the analysis "requires evidence of efforts to replicate a specific product, which may be

23

**EXHIBIT 5A**

demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *Id.*

58.    For unexpected results, evidence "must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention." *Bristol-Myers Squibb Co.* v. *Teva Pharm. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014).

59.    For industry praise and skepticism, the patentee needs to establish a nexus between the praise or skepticism and the claimed features of the patented technology. *See Transocean*, 699 F.3d at 1351–53. For example, praise that is received generally without reference to a specific, claimed feature is insufficient. *See Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 651 (D. Del. 2014) (rejecting expert testimony regarding industry praise because the claimed invention was not specifically praised).

### 7.    Written Description

60.    The written description requirement requires that "[t]he specification [] contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any

24

**EXHIBIT 5A**

person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112(a).

61.    To satisfy the written description requirement, the specification must describe the full scope of the claimed invention in sufficient detail so "that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Lockwood,* 107 F.3d at 1572.  In other words, "the test for sufficiency is whether the disclosure . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc.* v. *Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (citing *Vas-Cath Inc. v. Mahukar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).

62.    "[C]ompliance with the written description requirement . . . is a question of fact . . . ."  *Vas-Cath*, 935 F.2d at 1563 (internal quotation marks omitted); *see also Ariad Pharms.*, 598 F.3d at 1355.  Whether a patent complies with the written description requirement depends on context.  *See Ariad Pharms.*, 598 F.3d at 1351 (citing *Capon v. Eshhar*, 418 F.3d 1349, 1357–58 (Fed. Cir. 2005)). "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."  *Id.*

25

**EXHIBIT 5A**

63.    While the written description requirement does not necessarily demand working examples or an actual reduction to practice, *see Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366–67 (Fed. Cir. 2006), the specification must contain "meaningful guidance," *Idenix Pharm. LLC* v. *Gilead Scis. Inc.*, 941 F.3d 1149, 1164–65 (Fed. Cir. 2019). This includes "a constructive reduction to practice that in a definite way identifies the claimed invention." *Ariad Pharms.*, 598 F.3d at 1352. Conversely, "actual possession or reduction to practice outside of the specification is not enough . . . —it is the specification itself that must demonstrate possession." *Id.* (internal quotations omitted).

### 8.    Enablement

64.    The enablement requirement is separate and distinct from the written description requirement, though it is rooted in the same section as the written description requirement. *See Ariad Pharms.*, 598 F.3d at 1344. "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms ***as to enable*** any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112(a).

65.    "Enablement is a question of law based on underlying factual findings." *MagSil Corp.* v. *Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir.

26

**EXHIBIT 5A**

2012) (citing *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988)). "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Id.* (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)).

66. "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). To assess undue experimentation, courts consider the *Wands* factors—i.e., "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737.

67. Enablement is judged based on the state of the art as of the priority date. *See, e.g.*, *Amgen Inc., v. Sanofi*, 872 F.3d 1367, 1373–74 (Fed. Cir. 2017). Post-priority evidence showing engagement in "lengthy and potentially undue experimentation to enable the full scope of the claims" may be used "to determin[e] if the claims were enabled as of the priority date." *Id.* at 1375.

27

**EXHIBIT 5A**

### 9. Indefiniteness

68.     The definiteness requirement requires that "[t]he specification [] conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b).

69.     Indefiniteness is generally "a legal conclusion that . . . is a question of law." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007). Indefiniteness may include factual underpinnings. *See Icon Health & Fitness, Inc. v. Polar Electro Oy*, 656 F. App'x 1008, 1013 (Fed. Cir. 2016) ("While we review the district court's legal conclusion regarding indefiniteness de novo, we must review any underlying factual determination for clear error" (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 841–42 (2015))). "[A]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Id.* (quoting *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)) (alteration in original).

70.     "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.* v. *Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

28

**EXHIBIT 5A**

71.     To determine whether a claim is indefinite, the court looks to "the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharm. USA, Inc.* v. *Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). "Notably, a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rts. Techs., Inc.* v. *Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus, Inc.,* 572 U.S. at 911).

72.     Section 112(f) (formerly § 112 ¶ 6) permits means-plus-function language provided that the patentee describes in the specification structure which performs the specified function. *See, e.g.*, *Biomedino*, 490 F.3d at 949 (citing *Valmont Indus, Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993)). "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is rather attempting to claim in functional terms unbounded by any reference to structure in the specification. Thus, if an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of § 112." *Id.* (internal citations and quotations omitted).

29

**EXHIBIT 5A**

## III.   UNENFORCEABILITY

### A.    Issues of Law to be Litigated

73.    Whether Kurin has proven by clear and convincing evidence that the Magnolia Asserted Patents are unenforceable due to inequitable conduct.

### B.    Legal Authority

#### 1.    Inequitable Conduct

74.    Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).  It applies "where the patentee has unfairly obtained an unwarranted patent through misconduct."  *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013).

75.    To prove inequitable conduct, "the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO."  *Id.*; *see also Therasense*, 649 F.3d at 1287.

76.    Generally, "the materiality required to establish inequitable conduct is but-for materiality."  *Therasense*, 649 F.3d at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Id.*  A failure to disclose includes a failure to disclose "material information."  *Li Second Fam. Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000) (affirming

30

**EXHIBIT 5A**

finding of inequitable conduct for withholding contrary Board decision in a related application).

77.     The materiality test is met if the patentee makes a limited disclosure of a prior art reference that excludes material information.  *See Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1189–90 (Fed. Cir. 2014) (finding that undisclosed, material details of a prior art reference supported a finding of materiality).  Further, failure to disclose "a contrary decision of another examiner reviewing a substantially similar claim meets the . . . materiality test." *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, C.A. No. 24-1124 (D. Del.) (D.I. 341) (quoting *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003)) (alteration in original).

78.     Intent is found when the patent applicant "made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995); *see also Therasense*, 649 F.3d at 1290 ("[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.").  Intent "may be inferred from indirect and circumstantial evidence" provided that such intent is "the single most reasonable inference drawn from the evidence." *Ohio Willow Wood*, 735 F.3d at 1351 (citing *Therasense*, 649 F.3d at 1290).  "[T]he

31

## EXHIBIT 5A

patentee need not offer a good faith explanation for its alleged misconduct unless a threshold level of deceptive intent has been demonstrated." *Id.*

79.    "Failure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional." *Molins PLC*, 48 F.3d at 1181–82.  Even if material references "were cited eventually to the PTO and [] the examiner initialed them and passed the [] application to issue thereafter," "[t]hose who are not 'up front' with the PTO run the risk that, years later, a fact-finder might conclude that they intended to deceive" because "the references were not cited when they should have been." *Id.* at 1182 (affirming district court's finding of inequitable conduct even though the examiner considered the material reference during re-examination because counsel did not initially cite the reference during original prosecution).

80.    Intent may be found when the patent applicant "strategically delayed in disclosing [material] prior art and then intentionally made an inaccurate disclosure of that material." *TransWeb, LLC v. 3M Innovative Prop. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).  "Partial disclosure of material information . . . cannot absolve a patentee of intent if the disclosure is intentionally selective." *Am. Calcar*, 768 F.3d at 1190.

81.    Intent may be found when "(1) the examiner of one application [] was not apprised of the adverse decisions by another examiner [] in a closely-related

32

**EXHIBIT 5A**

application; (2) the applicant disclosed the closely-related application only in the context of prior art cited in that application, but failed to mention the adverse decisions; and (3) the applicant made statements to the examiner inconsistent with the other examiner's decisions." *McKennson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 924 (Fed. Cir. 2007); *see also Li Second Fam. Ltd.*, 231 F.3d at 1378–79.

82.   "Acts which are not per se unreasonable when considered in isolation may still demonstrate repeated attempts to avoid playing fair and square with the patent system and, collectively, support a finding of deceptive intent." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1098 (Fed. Cir. 2013) (internal quotations omitted). For example, "'burying' a particular material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith." *Molins PLC*, 48 F.3d at 1184 (citing MPEP § 2004 ¶ 13); *see also* MPEP § 2004 ¶ 13 ("It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to applicant's attention and/or are known to be of most significance.").

**EXHIBIT 5A**

## IV.    MONETARY RELIEF TO MAGNOLIA

### A.    Issues of Law to be Litigated

83.    If Kurin is found to infringe the Magnolia Asserted Patents, the amount of compensatory damages to which Magnolia is entitled to for Kurin's infringement, including the amount of lost profits, and, where lost profit damages are not available, a reasonable royalty.

84.    If Kurin is found to infringe the Magnolia Asserted Patents, whether Magnolia has proven by a preponderance of the evidence that, during the damages period: (1) there was a demand for the patented products; (2) there were no acceptable non-infringing alternatives; (3) Magnolia had the manufacturing and marketing capacity to make the infringing sales Kurin made; and (4) Magnolia would have made a quantifiable amount of lost profits if Kurin had not infringed.

85.    If Kurin is found to infringe the Magnolia Asserted Patents, for any infringement for which Magnolia is not entitled to lost profits, the amount of reasonable royalty damages Magnolia is entitled to for Kurin's infringement.

86.    If Kurin is found to infringe the Magnolia Asserted Patents, whether Magnolia has proven by a preponderance of the evidence that it is entitled to an accounting of damages for post-verdict infringement prior to any injunction, and the amount of such damages.

34

## EXHIBIT 5A

87.     If Kurin is found to infringe the Magnolia Asserted Patents, whether Magnolia has proven by a preponderance of the evidence that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

88.     If Kurin is found to infringe the Magnolia Asserted Patents, whether Magnolia has proven by a preponderance of the evidence that it is entitled to attorneys' fees, expenses, or costs, and the amount.

### B.     Legal Authority

#### 1.     Damages in General

89.     Under 35 U.S.C. § 284, a prevailing plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence."  *Smithkline Diagnostics, Inc.* v. *Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).  It is the patentee's initial burden to prove damages, including to apportion any proposed royalty so that it reflects "the value attributable to the infringing features of the product, and no more."  *See Ericsson, Inc.* v. *D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *ResQNet.com, Inc.* v. *Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("But it was [plaintiff]'s burden, not

**EXHIBIT 5A**

[defendant]'s, to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty.").

90.    Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty.  *See Smithkline Diagnostics*, 926 F.2d at 1163, 1167, n.5.

### 2.    Lost Profits

91.    "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp.* v. *Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).  "When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales 'but for' the infringement.  Once the patent owner establishes a reasonable probability of 'but for' causation, 'the burden then shifts to the accused infringer to show that [the patentee's "but for" causation claim] is unreasonable for some or all of the lost sales.'"  *Id.*

92.    "An award of lost profits may not be speculative.  Rather the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales."  *BIC Leisure Prod., Inc.* v. *Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

36

**EXHIBIT 5A**

93.    For lost profits, the proper analysis "requires a reconstruction of the market, as it would have developed absent the infringing product." *Grain Processing*, 185 F.3d at 1350. "[O]nly by comparing the patented invention to its next-best available alternative(s)—regardless of whether the alternative(s) were actually produced and sold during the infringement—can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Id.*

94.    "To obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would have made." *Panduit Corp.* v. *Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

95.    The first *Panduit* factor assumes "that the patent owner and the infringer sell substantially the same product." *BIC Leisure Prod.*, 1 F.3d at 1219. If a plaintiff's product does not practice the claimed invention, a product must directly compete with the infringing device to be entitled to lost profits. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017).

**EXHIBIT 5A**

96.    For the second *Panduit* factor, the patentee has the burden of proving the absence of acceptable non-infringing alternatives by "either that the potential alternative was not acceptable to potential customers or was not available at the time." *Id.* If the defendant had a non-infringing alternative available, the plaintiff generally cannot show the infringement caused it to lose profits because "a rational would-be infringer is likely to offer an acceptable non-infringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Grain Processing*, 185 F.3d at 1351.

97.    To satisfy the third *Panduit* factor, the patentee must prove that it had the manufacturing and marketing capability to exploit the demand and make the accused infringer's sales. *See Keanrs v. Chrysler Corp.*, 32 F.3d 1541, 1551–52 (Fed. Cir. 1994).

98.    For the fourth *Panduit* factor, the patentee must prove the amount of profits it lost by quantifying the incremental profits it would have made from the sales it lost. *See Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984) ("The incremental income approach to the computation of lost profits is well established in the law relating to patent damages."). Fixed costs are not allocated to lost profits. *See id.*

38

**EXHIBIT 5A**

99.    Lost profits damages must be apportioned "between the patented feature and the unpatented features using reliable and tangible evidence." *Ericsson*, 733 F.3d at 1226.

### 3.    Reasonable Royalty

100.    The determination of a reasonable royalty is an issue of fact that depends on the particular circumstances for each case. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). "A patentee receives a reasonable royalty for any of the infringer's sales not included in the lost profit calculation." *Crystal Semiconductor Corp.* v. *TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001).

101.    A reasonable royalty may be based on a "hypothetical negotiation" that "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also Georgia-Pacific Corp v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (outlining factors for the hypothetical negotiation).

102.    Factors considered when determining a reasonably royalty based on a hypothetical negotiation include:

> 1.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

39

**EXHIBIT 5A**

2.     The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.     The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.     The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.     The duration of the patent and the term of the license.

8.     The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.     The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.     The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in

40

**EXHIBIT 5A**

comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

*Georgia-Pacific Corp.*, 318 F. Supp. at 1120.

103.    The *Georgia-Pacific* factors are not exclusive, and some or all the factors may be relevant to a particular case, depending on the facts of the case. *See Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008) ("A determination of the royalty stemming from a hypothetical negotiation is often made by assessing factors such as those set forth in *Georgia-Pacific* . . . ."). Further, "the hypothetical negotiation is an arm's length transaction." *Id.* at 1373.

104.    Where the accused product includes both an allegedly patented feature and unpatented or conventional features, "damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *CSIRO* v. *Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc.* v. *D-Link Sys.*, 773 F. 3d 1201, 1226 (Fed. Cir. 2014)); *see also Exmark Mfg. Co., Inc.* v. *Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332,

41

**EXHIBIT 5A**

1347-48, 350 (Fed. Cir. 2018). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Exmark Mfg.*, 879 F.3d at 1348. Thus, a patentee must "apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product." *Id.* Such an apportionment can be applied to the royalty rate or the royalty base, or a combination of both. *Id.* The apportionment analysis must be based on evidence that is "reliable and tangible, and not conjectural or speculative." *LaserDynamics, Inc.* v. *Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

105.   "The entire market value rule is a narrow exception to [the] general rule" that "royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *Id.* "[T]he entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand." *Id.*

106.   "[Q]ualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—is insufficiently reliable." *CSIRO,* 809 F.3d at 1302. "[T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence." *SmithKline Diagnostics, Inc.* v. *Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991).

42

**EXHIBIT 5A**

107.    Methods to calculate a reasonable royalty using licenses must be based on sufficiently comparable licenses.  *See CSIRO,* 809 F.3d at 1303.  The license comparability analysis must be based on evidence of technological comparability between the licensed technology and the claimed invention.  *See ResQNet.com, Inc.* v. *Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010) ("This trial court, like the one in *Lucent*, made no effort to link certain licenses to the infringed patent."); *Lucent Techs., Inc.* v. *Gateway, Inc.,* 580 F.3d 1301, 1329 (Fed. Cir. 2009).

### 4.    Damages for Post-Trial Infringement

108.    If a permanent injunction is not awarded, an ongoing royalty can be assessed.  "Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate."  *Paice LLC* v. *Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).  "But, awarding an ongoing royalty where 'necessary' to effectuate a remedy, be it for antitrust violations or patent infringement, does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed.  In most cases, where the district court determines that a permanent injunction is not warranted, the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty.  Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement."  *Id.* at 1314–15.

43

**EXHIBIT 5A**

109. "When an injunction is found to be improper, [] there appears to be no material difference between the parties' current situation and the one it was in at the time of the hypothetical negotiation." *EMC Corp. v. Zerto, Inc.*, 2017 WL 3434212, at*3 (D. Del. Aug. 10, 2017). "[C]ourts have concluded on the facts of the cases before them that the royalty rate for post-verdict infringement should be no greater than the pre- verdict rate." *Erfindergemeinschaft UroPep GbR* v. *Eli Lilly & Co.*, 2017 WL 3034655, at *7 (E.D. Tex. July 18, 2017) (Bryson, J.) (collecting cases). "The burden is on [the patentee] to show that it is entitled to a royalty rate in excess of the rate initially determined by the jury." *Erfindergemeinschaft UroPep GbR.*, 2017 WL 034655, at *7; *see also EMC Corp.*, 2017 WL 3434212, at *4 (denying a royalty rate in excess of the rate initially determined by the jury because patentee did not demonstrate it was entitled to an increased rate).

110. The court may also order an accounting itemizing post-trial infringing uses. *See Edwards Lifesciences AG v. CoreValve, Inc.*, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . [plaintiff's] request for an accounting of the number of CoreValve Revalving System devices made, used, sold, offered for sale, imported or supplied in or from the United States and corresponding revenue from March 16, 2010 through the date of the order accompanying this memorandum.").

**EXHIBIT 5A**

## 5.    Prejudgment Interest

111.    Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284. "[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award."  *General Motors Corp.* v. *Devex Corp.*, 461 U.S. 648, 657 (1983).  The prejudgment interest on a damages award "merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment."  *Id.* at 656. The Court has discretion to determine the applicable rate.  *See Edwards Lifesciences AG*, 2011 WL 446203, at *13.

## 6.    Post-Judgment Interest

112.    Post-judgment interest is governed by 28 U.S.C. § 1961.  According to 28 U.S.C. § 1961(a):

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.    The Director of the

45

**EXHIBIT 5A**

> Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

113.    The District Court has discretion to determine the applicable rate. *See Edwards Lifesciences AG*, 2011 WL 446203, at *13; *TruePosition Inc.* v. *Andrew Corp.*, 611 F. Supp. 2d 400, 413 n.15 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

### 7.    Attorneys' Fees and Costs Under 35 U.S.C. § 285

114.    Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

115.    "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *see also* D. Del. L.R. 54.1(a). Costs include: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies

46

**EXHIBIT 5A**

of any materials where the copies are necessarily obtained for use in the case; (5)

Docket fees under section 1923 of this title; (6) Compensation of court appointed

experts, compensation of interpreters, and salaries, fees, expenses, and costs of

special interpretation services under section 1828 of this title."  28 U.S.C. § 1920;

*see also* D. Del. L.R. 54.1(b) ("Costs shall be taxed in conformity with the provisions

of 28 U.S.C. §§ 1920, 1921, and 1923, and such other provisions of law as may be

applicable and the remaining paragraphs of subpart (b) of this Rule.").

## V.    INJUNCTIVE RELIEF TO MAGNOLIA

### A.    Issues of Law to Be Litigated

116.   If Kurin is found to infringe the Magnolia Asserted Patents, whether

Magnolia has proven by a preponderance of the evidence that it is entitled to

injunctive relief that permanently enjoins Kurin and its officers, employees, agents,

attorneys, affiliates, successors, assigns, and others acting in privity or concert with

them from further infringement of the Magnolia Asserted Patents.

117.   If Kurin is found to infringe the Magnolia Asserted Patents and

Magnolia has proven by a preponderance of the evidence that it is entitled to

injunctive relief, whether Magnolia has proven by a preponderance of the evidence

that, as part of the injunctive relief, Magnolia is entitled to an order that requires the

recall, removal, or destruction of all infringing products currently in the marketplace.

**EXHIBIT 5A**

**B.    Legal Authority**

**1.    Permanent Injunctive Relief**

118.   "An injunction is an equitable remedy.  It is not a remedy which issues as of course, or to restrain an act the injurious consequences of which are merely trifling.  An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect rights against injuries otherwise irremediable."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) (citations omitted).

119.   Under 35 U.S.C. § 283, courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

120.   To satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish: "[1] that absent an injunction, it will suffer irreparable harm,

**EXHIBIT 5A**

and [2] that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc*. v. *Samsung Elecs. Co*., 735 F.3d 1352, 1359–60 (Fed. Cir. 2013) (quoting *Apple Inc.* v. *Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).

121.    To determine irreparable harm, courts look to "evidence of what actual damage was likely due to any continuation of [the accused infringer]'s alleged infringing sales and whether monetary damages will provide adequate compensation and vindication of [the patentee]'s patent rights." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). A plaintiff "must show that damages are inadequate to compensate for [the] infringement." *Wonderland Switzerland AG v. Evenflo Co., Inc.*, 2022 WL 2438750, at *3 (D. Del. July 5, 2022). The fact that damages is "often a complex task" does not establish irreparable harm. *Chestnut Hill Sound Inc. v. Apple Inc.*, 2015 WL 6870037, at *5 (D. Del. Nov. 6, 2015)

122.    Further, "[s]ales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product." *Apple Inc*. v. *Samsung Elecs. Co.,* 678 F.3d 1314, 1324 (Fed. Cir. 2013).

123.    Courts treat the irreparable harm factor the same in both the preliminary and permanent injunction contexts. *See Apple Inc.*, 735 F.3d at 1361. A delay in

49

**EXHIBIT 5A**

moving for an injunction weighs against the issuance of an injunction "by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *see also Genentech, Inc. v. Amgen Inc.*, 2019 WL 3290167, *2 (D. Del. July 18, 2019); *Chestnut Hill Sound*, 2015 WL 6870037, at *4.

124.    "In determining the balance of hardships, the court considers 'the parties' sizes, products, and revenue sources.'" *EMC Corp.* v. *Zerto, Inc.*, 2016 WL 1291757, at *14 (D. Del. Mar. 31, 2016), *aff'd*, 691 F. App'x 623 (Fed. Cir. 2017). Whether a product is independently developed or provides advantages to patients over the patentee's product and whether employees must be laid off are considerations that weigh towards substantial hardship of the alleged infringer. *See Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *3 (N.D. Cal. Jan. 9, 2012).

125.    "The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1379 (Fed. Cir. 2020).

126.    Courts have wide discretion to consider evidence because "the decision to grant or deny permanent injunctive relief is an act of equitable discretion" on "such terms as the court deems reasonable." 35 U.S.C. § 283; *eBay Inc*, 547 U.S. at 391. "For good reason, courts have refused to permanently enjoin activities that

50

**EXHIBIT 5A**

would injure the public health." *Cordis Corp.* v. *Bos. Sci. Corp.*, 99 F. App'x 928, 935 (Fed. Cir. 2004). The public interest would be disserved if there is a reduction in the choice of medical devices, where there was evidence some medical providers preferred the defendant's product over the plaintiff's product. *See Cordis Corp.*, 99 F. App'x at 935 ("In this case, a strong public interest supports a broad choice of drug-eluting stents, even though no published study proves the superiority of either Cordis's Cypher or BSC's Taxus stent. Nevertheless, this court notes that Cypher may have, for example, safety or efficacy concerns beyond those shared by Taxus."); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 561 (D. Del. 2008) (considering physician preference for a certain medical device); *Conceptus*, 2012 WL 44064, at *3–*4 (having medical devices with different qualities on market "militates strongly against" injunction); *Bianco* v. *Globus Med., Inc.*, 2014 WL 1049067, at *11 (E.D. Tex. Mar. 17, 2014); *Bard Peripheral Vascular, Inc.* v. *W.L. Gore & Assocs., Inc.*, 2009 WL 920300, at *8 (D. Ariz. Mar. 31, 2009), *aff'd*, 670 F.3d 1171 (Fed. Cir. 2012), *opinion vacated in part on reconsideration,* 682 F.3d 1003 (Fed. Cir. 2012), and *vacated in part on reh'g en banc,* 476 F. App'x 747 (Fed. Cir. 2012).

127. The patentee has the burden of proof to show that the public interest would not be disserved by an injunction. *eBay Inc*, 547 U.S. at 391; *Amgen Inc.* v. *Sanofi*, 872 F.3d 1367, 1381 (Fed. Cir. 2017) ("If a plaintiff fails to show 'that the

**EXHIBIT 5A**

public interest would not be disserved by a permanent injunction,' then the district

court may not issue an injunction." (quoting *eBay Inc*, 547 U.S. at 391)).

52