IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., | |
| Plaintiff, | Civil Action No. 24-1124-CFC |
| v. | |
| KURIN, INC., | |
| Defendant. | |

## MEMORANDUM ORDER

Plaintiff and Counter-Defendant Magnolia Medical Technologies, Inc. has accused Defendant and Counter-Plaintiff Kurin, Inc. of infringing three patents referred to by the parties as the Bullington Family Patents. Kurin in turn has accused Magnolia of infringing one of its patents—U.S. Patent No. 12,138,052 (the #052 patent). All four patents teach medical devices used to draw blood from patients.

Pending before me is a motion filed by Magnolia "[p]ursuant to Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and other applicable law." D.I. 256. Magnolia seeks by its motion to preclude Kurin from offering at trial three opinions of Kurin's damages expert, Carrie L. Distler. D.I. 256. Specifically, Magnolia seeks to preclude

Ms. Distler from opining at trial that (1) in a hypothetical negotiation between Magnolia and Kurin, the parties would have agreed that Magnolia would pay Kurin a reasonable royalty rate of no less than $1.00 per unit for a nonexclusive license to the #052 patent, D.I. 257 at 1, 8–10; D.I. 291-1 ¶ 190; (2) Kurin is entitled to an award of approximately $4.7 million in lost profits because of Magnolia's infringement of the #052 patent, D.I. 257 at 10–12; D.I. 291-1 ¶ 139; and (3) in a hypothetical negotiation between Magnolia and Kurin, the parties would have agreed that Kurin would pay Magnolia a reasonable royalty rate of between $0.31 to $0.49 per unit for a nonexclusive license to the Bullington Family Patents, D.I. 257 at 15–17; D.I. 259-14 ¶ 193.

I.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

2

>  (d) the expert's opinion reflects a reliable application of
>     the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert*, the Supreme Court held that district courts must act as gatekeepers to ensure proffered expert scientific testimony meets the requirements of Rule 702.  *See* 509 U.S. at 589.  And in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court held that "this basic gatekeeping obligation" "applies to all expert testimony," not just "scientific" testimony. *Id.* at 147.

Inexplicably, Magnolia never identifies in its motion or in its briefing filed in support of its motion which of Rule 702's four requirements it believes Kurin has not demonstrated by a preponderance of the evidence.  Magnolia mentions Rule 702 twice in its opening brief.  It makes the conclusory assertion that Ms. Distler's opinions "violate fundamental principles of damages law and should be stricken under Rule 702."  D.I. 257 at 1.  And it cites Rule 702 (along with *Daubert*) for the proposition that "[a] district court must ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." D.I. 257 at 3 (alteration and internal quotation marks removed).  I infer from this latter statement that Magnolia is challenging Ms. Distler's opinions under Rule 702(c) and that Magnolia is in effect arguing that Kurin has failed to demonstrate that it is more likely than not that Ms. Distler's challenged opinions are "the product of reliable principles and methods."

II.

Magnolia first challenges Ms. Distler's opinion that the parties would have agreed in a hypothetical negotiation to a reasonable royalty rate of no less than $1.00 per unit for a nonexclusive license to the #052 patent. Magnolia argues that this opinion is inadmissible at trial because it "fail[s] to apportion to the patent's inventive element." D.I. 257 at 1.

The parties agree that a reasonable royalty rate must be based on the value of the patented invention. D.I. 257 at 8; D.I. 290 at 5. But they disagree about the scope of the invention claimed in the #052 patent. According to Magnolia, the prosecution history of the #052 patent "shows that the [patent's] only inventive aspect (if any) is the claimed 'housing that defines the inlet port, the sampling channel, and the outlet port.'" D.I. 257 at 1. Magnolia refers to this claimed limitation as the "housing element."

The factual premise of Magnolia's argument is that Kurin added the housing limitation—and did nothing else—to overcome successfully the patent examiner's initial rejection of the #052 patent's independent claims as anticipated by a piece of prior art. D.I. 257 at 1, 4. Kurin disputes this premise but does not cite any record evidence in support of its position, *see* D.I. 290 at 3–4, and therefore I will accept the premise as true.

The argument nonetheless fails because of its legal premise. That premise is set forth in this sentence from Magnolia's opening brief: "When a patentee overcomes a rejection of anticipation by adding a claim limitation, that claim limitation is necessarily the inventive element of the claim." D.I. 257 at 8. Magnolia repeats this contention six times in its briefing. *See* D.I. 257 at 1, 8, 9; D.I. 322 at 1, 3, 5. But even though this alleged legal principle is the linchpin of Magnolia's argument and even though Kurin says in its answering brief that there is no such legal principle, *see* D.I. 290 at 8–9, Magnolia cites no legal authority to support it. Magnolia seems to think that repetition of the proposition somehow makes it true. It does not.

Ms. Distler identified—based on discussions she had with Kurin's technical expert, Dr. Antonsson—and considered in determining a reasonable royalty rate for a nonexclusive license for the #052 patent inventive benefits beyond the housing limitation. Specifically, she identified and considered the use of negative pressure to draw blood and skipping the three-second wait required when operating the Kurin Lock (i.e., a device Kurin sells that does not practice the #052 patent). D.I. 291-1 ¶ 182. She calculated a royalty rate for these benefits by comparing the gross profits of the Lock with the gross profits of the Kurin Jet, which practices all the patents the Lock does but also practices the #052 patent. D.I. 291-1 ¶ 183. Ms. Distler explained in her expert report that "[t]he non-patented elements and

business risks that Kurin faces are the same when manufacturing, marketing, and selling the Jet or the Lock," and that "[a]s a result, the portion of the realizable profit that should be credited to the invention [claimed in the #052 patent] can be derived from analyzing the gross profit comparison between the Jet and the Lock." D.I. 291-1 ¶ 183. That comparison, which results in a gross profit difference of $1.03 per unit, is the product of reliable (i.e., reasonable) principles, and therefore I will not preclude Ms. Distler from testifying about it at trial.

### III.

Magnolia next argues that Ms. Distler's lost profits opinion is inadmissible because it is based on her determinations that (1) Kurin would have captured all sales of the Magnolia products Kurin accuses of infringement had those products not been sold and (2) Magnolia's Steripath® Gen 2 is not an acceptable noninfringing substitute. D.I. 257 at 10–12. But neither of these conclusions renders Ms. Distler's lost profits opinion unreliable.

With respect to the first conclusion, Magnolia's own damages expert and the authors of a market study it commissioned agree that Kurin and Magnolia operate in a small, two-player market such that all of one party's sales would likely go to the other party in the absence of those sales. *See* D.I. 291-1 ¶ 77 (describing a Magnolia-commissioned study finding that "Kurin held approximately a 57% market share, and Magnolia held a 43% market share") (internal citations omitted);

D.I. 291-5 ¶ 101 ("[I]t is my understanding that Magnolia and Kurin largely (if not entirely) control the . . . market . . . ."). Ms. Distler cites several sources as support for her descriptions of the relevant market. *See* D.I. 291-1 ¶¶ 76–78.

As for the second conclusion, it is supported by Ms. Distler's explanation in her expert report, based on her discussions with Dr. Antonsson, that the easy-to-use design and bottle-driven negative-pressure diversion and collection benefits of the invention claimed in the #052 patent were marked improvements over the Steripath® Gen 2 and that the Gen 2 diverts too much blood to be used with pediatric patients, such that the Gen 2 would not be an acceptable noninfringing alternative. D.I. 291-1 ¶ 100. That analysis makes sense to me, and in any event, it cannot fairly be characterized as the product of an unreliable principle or method.

Accordingly, I will not bar Ms. Distler from offering at trial her lost profits opinion.

## IV.

I will, however, preclude Ms. Distler from offering at trial her opinion about the royalty rate for a nonexclusive license to the Bullington Family Patents the parties would have agreed to in a hypothetical negotiation. Ms. Distler says she formed that opinion "by isolating the cost of the 'stopper' component [of the Kurin Jet], as it is the component [that Magnolia's damages and technical experts] point

7

to as relating to what provides the function of the inventive aspects of the Bullington Family Patents." D.I. 259-14 ¶ 193. But although the stopper "*relate[s]*" to what Magnolia identifies as the inventive aspects of the Bullington Family Patents, *see* D.I. 259-14 ¶ 193, Magnolia does not contend, and Ms. Distler cites no record evidence that suggests, that the stopper *is* the inventive aspect of the Bullington Family Patents. To the contrary, as Ms. Distler expressly acknowledges in her rebuttal report, Magnolia's technical expert identified as "the key inventive aspects of the Bullington Family Patents" "a device using an external source of negative pressure and creating a pressure differential *to move* [the stopper]." D.I. 259-14 ¶ 189 (original emphasis removed). And because Ms. Distler made no effort in calculating her royalty rate to isolate the value of the Kurin Jet's use of an external source of negative pressure and a pressure differential to move the stopper, her royalty rate is not the product of reliable principles and therefore is inadmissible under Rule 702(c).

\* \* \* \*

NOW THEREFORE, on this Third day of November in 2025, Plaintiff Magnolia Medical Technologies, Inc.'s Motion to Exclude the Opinions of Carrie

L. Distler (*Daubert* Motion No. 1) (D.I. 256) is GRANTED IN PART AND DENIED IN PART.

_____
CHIEF JUDGE