IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., Plaintiff, v. KURIN, INC., Defendant. | Civil Action No. 24-1124-CFC |

# MEMORANDUM ORDER

Pending before me is Plaintiff Magnolia Medical Technologies, Inc.'s Motion for an Accounting, Supplemental Damages, Ongoing Royalties, and Interest. D.I. 456. The motion presents a single issue for me to decide. Kurin does not dispute that Magnolia is entitled to an accounting, pre- and post-verdict supplemental damages, ongoing royalties, and pre- and post-judgment interest. It disputes only Magnolia's request for a post-verdict royalty rate of $3.75 per unit of sales of Kurin Jet products (the Jet). *See* D.I. 461 at 18–26; D.I. 474 at 20–24. Kurin argues that the post-verdict rate should be the same rate set by the jury—$1.25 per unit. D.I. 474 at 22.

"In determining [an] ongoing royalty rate, the Court must consider: (i) the 'change in the parties' bargaining positions, and the resulting change in economic

circumstances, resulting from the determination of liability'; (ii) 'changed economic circumstances, such as changes related to the market for the patented products'; and (iii) any other 'post-verdict factor' that would impact 'what a hypothetical negotiation would look like after the prior infringement verdict.'" *PureWick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 449 (D. Del. 2023) (quoting *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018)). Fashioning an ongoing royalty rate is committed to the Court's discretion. *Id.* (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007)); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010) ("[C]ourts have broad discretion in determining appropriate relief for patent infringement[.]") (citation omitted).

Magnolia's argument is twofold. In its words:

> For the period beginning December 17, 2025—the day after the jury's verdict—the appropriate rate for the necessary award of supplemental damages or ongoing royalties is $3.75 per unit (three times the jury's rate) because, since the jury's verdict, Kurin's infringement has been willful, and Magnolia's bargaining power is significantly greater now as compared to the pre-verdict hypothetical negotiation.

D.I. 461 at 20. In my view, Magnolia is wrong on both counts.

*First*, even assuming that Kurin's post-verdict infringement were fairly characterized as willful, that infringement does not justify a trebling of damages. Section 284 of the Patent Act provides that "the court *may* increase the damages up

to three times the amount found or assessed" by the jury. 35 U.S.C. § 284 (emphasis added). The Supreme Court made clear in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016), that a district court should exercise the discretion to award enhanced damages under § 284 only in "egregious cases of misconduct beyond typical infringement." *Id.* at 110. In this case, neither Kurin's past infringement nor its current infringement of the Magnolia asserted patents can be fairly characterized as egregious. Whether Kurin infringed the asserted patents presented a very close call for the jury—a flip of the coin in my view of the evidence. The issue of infringement essentially boiled down to one question: In the context of the patents (which leave a lot to be desired in terms of clarity and exposition), would an artisan of ordinary skill tasked with measuring the pressure differential between the moveable plug and the outlet of the Jet measure the pressure at the moveable plug on the plug's inlet side or its outlet side? I was no more surprised that the jury found in Magnolia's favor on infringement than I would have been had it found for Kurin.

Magnolia argues that "Kurin cannot have a good-faith belief of noninfringement, invalidity, or unenforceability now that these issues have been decided against it." D.I. 461 at 21. But the jury's finding by itself does not negate a good faith belief that a patent is not infringed or is invalid. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 3034655, at *10

(E.D. Tex. July 18, 2017) (Bryson, J.) ("[A]lthough the jury found the '124 patent not invalid, that alone does not negate Lilly's good faith belief that the patent is invalid."). And given the closeness of the case and what I considered to be difficult claim construction issues posed by clear inadequacies in the patents, I can understand why Kurin has a good faith belief that the asserted patents are not infringed and invalid and that it can succeed in an appeal of this action.

Magnolia also accuses Kurin of "conceal[ing]" its infringement of the asserted patents. D.I. 461 at 22 (citing 12.10.25 Trial Tr. (docketed as D.I. 449) 797:9–23). But the evidence it cites in support of the allegation—testimony that Kurin conducted trial sales of the Jet fourteen months before it formerly launched its marketing campaign for the Jet—in no way suggests an intent to conceal infringement on Kurin's part. *See* 12.10 Tr. 797:9–23. The irony not lost on me is that Magnolia's false allegation of concealment and misrepresentation of the record *are* egregious.

Magnolia does not contend, and there is no evidence to suggest, that Kurin deliberately copied Magnolia's inventions. Nor is there any evidence to suggest that Kurin harbored malicious intent. There is, in short, nothing egregious about Kurin's conduct that would justify trebling the jury's damages award under § 284.

*Second*, the jury's findings with respect to the infringement and validity of the Magnolia asserted patents did not change the parties' respective positions in the

hypothetical negotiation that the jury considered in making its royalty rate determination. I explicitly instructed the jury that a reasonable royalty is the royalty that the parties would have agreed to in a hypothetical negotiation just before infringement began and that it must "assume that both parties [in the hypothetical negotiation] believed that the patent in question was valid and infringed." 12.15.25 Trial Tr. (docketed as D.I. 452) 1902:25–1903:11. Consistent with these instructions, both parties' damages experts testified at trial that in reaching their opinions about the royalty rate the parties would have agreed to in a hypothetical negotiation, they assumed that both parties believed the asserted patents were valid and infringed. 12.10 Tr. 693:23–694:2 (Napper) (explaining that the jury must assume "that the patents are valid; [and] that [the] Kurin Jet infringes"); 12.12.25 Trial Tr. (docketed as D.I. 451) 1374:23–24 (Distler) ("You have to assume that the patents are valid and infringed."). (As one prominent scholar has noted, "[t]he ongoing royalty question is the very same question the jury has just resolved: what would a willing buyer and a willing seller who know the patent is valid and infringed have agreed to as a royalty rate?" Mark A. Lemley, *The Ongoing Confusion Over Ongoing Royalties*, 76 Mo. L. Rev. 695, 704 (2011).)

NOW THEREFORE, at Wilmington this Eleventh Day of September in 2026, it is HEREBY ORDERED that Magnolia Medical Technologies, Inc.'s

Motion for an Accounting, Supplemental Damages, Ongoing Royalties, and Interest (D.I. 456) is DENIED IN PART and GRANTED IN PART. It is DENIED insofar as it seeks an enhanced ongoing royalty rate of $3.75 per unit for post-verdict sales of Kurin Jet products. It is otherwise GRANTED.

It is FURTHER ORDERED that:

1. Within fourteen days of this Order, Kurin shall produce to Magnolia sales figures showing the number of Kurin Jet products sold in the United States (a) from October 1, 2025 through December 16, 2025, (b) from December 17, 2025 through January 15, 2026, and (c) from January 16, 2026 through the date of this Order;
2. On the first day of each calendar quarter, commencing on the first such day after the date of this Order, Kurin shall produce to Magnolia sales figures showing the number of Kurin Jet products sold in the United States during the preceding calendar quarter, and Kurin shall continue to make such productions until it has produced sales figures showing, cumulatively, the number of Kurin Jet products sold after the date of this Order through September 12, 2038;
3. Magnolia is awarded supplemental damages at the jury's stated royalty rate of $1.25 per unit for all sales of Kurin Jet products in the United States from October 1, 2025 through the date of this Order;

4. Magnolia is awarded ongoing royalties at a royalty rate of $1.25 per unit for all sales (if any) of Kurin Jet products in the United States after the date of this Order through September 12, 2038;
5. Magnolia is awarded pre-judgment interest on the jury's $1,587,531 damages award, which interest is in the amount of $149,729;
6. Magnolia is awarded pre-judgment interest at the U.S. prime rate for each calendar quarter, compounded quarterly, on all supplemental damages awarded for sales of Kurin Jet products in the United States from October 1, 2025 through January 15, 2026, which interest shall accrue through January 15, 2026;
7. Magnolia is awarded post-judgment interest pursuant to 28 U.S.C. § 1961, and which interest shall apply to:
    a. the jury's damages award of $1,587,531, interest on which shall accrue from January 16, 2026 through the day before Kurin pays the jury's damages award to Magnolia;
    b. the Court's award of supplemental damages for all sales of Kurin Jet products in the United States from October 1, 2025 through January 15, 2026, interest on which shall accrue from the date on which the Court enters a judgment quantifying any such supplemental damages

through the day before Kurin pays such quantified supplemental damages to Magnolia;

c. the Court's award of supplemental damages for all sales of Kurin Jet products in the United States from January 16, 2026 through the date of this Order, interest on which shall accrue from the date on which the Court enters a judgment quantifying any such supplemental damages through the day before Kurin pays such quantified supplemental damages to Magnolia; and

d. the Court's award of pre-judgment interest on (a) (which amount of pre-judgment interest is stated in paragraph (5) above) and (b), the post-judgment interest on which shall accrue from the date on which the Court enters a judgment quantifying any such pre-judgment interest through the day before Kurin pays such quantified pre-judgment interest to Magnolia;

8. Within fourteen days from the date on which Kurin produces the sales figures provided in paragraph (1) above, Magnolia shall file calculations of the following:

   a. supplemental damages for all sales of Kurin Jet products in the United States from October 1, 2025 through January 15, 2026;

   b. supplemental damages for all sales of Kurin Jet products in the United States from January 16, 2026 through the date of this Order; and
   c. pre-judgment interest on (a);

9. On each date on which Kurin produces sales figures for a calendar quarter according to paragraph (2) above, Kurin shall pay to Magnolia $1.25 per unit for all sales of Kurin Jet products occurring after the date of this Order and during such calendar quarter;
10. Within fourteen days from the date on which Kurin pays to Magnolia, in whole or in any part, the jury's damages award of $1,587,531, any supplemental damages, or any pre-judgment interest, Magnolia shall file a calculation of post-judgment interest on such payment in accordance with paragraph (7) above; and
11. Any objection to Magnolia's calculation of supplemental damages, pre-judgment interest, or post-judgment interest pursuant to paragraph (8) or (10) shall be filed within fourteen days from the date on which the relevant calculation is filed.

[signature]
CHIEF JUDGE